IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEURIG, INCORPORATED,<br><br>  Plaintiff,<br><br>v.<br><br>STURM FOODS, INC.,<br><br>  Defendants. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Keurig, Incorporated ("Keurig"), by and through its undersigned counsel, for its Complaint against Defendant Sturm Foods, Inc. ("Sturm"), alleges as follows:

### THE PARTIES

1.      Keurig is a Delaware corporation with a place of business at 55 Walkers Brook Drive, Reading, Massachusetts 01867.

2.      Sturm is a Wisconsin corporation with a place of business at 1215 Center Street, Manawa, Wisconsin 54949.

### JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 100 *et seq.*, and for trademark infringement, trade dress infringement, unfair competition, false advertising, deceptive trade practices, dilution, and unjust enrichment under the laws of the United States, namely, the Lanham Act, 15 U.S.C. § 1051 *et seq.*

4.      This action also includes claims for unfair competition arising under the laws of the State of Delaware.

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

6.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391, 1400.

**COUNT I**
Infringement of United States Patent No. 7,165,488

7.     The allegations of the paragraphs above are restated and re-alleged as though fully set forth herein.

8.     Keurig is the owner of United States Patent No. 7,165,488, entitled "Brew Chamber For A Single Serve Beverage Brewer" (the "'488 patent"). Keurig has the right to sue for infringement of the '488 patent. A copy of the '488 patent is attached hereto as Exhibit A.

9.     Sturm offers beverage cartridges that are advertised for use with Keurig's single-serve beverage brewers.

10.     On information and belief, Sturm has infringed, and continues to infringe, literally or under the doctrine of equivalents, the '488 patent, at least by making, using, offering to sell, and/or selling infringing beverage cartridges intended for use with Keurig's single-serve beverage brewers within the United States.

11.     Sturm is inducing and contributing to infringement of the '488 patent, by causing others to use its beverage cartridges in Keurig's single-serve beverage brewers in a manner that is covered, literally or under the doctrine of equivalents, by one or more of the claims of the '488 patent within the United States.

12.     On information and belief, Sturm's infringement of the '488 patent has been and continues to be knowing and willful.

13.     Sturm's infringement of the '488 patent has caused and continues to cause Keurig to suffer substantial money damages.

- 2 -

14.     Sturm's infringement of the '488 patent has caused and continues to cause Keurig to suffer irreparable harm for which there is no adequate remedy at law.

15.     This case is exceptional and therefore Keurig is entitled to an award of its attorneys fees pursuant to 35 U.S.C. § 285.

## COUNT II
### Infringement of United States Patent No. 6,606,938

16.     The allegations of the paragraphs above are restated and re-alleged as though fully set forth herein.

17.     Keurig is the owner of United States Patent No. 6,606,938, entitled "Two Step Puncturing And Venting Of Single Serve Filter Cartridge In A Beverage Brewer" (the "'938 patent"). Keurig has the right to sue for infringement of the '938 patent.  A copy of the '938 patent is attached hereto as Exhibit B.

18.     Sturm offers beverage cartridges that are advertised for use with Keurig's single-serve beverage brewers.

19.     On information and belief, Sturm has infringed, and continues to infringe, literally or under the doctrine of equivalents, the '938 patent, at least by making, using, offering to sell, and/or selling infringing beverage cartridges intended for use with Keurig's single-serve beverage brewers within the United States.

20.     Sturm is inducing and contributing to infringement of the '938 patent, by causing others to use its beverage cartridges in Keurig's single-serve beverage brewers in a manner that is covered, literally or under the doctrine of equivalents, by one or more of the claims of the '938 patent within the United States.

21.     On information and belief, Sturm's infringement of the '938 patent has been and continues to be knowing and willful.

22.     Sturm's infringement of the '938 patent has caused and continues to cause Keurig to suffer substantial money damages.

23.     Sturm's infringement of the '938 patent has caused and continues to cause Keurig to suffer irreparable harm for which there is no adequate remedy at law.

24.     This case is exceptional and therefore Keurig is entitled to an award of its attorneys fees pursuant to 35 U.S.C. § 285.

**COUNT III**
Trademark Infringement Under 15 U.S.C. § 1114

25.     The allegations of the paragraphs above are restated and re-alleged as though fully set forth herein.

26.     Keurig owns a United States trademark registration for the mark KEURIG (U.S. Reg. No. 2,933,253; registered March 15, 2005) for coffee and tea sold in single-serve containers for use in coffee and tea brewing machines.  The registration for the KEURIG mark is in full force and effect.  A copy of the registration is attached to this Complaint as Exhibit C.

27.     Keurig owns a United States trademark registration for the mark KEURIG (U.S. Reg. No. 2,057,361; registered April 29, 1997) for coffee brewing machines for domestic and commercial use.  The registration for the KEURIG mark is in full force and effect.  A copy of the registration is attached to this Complaint as Exhibit D.

28.     These trademark registrations for the mark KEURIG have become incontestable pursuant to the provisions of 15 U.S.C. § 1065.  The United States Patent and Trademark Office has acknowledged and accepted the status of these registrations for the KEURIG mark as incontestable.

29.     Keurig sells Keurig® brand coffee and tea in single-serve containers for use in coffee and tea brewing machines in the United States.

- 4 -

30.     Keurig sells Keurig® brand coffee brewing machines for domestic and commercial use in the United States.

31.     Sturm offers beverage cartridges that are advertised "For use by owners of Keurig® coffee makers" implying that the Sturm beverage cartridges are authorized, sponsored, or endorsed by Keurig, and/or that Sturm is affiliated with Keurig.

32.     Packages of Sturm's beverage cartridges include a statement that "Sturm Foods, Inc. has no affiliation with Keurig, Incorporated," hidden on the underside of the packaging that is not visible to consumers in the normal manner in which the package is displayed on shelves in retail locations.

33.     On information and belief, Sturm is currently offering to sell and selling such beverage cartridges to retailers in interstate commerce.

34.     On information and belief, Sturm plans to launch its beverage cartridges in the retail market in early October 2010.

35.     Keurig has not authorized Sturm to use its KEURIG mark.

36.     Keurig has not endorsed, sponsored, or otherwise authorized Sturm's beverage cartridges.

37.     Keurig is not in any way affiliated with Sturm.

38.     Sturm's use of the KEURIG mark is without permission of Keurig and is likely to cause confusion or mistake or to deceive.

39.     Sturm is liable to Keurig for infringement under 15 U.S.C. § 1114.

40.     On information and belief, such use by Sturm is knowing and willful and with the intent to trade off the good will established by Keurig in its KEURIG mark.

41.     Keurig has been damaged by such conduct in an amount to be determined at trial.

- 5 -

42.    Unless enjoined, Sturm's behavior will continue and will cause Keurig to suffer irreparable harm for which there is no adequate remedy at law.  Therefore, Keurig is entitled to injunctive relief.  It is also entitled to damages for the infringement.

**COUNT IV**
False Designation of Origin Under 15 U.S.C. § 1125(a)

43.    The allegations of the paragraphs above are restated and re-alleged as though fully set forth herein.

44.    The KEURIG mark is recognized for quality in coffee and tea brewed in single-serve containers.

45.    Sturm is targeting its beverage cartridges to an identical class of consumers as Keurig in the same areas.  Indeed, Sturm is advertising such cartridges for use in Keurig's brewers.  Sturm's cartridges have no other use except in Keurig's brewers.

46.    Sturm's use of the KEURIG mark is confusingly similar to Keurig's use of the KEURIG mark.  Indeed it is identical.  Such use has the effect of associating Sturm and its products with the KEURIG mark in the minds of the purchasing public and of trading off the goodwill acquired by Keurig.

47.    Sturm's actions are likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of Sturm with Keurig or as to the origin, sponsorship, or approval of Sturm's sale of goods by Keurig, entitling Keurig to relief under 15 U.S.C.§ 1125(a).

48.    On information and belief, such use by Sturm is knowing and willful and with the intent to trade off the good will established by Keurig in its KEURIG mark.

49.    Keurig has been damaged by such conduct in an amount to be determined at trial.

YCST01:10222205.1                                        065927.1002

50.     Unless enjoined, Sturm's behavior will continue and will cause Keurig to suffer irreparable harm for which there is no adequate remedy at law.  Therefore, Keurig is entitled to injunctive relief.  It is also entitled to damages for such false designation of origin.

**COUNT V**
Trade Dress Infringement Under 15 U.S.C. § 1125(a)

51.     The allegations of the paragraphs above are restated and re-alleged as though fully set forth herein.

52.     Keurig sells single-serve beverage cartridges in packaging that has a distinctive look and feel stemming from, among other things, an image of single-serve beverage cartridges, with at least one beverage cartridge depicted on its side and one beverage cartridge depicted right-side up, and a tagline below the image of the cartridges that states they are for use in Keurig brewers, an image of spilled coffee beans, an indication of the coffee's roast strength on a graded bar with shading varying from light to dark, along with an indication whether the coffee is caffeinated, perforations for opening the package that form an opening that is tapered in a v-shape and ending in a u-shaped tab, prominent lettering displaying the name of the beverage, and another face of the packaging providing a product story (the "distinctive trade dress"). Purchasers of single-serve beverage cartridges associate the distinctive appearance of the packaging for Keurig's single-serve beverage cartridges with Keurig.

53.     The appearance of Keurig's single-serve beverage cartridge packaging is sufficiently distinctive that this trade dress identifies Keurig as the source of the single-serve beverage cartridges.  The display of the Keurig packaging for its single-serve beverage cartridges is a major source of Keurig's advertising.  Keurig has invested substantial sums in the design and promotion of these single-serve beverage cartridges.

54. Keurig has sold over three billion (3,000,000,000) single-serve cartridges. The appearance of Keurig's packaging for single-serve beverage cartridges is distinctive and has acquired secondary meaning and consumers of single-serve beverage cartridges identify the appearance of such KEURIG single-serve beverage cartridges as originating with Keurig.

55. The distinctive trade dress of Keurig's packaging for single-serve beverage cartridges, among other things, constitutes non-functional, protectable trade dress.

56. Sturm makes, sells, offers to sell and/or uses within the United States, and/or imports into the United States certain single-serve beverage cartridges, including its coffee beverage cartridges.

57. On information and belief, Sturm is and has at all material times been aware of Keurig, its products, and its trade dress.

58. Sturm has infringed and continues to infringe on Keurig's trade dress rights through its imitation in interstate commerce of Keurig's trade dress for its single-serve beverage cartridges.

59. Sturm's imitation of Keurig's trade dress for its single-serve beverage cartridge packaging is likely to cause confusion, mistake, or deception as to the source, affiliation, connection, or association of Sturm's coffee beverage cartridges with Keurig.

60. As a result of Sturm's wrongful conduct, Keurig has been damaged and will continue to be damaged in an amount to be determined at trial. Keurig has suffered and continues to suffer immediate and irreparable injury for which it has no adequate remedy at law.

61. On information and belief, such use by Sturm is knowing and willful and with the intent to trade off the good will established by Keurig in its trade dress.

62.     Unless Sturm is enjoined from these acts, it will continue to misappropriate Keurig's trade dress, further diminishing the value of Keurig's goodwill.

## COUNT VI
### False Advertising Under 15 U.S.C. § 1125(a)

63.     The allegations of the paragraphs above are restated and re-alleged as though fully set forth herein.

64.     Keurig is a pioneer and leading manufacturer of single-serve brewing systems. Single-serve brewing systems permit users to enjoy freshly brewed coffee one cup at a time while eliminating the inconvenience of grinding beans, measuring coffee, and handling messy filters.  Cartridges used in single-serve brewing systems are sealed containers that preserve the freshness of the ground coffee that they contain.

65.     Keurig has invested and continues to invest a great deal of time, money, and effort in designing single-serve brewing systems that brew a coffeehouse-quality cup of coffee each time.

66.     Over the 16 years Keurig has been using the KEURIG mark, it has invested a great deal of time, money, and effort in promoting its KEURIG mark and the goodwill it embodies.

67.     Keurig has built a reputation of high-quality brewed beverages around the KEURIG mark.  Keurig has sold over three billion (3,000,000,000) single-serve cartridges and millions of brewers under the KEURIG mark.

68.     Sturm's single-cup coffee cartridge is "instant" coffee.  Instant coffee is not freshly brewed coffee but rather is a dehydrated soluble powder that can be mixed with water to yield a coffee-like beverage.

- 9 -

69.     Sturm's advertising for its single-cup coffee cartridges, through the descriptions on the packaging for these cartridges, conveys the false impression that Sturm's instant coffee is actually fresh-brewed.

70.     For instance, Sturm indicates on the center of the front facing panel of its cartridge package that its coffee is "Naturally Roasted, Soluble & Microground Arabica Coffee." An average consumer would not interpret this description to mean "instant coffee" or something other than fresh-brewed coffee.

71.     Further in the description on the upper portion of the front-facing panel of its cartridge package, Sturm represents that its coffee is similar to that found in "neighborhood coffee shops" where the coffee was "simply fresh, hot, and delicious." Sturm indicates that it has "recaptured this rich traditional cup."

72.     Sturm depicts spilled whole coffee beans on its cartridge package, implying that its cartridges produce brewed coffee.

73.     These statements and images, descriptive of traditional, freshly brewed coffee have a tendency to deceive a substantial segment of consumers for single-serve beverage cartridges into buying Sturm's product under the impression that the single-cup coffee cartridge, when used with Keurig's brewer system, will produce freshly brewed coffee.

74.     Sturm's false representation of the quality and nature of its single-serve instant coffee products have a tendency to deceive a substantial segment of consumers for single-serve beverage cartridges into buying Sturm's product under the impression that Sturm's product is freshly brewed coffee and constitutes false advertising in violation of the Lanham Act's prohibition on deceptive trade practices.

- 10 -

75.     Keurig's reputation for making high quality brewed coffee and the goodwill associated with its KEURIG mark will be harmed if consumers associate poor quality instant coffee made using KEURIG branded brewers with Keurig.

76.     Keurig has been damaged by such conduct in an amount to be determined at trial.

77.     Unless enjoined, Sturm's behavior will continue and will cause Keurig to suffer irreparable harm for which there is no adequate remedy at law.   Therefore, Keurig is entitled to injunctive relief.

**COUNT VII**
Dilution Under 15 U.S.C. § 1125(c)

78.     The allegations of the paragraphs above are restated and re-alleged as though fully set forth herein.

79.     As described above, Keurig owns valid and existing rights in the KEURIG mark.

80.     Through continued use, product promotion, and consumer and industry recognition, Keurig has developed the KEURIG mark to the point that it is famous.   Sturm is now using the KEURIG mark on its packaging for a similar, but lesser quality product.   In so doing Sturm is creating an association between the Sturm instant (and lesser quality) coffee and the KEURIG mark that has been long equated with high quality, freshly-brewed, single-serve coffee.

81.     This association is likely to cause a dilution of the strong correlation that Keurig has built between its KEURIG mark and its high-quality product in violation of 15 U.S.C. § 1125(c).

82.     As a result of Sturm's wrongful conduct, Keurig has been damaged and will continue to be damaged in an amount to be determined at trial.

YCST01:10222205.1                                                                                            065927.1002

83.     On information and belief, such use by Sturm is knowing and willful and with the intent to trade off the good will established by Keurig in its KEURIG mark.

84.     Unless enjoined, Sturm's behavior will continue and will cause Keurig to suffer irreparable harm for which there is no adequate remedy at law.   Therefore, Keurig is entitled to injunctive relief.

**COUNT VIII**
Unfair Competition Under Delaware Uniform Deceptive Trade Practices Act -
6 Del. C. 1953, § 2531 *et. seq.*

85.     The allegations of the paragraphs above are restated and re-alleged as though fully set forth herein.

86.     Sturm's use of the KEURIG mark and its misleading statements as described above are likely to cause consumers and members of the public to be confused about, or to believe mistakenly that Sturm's single-serve coffee cartridges are affiliated, connected, associated, or otherwise being sold with the approval of Keurig.

87.     Sturm's conduct constitutes unfair deceptive trade practices in violation of the Uniform Deceptive Trade Practices Act, 6 Del. C. 1953, § 2532 *et. seq.*

88.     Sturm's deceptive trade practice are causing and will cause direct harm to Keurig for which there is no adequate remedy at law. Unless enjoined, Sturm's behavior will continue and will cause Keurig to suffer irreparable harm.   Keurig is entitled to an injunction under the principles of equity and on terms deemed reasonable by the court.

89.     On information and belief, such use by Sturm is knowing and willful and with the intent to trade off the good will established by Keurig in its KEURIG mark.

90.     Because of Sturm's willful deception, this case is exceptional and therefore Keurig is entitled to an award of its attorneys fees pursuant to 6 Del. C. 1953, § 2533(b).

**COUNT IX**
Unfair Competition – Delaware Common Law

91.     The allegations of the paragraphs above are restated and re-alleged as though fully set forth herein.

92.     Sturm's use of the KEURIG mark and its misleading statements as described above are likely to cause consumers and members of the public to be confused about, or to believe mistakenly that Sturm's single-serve coffee cartridges are affiliated, connected, associated, or otherwise being sold with the approval of Keurig.

93.     Sturm knows, or in the exercise of reasonable discretion should know, that its labeling practices encourages the sale of its single-serve coffee cartridges and the deception of consumers about the nature, characteristics and qualities of the cartridges in comparison, connection, or association with KEURIG.

94.     On information and belief, Sturm's acts are deliberate and willful, and have been undertaken with the purpose of deceiving customers.  As a result, Sturm has traded and continues to trade in an unlawful manner on the goodwill of Keurig and its excellent reputation as one of the leading providers of high-quality, single-serve beverage cartridges.

95.     Sturm's conduct constitutes unfair competition pursuant to the common law of the State of Delaware.

96.     As a result, Keurig has suffered damages in an amount to be determined at trial.

97.     Unless enjoined, Sturm's behavior will continue and will cause Keurig to suffer irreparable harm for which there is no adequate remedy at law.  Therefore, Keurig is entitled to injunctive relief.

065927.1002

## COUNT X
Unjust Enrichment

98.     The allegations of the paragraphs above are restated and re-alleged as though fully set forth herein.

99.     Sturm's use of the KEURIG mark and its false and misleading statements as described above are likely to cause consumers and members of the public to be confused about, or to believe mistakenly that Sturm's single-serve coffee cartridges are affiliated, connected, associated, or otherwise being sold with the approval of Keurig.

100.    On information and belief, Sturm's acts are deliberate and willful, and it has knowingly traded and continues to trade in an unlawful manner on the goodwill of Keurig and its excellent reputation as the leading provider of high-quality, single-serve beverage cartridges.

101.    Sturm has received and continues to receive benefits of its unauthorized use of Keurig's KEURIG trademark and Keurig's patents, and from its trading on the goodwill and reputation of Keurig.

102.    Sturm has unjustly retained all of the benefits of its unauthorized use of Keurig's KEURIG trademark and patents.

103.    As a result of Sturm's acts and conduct, Sturm has been unjustly enriched at Keurig's expense and to Keurig's detriment in violation of the common law of Delaware.

104.    Keurig is entitled to disgorgement of ill-gotten gains and to an award of damages in an amount to be proved at trial.

105.    Unless enjoined, Sturm's behavior will continue and will cause Keurig to suffer irreparable harm for which there is no adequate remedy at law.  Therefore, Keurig is entitled to injunctive relief.

YCST01:10222205.1                                                                      065927.1002

## RELIEF REQUESTED

WHEREFORE, Keurig requests that this Court:

A.      Enter judgment that Sturm has infringed the '488 and '938 patents;

B.      Enter judgment that Sturm has contributed to and induced infringement of the '488 and '938 patents;

C.      Enter a preliminary and permanent injunction enjoining Sturm and its affiliates, subsidiaries, officers, directors, employees, agents, representatives, licensees, successors, assigns, and all those acting for it or on its behalf, or acting in concert or privity with it, from committing further direct infringement of the '488 and '938 patents, or contributing to or inducing the infringement of the '488 and '938 patents;

D.      Award Keurig compensatory damages under 35 U.S.C. § 284;

E.      Award Keurig treble damages for Sturm's willful infringement;

F.      Award Keurig its reasonable attorney fees under 35 U.S.C. § 285 or other applicable law;

G.      Enter a judgment that Keurig's KEURIG mark and U.S. Registration Nos. 2,933,253 and 2,057,361 are valid and subsisting and are infringed by Sturm;

H.      Enter a judgment that Sturm is liable to Keurig for infringement and false designation of origin under 15 U.S.C. §§ 1114 and 1125(a);

I.      Enter a judgment that Sturm is liable to Keurig for dilution under 15 U.S.C. § 1125(c);

J.      Enter a judgment that Sturm is liable to Keurig for false advertising under 15 U.S.C. § 1125(a);

- 15 -

K.    Enter a preliminary and permanent injunction enjoining Sturm, as well as its agents, representatives, employees, assigns and all persons acting in concert or privity with it, from maintaining, using, disseminating, reproducing, promoting, distributing, or otherwise using the mark KEURIG or any mark confusingly similar thereto, as all or part of any mark, product, product packaging, configuration, or design;

L.    Enter a preliminary and permanent injunction enjoining Sturm, as well as its agents, representatives, employees, assigns and all persons acting in concert or privity with it, from describing its instant coffee in a false or misleading manner suggesting it is brewed coffee;

M.    Enter judgment that Sturm has infringed Keurig's rights in the trade dress for its packaging for coffee and tea in single-serve containers for use in coffee and tea brewing machines pursuant to 15 U.S.C. § 1125(a);

N.    Enter a preliminary and permanent injunction enjoining Sturm, as well as its agents, representatives, employees, assigns and all persons acting in concert or privity with it, from using or selling single serve beverage cartridges in packaging imitating or similar to Keurig's trade dress, or from doing any other act or thing likely to induce the mistaken belief that Sturm's goods are in any way affiliated, connected, or associated with Keurig or its goods, or from doing any other act or thing likely to cause confusion with respect to Keurig's trade dress;

O.    Enter a judgment that Sturm's trademark and trade dress infringement, false designation of origin, and dilution have been willful;

P.    Order Sturm to deliver to Keurig or to the Court for destruction all materials bearing the infringing mark or trade dress or colorable copies of Keurig's mark or trade dress;

Q.    Order Sturm to file and serve a report in writing, and under oath, setting forth the manner and form in which it has complied with the Court's order and injunction;

R.      Order Sturm to pay Keurig any damages attributable to Sturm's infringement of

the KEURIG mark and Keurig's trade dress, dilution of the KEURIG mark, and Sturm's false

designation of origin, unjust enrichment, and account for all gains, profits, and advantages

derived through that infringement, dilution, and false designation of origin (including an

accounting up through the entry of injunction), and unjust enrichment, and such damages

authorized by law, including 15 U.S.C. § 1117;

S.      Order Sturm to pay for corrective advertising as the Court deems appropriate;

T.      Order Sturm to pay Keurig its reasonable costs pursuant to 28 U.S.C. § 1920 and

attorneys' fees pursuant to 15 U.S.C. § 1117;

U.      Enter judgment that Sturm's acts constitute unfair competition in violation of the

common law of the State of Delaware and 6 Del. C. 1953, § 2532;

V.      Enter a judgment that Sturm's acts in violation of 6 Del. C. 1953, § 2532 have

been willful;

W.      Enter a preliminary and permanent injunction enjoining Sturm  as well as its

agents, representatives, employees, assigns and all persons acting in concert or privity with it,

from using or selling single-serve beverage cartridges in a manner that constitutes unfair

competition under the common law of the State of Delaware or 6 Del. C. 1953, § 2532;

X.      Order Sturm to pay damages in an amount to be proven at trial under Keurig's

Common Law Unfair Competition Claim and claim for unfair competition under 6 Del. C. 1953,

§ 2532;

Y.      Declare this an exceptional case and award Keurig its attorneys' fees and costs

pursuant to 6 Del. C. 1953 § 2533(b);

Z.      Award Keurig its costs, pre-judgment interest and post-judgment interest; and

YCST01:10222205.1                                    065927.1002

AA.     Award Keurig such other relief as the Court deems just and proper.

## **JURY DEMAND**

Keurig hereby demands a trial by jury of all issues so triable.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Karen E. Keller*

OF COUNSEL:

Michael A. Albert
Gerald B. Hrycyszyn
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000

Dated: October 1, 2010

Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
(302) 571-6600
*kkeller@ycst.com*

*Attorneys for Keurig, Incorporated*

065927.1002