# EXHIBIT 1

## YCS&T FEDEX POWERSHIP FORM   O 19138070

Today's Date: _Diane  Oct 1, 2010_

Your Name: _✓_

Attorney: _KKell_ (# _)

Client/Matter: _Ao5927.1001_

Enter Recipient Name and Address
(NO PO BOX)
**OR**
Attach PowerShip Address Label Here

_Sturm  Foods  Inc_
_c/o  Robert  C.  Ruegger_
_215  Center St._
_P.O  Box 287      54949_
_Manawa,  WI  54959_

_Kevins
Complaint
Priority First_

### Please Select Type of Service:

| SERVICES (Check Only One Box) | | DELIVERY / SPECIAL HANDLING (Services Required) |
|---|---|---|

SHIPPING: 49.70
SPECIAL: 5.30
HANDLING: 0.00
TOTAL: 55.00

Ref: 05927.1001/788
Dep:

Date: 01Oct10
Wt: 0.7 LBS    0.00
DV:
Svcs: FIRST OVERNIGHT
TRCK: 9833 9301 1287

| **Priority Overnight** (Delivery By Next Business Morning) | **Standard Overnight** (Delivery By 10:30 am) | **Day Service** |
|---|---|---|
| 1 ☐ Other Packaging | ☐ Other Packaging | ☐ at FedEx Location Weekday (Fill in Section H below) ☐ Delivery Weekday |
| 16 ☐ Fedex letter* | 56 ☐ Fedex letter* | **Saturday Service** 31 ☐ Hold at FedEx Location Saturday (Fill in Section H below) |
| 12 ☐ Fedex Pak* | 52 ☐ Fedex Pak* | 3 ☐ Delivery Saturday (Extra Charge) |
| 13 ☐ Fedex Box | 53 ☐ Fedex Box | (Not available to all locations) |
| 14 ☐ Fedex Tube | 54 ☐ Fedex Tube | 9 ☐ Saturday Pick-Up (Extra Charge) |

| **Economy Two-Day** (Delivery By Second Business Day) | **Government Overnight** (Restricted To Authorized Users Only) | **Special Handling** |
|---|---|---|
| 30 ☐ Economy* | 46 ☐ Gov't Letter | 4 ☐ Dangerous Goods (Extra Charge) |
| *Economy Letter Rate not available. Minimum charge: One pound Economy rate. | 41 ☐ Gov't Package | 6 ☐ Dry Ice Dangerous Goods Shipper's Declaration not required) |
| | | 12 ☐ Holiday Delivery (if offered) (Extra Charge) |

| * Declared Value Limit $500 ** Call for delivery schedule | Phone Number of Recipient (Optional) |
|---|---|

**H** If Hold At FedEx Location, Print FedEx Address Here:

Street Address: _____

City: _____  State: _____  Zip: _____

Parcels Operator: _KL_      Date Sent: _10/1/10_

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | | |
|---|---|---|
| KEURIG, INCORPORATED | ) | |
| | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   1 0 - 8 4 1 |
| STURM FOODS, INC. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   STURM FOODS, INC.
c/o Robert C. Ruegger
215 Center St.
P.O. Box 287
Manawa, WI 54959

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Karen E. Keller, Esq. (#4489)
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor, P.O. Box 391
Wilmington, DE 19899-0391

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:   OCT - 1 2010   _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____           _____
                                                          *Server's signature*

                                                _____
                                                          *Printed name and title*


                                                _____
                                                          *Server's address*

Additional information regarding attempted service, etc:

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEURIG, INCORPORATED, | |
| Plaintiff, | |
| v. | Civil Action No. _____ |
| STURM FOODS, INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

## RULE 7.1 DISCLOSURE STATEMENT

Pursuant to Fed. R. Civ. P. 7.1, Plaintiff Keurig, Incorporated states that it is a wholly-owned subsidiary of Green Mountain Coffee Roasters, Inc. which is a publicly-traded company (NASDAQ: GMCR).

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Karen E. Keller*

Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
*kkeller@ycst.com*

OF COUNSEL:

Michael A. Albert
Gerald B. Hrycyszyn
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000

*Attorneys for Keurig, Incorporated*

Dated: October 1, 2010

%JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| KEURIG, INCORPORATED | STURM FOODS, INC. |

**(b)** County of Residence of First Listed Plaintiff   New Castle County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Karen E. Keller, Esq. (#4489)
Young Conaway Stargatt & Taylor, LLP; 1000 West St., The Brandywine
Building 17th Floor, Wilmington, DE 19801; (302) 571-6554

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government
     Plaintiff

☒ 3  Federal Question
     (U.S. Government Not a Party)

☐ 2  U.S. Government
     Defendant

☐ 4  Diversity
     (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                              and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☒ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1 Original
     Proceeding

☐ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     another district
     (specify)

☐ 6 Multidistrict
     Litigation

☐ 7 Appeal to District
     Judge from
     Magistrate
     Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
35 U.S.C. § 271, et seq.; 15 U.S.C. § 1051, et. seq.
Brief description of cause:
Patent Infringement, Trademark Infringement, Unfair Competition, False Advertising, etc.

## VII. REQUESTED IN
## COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
   UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S)
## IF ANY

(See instructions)

JUDGE

DOCKET NUMBER

DATE
10/01/2010

SIGNATURE OF ATTORNEY OF RECORD
Karen R. Keller (#4489)

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.       (a) Plaintiffs-Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.      Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.     Residence (citizenship) of Principal Parties. This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.      Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.       Origin. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.      Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause. Do not cite jurisdictional statutes unless diversity.            Example:        U.S. Civil Statute: 47 USC 553
                                                 Brief Description: Unauthorized reception of cable service

VII.     Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.    Related Cases. This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

Date and Attorney Signature. Date and sign the civil cover sheet.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEURIG, INCORPORATED,<br><br>  Plaintiff,<br><br>v.<br><br>STURM FOODS, INC.,<br><br>  Defendants. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

## **COMPLAINT**

Plaintiff Keurig, Incorporated ("Keurig"), by and through its undersigned counsel, for its Complaint against Defendant Sturm Foods, Inc. ("Sturm"), alleges as follows:

### **THE PARTIES**

1.     Keurig is a Delaware corporation with a place of business at 55 Walkers Brook Drive, Reading, Massachusetts 01867.

2.     Sturm is a Wisconsin corporation with a place of business at 1215 Center Street, Manawa, Wisconsin 54949.

### **JURISDICTION AND VENUE**

3.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 100 *et seq.*, and for trademark infringement, trade dress infringement, unfair competition, false advertising, deceptive trade practices, dilution, and unjust enrichment under the laws of the United States, namely, the Lanham Act, 15 U.S.C. § 1051 *et seq*.

4.     This action also includes claims for unfair competition arising under the laws of the State of Delaware.

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

6.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391, 1400.

## COUNT I
### Infringement of United States Patent No. 7,165,488

7.      The allegations of the paragraphs above are restated and re-alleged as though fully set forth herein.

8.      Keurig is the owner of United States Patent No. 7,165,488, entitled "Brew Chamber For A Single Serve Beverage Brewer" (the "'488 patent"). Keurig has the right to sue for infringement of the '488 patent. A copy of the '488 patent is attached hereto as Exhibit A.

9.      Sturm offers beverage cartridges that are advertised for use with Keurig's single-serve beverage brewers.

10.     On information and belief, Sturm has infringed, and continues to infringe, literally or under the doctrine of equivalents, the '488 patent, at least by making, using, offering to sell, and/or selling infringing beverage cartridges intended for use with Keurig's single-serve beverage brewers within the United States.

11.     Sturm is inducing and contributing to infringement of the '488 patent, by causing others to use its beverage cartridges in Keurig's single-serve beverage brewers in a manner that is covered, literally or under the doctrine of equivalents, by one or more of the claims of the '488 patent within the United States.

12.     On information and belief, Sturm's infringement of the '488 patent has been and continues to be knowing and willful.

13.     Sturm's infringement of the '488 patent has caused and continues to cause Keurig to suffer substantial money damages.

- 2 -

14.     Sturm's infringement of the '488 patent has caused and continues to cause Keurig to suffer irreparable harm for which there is no adequate remedy at law.

15.     This case is exceptional and therefore Keurig is entitled to an award of its attorneys fees pursuant to 35 U.S.C. § 285.

**COUNT II**
Infringement of United States Patent No. 6,606,938

16.     The allegations of the paragraphs above are restated and re-alleged as though fully set forth herein.

17.     Keurig is the owner of United States Patent No. 6,606,938, entitled "Two Step Puncturing And Venting Of Single Serve Filter Cartridge In A Beverage Brewer" (the "'938 patent"). Keurig has the right to sue for infringement of the '938 patent. A copy of the '938 patent is attached hereto as Exhibit B.

18.     Sturm offers beverage cartridges that are advertised for use with Keurig's single-serve beverage brewers.

19.     On information and belief, Sturm has infringed, and continues to infringe, literally or under the doctrine of equivalents, the '938 patent, at least by making, using, offering to sell, and/or selling infringing beverage cartridges intended for use with Keurig's single-serve beverage brewers within the United States.

20.     Sturm is inducing and contributing to infringement of the '938 patent, by causing others to use its beverage cartridges in Keurig's single-serve beverage brewers in a manner that is covered, literally or under the doctrine of equivalents, by one or more of the claims of the '938 patent within the United States.

21.     On information and belief, Sturm's infringement of the '938 patent has been and continues to be knowing and willful.

- 3 -

22.     Sturm's infringement of the '938 patent has caused and continues to cause Keurig to suffer substantial money damages.

23.     Sturm's infringement of the '938 patent has caused and continues to cause Keurig to suffer irreparable harm for which there is no adequate remedy at law.

24.     This case is exceptional and therefore Keurig is entitled to an award of its attorneys fees pursuant to 35 U.S.C. § 285.

**COUNT III**
Trademark Infringement Under 15 U.S.C. § 1114

25.     The allegations of the paragraphs above are restated and re-alleged as though fully set forth herein.

26.     Keurig owns a United States trademark registration for the mark KEURIG (U.S. Reg. No. 2,933,253; registered March 15, 2005) for coffee and tea sold in single-serve containers for use in coffee and tea brewing machines.  The registration for the KEURIG mark is in full force and effect.  A copy of the registration is attached to this Complaint as Exhibit C.

27.     Keurig owns a United States trademark registration for the mark KEURIG (U.S. Reg. No. 2,057,361; registered April 29, 1997) for coffee brewing machines for domestic and commercial use.  The registration for the KEURIG mark is in full force and effect.  A copy of the registration is attached to this Complaint as Exhibit D.

28.     These trademark registrations for the mark KEURIG have become incontestable pursuant to the provisions of 15 U.S.C. § 1065.  The United States Patent and Trademark Office has acknowledged and accepted the status of these registrations for the KEURIG mark as incontestable.

29.     Keurig sells Keurig® brand coffee and tea in single-serve containers for use in coffee and tea brewing machines in the United States.

- 4 -

30.     Keurig sells Keurig® brand coffee brewing machines for domestic and commercial use in the United States.

31.     Sturm offers beverage cartridges that are advertised "For use by owners of Keurig® coffee makers" implying that the Sturm beverage cartridges are authorized, sponsored, or endorsed by Keurig, and/or that Sturm is affiliated with Keurig.

32.     Packages of Sturm's beverage cartridges include a statement that "Sturm Foods, Inc. has no affiliation with Keurig, Incorporated," hidden on the underside of the packaging that is not visible to consumers in the normal manner in which the package is displayed on shelves in retail locations.

33.     On information and belief, Sturm is currently offering to sell and selling such beverage cartridges to retailers in interstate commerce.

34.     On information and belief, Sturm plans to launch its beverage cartridges in the retail market in early October 2010.

35.     Keurig has not authorized Sturm to use its KEURIG mark.

36.     Keurig has not endorsed, sponsored, or otherwise authorized Sturm's beverage cartridges.

37.     Keurig is not in any way affiliated with Sturm.

38.     Sturm's use of the KEURIG mark is without permission of Keurig and is likely to cause confusion or mistake or to deceive.

39.     Sturm is liable to Keurig for infringement under 15 U.S.C. § 1114.

40.     On information and belief, such use by Sturm is knowing and willful and with the intent to trade off the good will established by Keurig in its KEURIG mark.

41.     Keurig has been damaged by such conduct in an amount to be determined at trial.

- 5 -

42.     Unless enjoined, Sturm's behavior will continue and will cause Keurig to suffer irreparable harm for which there is no adequate remedy at law.  Therefore, Keurig is entitled to injunctive relief.  It is also entitled to damages for the infringement.

## COUNT IV
### False Designation of Origin Under 15 U.S.C. § 1125(a)

43.     The allegations of the paragraphs above are restated and re-alleged as though fully set forth herein.

44.     The KEURIG mark is recognized for quality in coffee and tea brewed in single-serve containers.

45.     Sturm is targeting its beverage cartridges to an identical class of consumers as Keurig in the same areas.  Indeed, Sturm is advertising such cartridges for use in Keurig's brewers.  Sturm's cartridges have no other use except in Keurig's brewers.

46.     Sturm's use of the KEURIG mark is confusingly similar to Keurig's use of the KEURIG mark.  Indeed it is identical.  Such use has the effect of associating Sturm and its products with the KEURIG mark in the minds of the purchasing public and of trading off the goodwill acquired by Keurig.

47.     Sturm's actions are likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of Sturm with Keurig or as to the origin, sponsorship, or approval of Sturm's sale of goods by Keurig, entitling Keurig to relief under 15 U.S.C.§ 1125(a).

48.     On information and belief, such use by Sturm is knowing and willful and with the intent to trade off the good will established by Keurig in its KEURIG mark.

49.     Keurig has been damaged by such conduct in an amount to be determined at trial.

- 6 -

50.     Unless enjoined, Sturm's behavior will continue and will cause Keurig to suffer irreparable harm for which there is no adequate remedy at law.  Therefore, Keurig is entitled to injunctive relief.  It is also entitled to damages for such false designation of origin.

### COUNT V
Trade Dress Infringement Under 15 U.S.C. § 1125(a)

51.     The allegations of the paragraphs above are restated and re-alleged as though fully set forth herein.

52.     Keurig sells single-serve beverage cartridges in packaging that has a distinctive look and feel stemming from, among other things, an image of single-serve beverage cartridges, with at least one beverage cartridge depicted on its side and one beverage cartridge depicted right-side up, and a tagline below the image of the cartridges that states they are for use in Keurig brewers, an image of spilled coffee beans, an indication of the coffee's roast strength on a graded bar with shading varying from light to dark, along with an indication whether the coffee is caffeinated, perforations for opening the package that form an opening that is tapered in a v-shape and ending in a u-shaped tab, prominent lettering displaying the name of the beverage, and another face of the packaging providing a product story (the "distinctive trade dress"). Purchasers of single-serve beverage cartridges associate the distinctive appearance of the packaging for Keurig's single-serve beverage cartridges with Keurig.

53.     The appearance of Keurig's single-serve beverage cartridge packaging is sufficiently distinctive that this trade dress identifies Keurig as the source of the single-serve beverage cartridges.  The display of the Keurig packaging for its single-serve beverage cartridges is a major source of Keurig's advertising.  Keurig has invested substantial sums in the design and promotion of these single-serve beverage cartridges.

- 7 -

54.     Keurig has sold over three billion (3,000,000,000) single-serve cartridges.  The appearance of Keurig's packaging for single-serve beverage cartridges is distinctive and has acquired secondary meaning and consumers of single-serve beverage cartridges identify the appearance of such KEURIG single-serve beverage cartridges as originating with Keurig.

55.     The distinctive trade dress of Keurig's packaging for single-serve beverage cartridges, among other things, constitutes non-functional, protectable trade dress.

56.     Sturm makes, sells, offers to sell and/or uses within the United States, and/or imports into the United States certain single-serve beverage cartridges, including its coffee beverage cartridges.

57.     On information and belief, Sturm is and has at all material times been aware of Keurig, its products, and its trade dress.

58.     Sturm has infringed and continues to infringe on Keurig's trade dress rights through its imitation in interstate commerce of Keurig's trade dress for its single-serve beverage cartridges.

59.     Sturm's imitation of Keurig's trade dress for its single-serve beverage cartridge packaging is likely to cause confusion, mistake, or deception as to the source, affiliation, connection, or association of Sturm's coffee beverage cartridges with Keurig.

60.     As a result of Sturm's wrongful conduct, Keurig has been damaged and will continue to be damaged in an amount to be determined at trial.  Keurig has suffered and continues to suffer immediate and irreparable injury for which it has no adequate remedy at law.

61.     On information and belief, such use by Sturm is knowing and willful and with the intent to trade off the good will established by Keurig in its trade dress.

62.     Unless Sturm is enjoined from these acts, it will continue to misappropriate Keurig's trade dress, further diminishing the value of Keurig's goodwill.

## COUNT VI
### False Advertising Under 15 U.S.C. § 1125(a)

63.     The allegations of the paragraphs above are restated and re-alleged as though fully set forth herein.

64.     Keurig is a pioneer and leading manufacturer of single-serve brewing systems. Single-serve brewing systems permit users to enjoy freshly brewed coffee one cup at a time while eliminating the inconvenience of grinding beans, measuring coffee, and handling messy filters.  Cartridges used in single-serve brewing systems are sealed containers that preserve the freshness of the ground coffee that they contain.

65.     Keurig has invested and continues to invest a great deal of time, money, and effort in designing single-serve brewing systems that brew a coffeehouse-quality cup of coffee each time.

66.     Over the 16 years Keurig has been using the KEURIG mark, it has invested a great deal of time, money, and effort in promoting its KEURIG mark and the goodwill it embodies.

67.     Keurig has built a reputation of high-quality brewed beverages around the KEURIG mark.  Keurig has sold over three billion (3,000,000,000) single-serve cartridges and millions of brewers under the KEURIG mark.

68.     Sturm's single-cup coffee cartridge is "instant" coffee.  Instant coffee is not freshly brewed coffee but rather is a dehydrated soluble powder that can be mixed with water to yield a coffee-like beverage.

- 9 -

69.     Sturm's advertising for its single-cup coffee cartridges, through the descriptions on the packaging for these cartridges, conveys the false impression that Sturm's instant coffee is actually fresh-brewed.

70.     For instance, Sturm indicates on the center of the front facing panel of its cartridge package that its coffee is "Naturally Roasted, Soluble & Microground Arabica Coffee." An average consumer would not interpret this description to mean "instant coffee" or something other than fresh-brewed coffee.

71.     Further in the description on the upper portion of the front-facing panel of its cartridge package, Sturm represents that its coffee is similar to that found in "neighborhood coffee shops" where the coffee was "simply fresh, hot, and delicious." Sturm indicates that it has "recaptured this rich traditional cup."

72.     Sturm depicts spilled whole coffee beans on its cartridge package, implying that its cartridges produce brewed coffee.

73.     These statements and images, descriptive of traditional, freshly brewed coffee have a tendency to deceive a substantial segment of consumers for single-serve beverage cartridges into buying Sturm's product under the impression that the single-cup coffee cartridge, when used with Keurig's brewer system, will produce freshly brewed coffee.

74.     Sturm's false representation of the quality and nature of its single-serve instant coffee products have a tendency to deceive a substantial segment of consumers for single-serve beverage cartridges into buying Sturm's product under the impression that Sturm's product is freshly brewed coffee and constitutes false advertising in violation of the Lanham Act's prohibition on deceptive trade practices.

- 10 -

75.     Keurig's reputation for making high quality brewed coffee and the goodwill associated with its KEURIG mark will be harmed if consumers associate poor quality instant coffee made using KEURIG branded brewers with Keurig.

76.     Keurig has been damaged by such conduct in an amount to be determined at trial.

77.     Unless enjoined, Sturm's behavior will continue and will cause Keurig to suffer irreparable harm for which there is no adequate remedy at law.   Therefore, Keurig is entitled to injunctive relief.

**COUNT VII**
Dilution Under 15 U.S.C. § 1125(c)

78.     The allegations of the paragraphs above are restated and re-alleged as though fully set forth herein.

79.     As described above, Keurig owns valid and existing rights in the KEURIG mark.

80.     Through continued use, product promotion, and consumer and industry recognition, Keurig has developed the KEURIG mark to the point that it is famous.   Sturm is now using the KEURIG mark on its packaging for a similar, but lesser quality product.   In so doing Sturm is creating an association between the Sturm instant (and lesser quality) coffee and the KEURIG mark that has been long equated with high quality, freshly-brewed, single-serve coffee.

81.     This association is likely to cause a dilution of the strong correlation that Keurig has built between its KEURIG mark and its high-quality product in violation of 15 U.S.C. § 1125(c).

82.     As a result of Sturm's wrongful conduct, Keurig has been damaged and will continue to be damaged in an amount to be determined at trial.

- 11 -

83.     On information and belief, such use by Sturm is knowing and willful and with the intent to trade off the good will established by Keurig in its KEURIG mark.

84.     Unless enjoined, Sturm's behavior will continue and will cause Keurig to suffer irreparable harm for which there is no adequate remedy at law.   Therefore, Keurig is entitled to injunctive relief.

**COUNT VIII**
Unfair Competition Under Delaware Uniform Deceptive Trade Practices Act -
6 Del. C. 1953, § 2531 *et. seq.*

85.     The allegations of the paragraphs above are restated and re-alleged as though fully set forth herein.

86.     Sturm's use of the KEURIG mark and its misleading statements as described above are likely to cause consumers and members of the public to be confused about, or to believe mistakenly that Sturm's single-serve coffee cartridges are affiliated, connected, associated, or otherwise being sold with the approval of Keurig.

87.     Sturm's conduct constitutes unfair deceptive trade practices in violation of the Uniform Deceptive Trade Practices Act, 6 Del. C. 1953, § 2532 *et. seq.*

88.     Sturm's deceptive trade practice are causing and will cause direct harm to Keurig for which there is no adequate remedy at law. Unless enjoined, Sturm's behavior will continue and will cause Keurig to suffer irreparable harm.   Keurig is entitled to an injunction under the principles of equity and on terms deemed reasonable by the court.

89.     On information and belief, such use by Sturm is knowing and willful and with the intent to trade off the good will established by Keurig in its KEURIG mark.

90.     Because of Sturm's willful deception, this case is exceptional and therefore Keurig is entitled to an award of its attorneys fees pursuant to 6 Del. C. 1953, § 2533(b).

- 12 -

**COUNT IX**
Unfair Competition – Delaware Common Law

91.     The allegations of the paragraphs above are restated and re-alleged as though fully set forth herein.

92.     Sturm's use of the KEURIG mark and its misleading statements as described above are likely to cause consumers and members of the public to be confused about, or to believe mistakenly that Sturm's single-serve coffee cartridges are affiliated, connected, associated, or otherwise being sold with the approval of Keurig.

93.     Sturm knows, or in the exercise of reasonable discretion should know, that its labeling practices encourages the sale of its single-serve coffee cartridges and the deception of consumers about the nature, characteristics and qualities of the cartridges in comparison, connection, or association with KEURIG.

94.     On information and belief, Sturm's acts are deliberate and willful, and have been undertaken with the purpose of deceiving customers.  As a result, Sturm has traded and continues to trade in an unlawful manner on the goodwill of Keurig and its excellent reputation as one of the leading providers of high-quality, single-serve beverage cartridges.

95.     Sturm's conduct constitutes unfair competition pursuant to the common law of the State of Delaware.

96.     As a result, Keurig has suffered damages in an amount to be determined at trial.

97.     Unless enjoined, Sturm's behavior will continue and will cause Keurig to suffer irreparable harm for which there is no adequate remedy at law.  Therefore, Keurig is entitled to injunctive relief.

## COUNT X
Unjust Enrichment

98.     The allegations of the paragraphs above are restated and re-alleged as though fully set forth herein.

99.     Sturm's use of the KEURIG mark and its false and misleading statements as described above are likely to cause consumers and members of the public to be confused about, or to believe mistakenly that Sturm's single-serve coffee cartridges are affiliated, connected, associated, or otherwise being sold with the approval of Keurig.

100.    On information and belief, Sturm's acts are deliberate and willful, and it has knowingly traded and continues to trade in an unlawful manner on the goodwill of Keurig and its excellent reputation as the leading provider of high-quality, single-serve beverage cartridges.

101.    Sturm has received and continues to receive benefits of its unauthorized use of Keurig's KEURIG trademark and Keurig's patents, and from its trading on the goodwill and reputation of Keurig.

102.    Sturm has unjustly retained all of the benefits of its unauthorized use of Keurig's KEURIG trademark and patents.

103.    As a result of Sturm's acts and conduct, Sturm has been unjustly enriched at Keurig's expense and to Keurig's detriment in violation of the common law of Delaware.

104.    Keurig is entitled to disgorgement of ill-gotten gains and to an award of damages in an amount to be proved at trial.

105.    Unless enjoined, Sturm's behavior will continue and will cause Keurig to suffer irreparable harm for which there is no adequate remedy at law.  Therefore, Keurig is entitled to injunctive relief.

- 14 -

**RELIEF REQUESTED**

WHEREFORE, Keurig requests that this Court:

A.      Enter judgment that Sturm has infringed the '488 and '938 patents;

B.      Enter judgment that Sturm has contributed to and induced infringement of the '488 and '938 patents;

C.      Enter a preliminary and permanent injunction enjoining Sturm and its affiliates, subsidiaries, officers, directors, employees, agents, representatives, licensees, successors, assigns, and all those acting for it or on its behalf, or acting in concert or privity with it, from committing further direct infringement of the '488 and '938 patents, or contributing to or inducing the infringement of the '488 and '938 patents;

D.      Award Keurig compensatory damages under 35 U.S.C. § 284;

E.      Award Keurig treble damages for Sturm's willful infringement;

F.      Award Keurig its reasonable attorney fees under 35 U.S.C. § 285 or other applicable law;

G.      Enter a judgment that Keurig's KEURIG mark and U.S. Registration Nos. 2,933,253 and 2,057,361 are valid and subsisting and are infringed by Sturm;

H.      Enter a judgment that Sturm is liable to Keurig for infringement and false designation of origin under 15 U.S.C. §§ 1114 and 1125(a);

I.      Enter a judgment that Sturm is liable to Keurig for dilution under 15 U.S.C. § 1125(c);

J.      Enter a judgment that Sturm is liable to Keurig for false advertising under 15 U.S.C. § 1125(a);

K.      Enter a preliminary and permanent injunction enjoining Sturm, as well as its agents, representatives, employees, assigns and all persons acting in concert or privity with it, from maintaining, using, disseminating, reproducing, promoting, distributing, or otherwise using the mark KEURIG or any mark confusingly similar thereto, as all or part of any mark, product, product packaging, configuration, or design;

L.      Enter a preliminary and permanent injunction enjoining Sturm, as well as its agents, representatives, employees, assigns and all persons acting in concert or privity with it, from describing its instant coffee in a false or misleading manner suggesting it is brewed coffee;

M.      Enter judgment that Sturm has infringed Keurig's rights in the trade dress for its packaging for coffee and tea in single-serve containers for use in coffee and tea brewing machines pursuant to 15 U.S.C. § 1125(a);

N.      Enter a preliminary and permanent injunction enjoining Sturm, as well as its agents, representatives, employees, assigns and all persons acting in concert or privity with it, from using or selling single serve beverage cartridges in packaging imitating or similar to Keurig's trade dress, or from doing any other act or thing likely to induce the mistaken belief that Sturm's goods are in any way affiliated, connected, or associated with Keurig or its goods, or from doing any other act or thing likely to cause confusion with respect to Keurig's trade dress;

O.      Enter a judgment that Sturm's trademark and trade dress infringement, false designation of origin, and dilution have been willful;

P.      Order Sturm to deliver to Keurig or to the Court for destruction all materials bearing the infringing mark or trade dress or colorable copies of Keurig's mark or trade dress;

Q.      Order Sturm to file and serve a report in writing, and under oath, setting forth the manner and form in which it has complied with the Court's order and injunction;

- 16 -

R.     Order Sturm to pay Keurig any damages attributable to Sturm's infringement of the KEURIG mark and Keurig's trade dress, dilution of the KEURIG mark, and Sturm's false designation of origin, unjust enrichment, and account for all gains, profits, and advantages derived through that infringement, dilution, and false designation of origin (including an accounting up through the entry of injunction), and unjust enrichment, and such damages authorized by law, including 15 U.S.C. § 1117;

S.     Order Sturm to pay for corrective advertising as the Court deems appropriate;

T.     Order Sturm to pay Keurig its reasonable costs pursuant to 28 U.S.C. § 1920 and attorneys' fees pursuant to 15 U.S.C. § 1117;

U.     Enter judgment that Sturm's acts constitute unfair competition in violation of the common law of the State of Delaware and 6 Del. C. 1953, § 2532;

V.     Enter a judgment that Sturm's acts in violation of 6 Del. C. 1953, § 2532 have been willful;

W.     Enter a preliminary and permanent injunction enjoining Sturm  as well as its agents, representatives, employees, assigns and all persons acting in concert or privity with it, from using or selling single-serve beverage cartridges in a manner that constitutes unfair competition under the common law of the State of Delaware or 6 Del. C. 1953, § 2532;

X.     Order Sturm to pay damages in an amount to be proven at trial under Keurig's Common Law Unfair Competition Claim and claim for unfair competition under 6 Del. C. 1953, § 2532;

Y.     Declare this an exceptional case and award Keurig its attorneys' fees and costs pursuant to 6 Del. C. 1953 § 2533(b);

Z.     Award Keurig its costs, pre-judgment interest and post-judgment interest; and

- 17 -

AA.    Award Keurig such other relief as the Court deems just and proper.

## JURY DEMAND

Keurig hereby demands a trial by jury of all issues so triable.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Karen E Keller*

OF COUNSEL:

Michael A. Albert
Gerald B. Hrycyszyn
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000

Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
(302) 571-6600
*kkeller@ycst.com*

*Attorneys for Keurig, Incorporated*

Dated: October 1, 2010

- 18 -

# EXHIBIT A

US007165488B2

## (12) United States Patent
### Bragg et al.

(10) **Patent No.:** **US 7,165,488 B2**
(45) **Date of Patent:** **Jan. 23, 2007**

(54) **BREW CHAMBER FOR A SINGLE SERVE BEVERAGE BREWER**

(75) Inventors: **Tim A. Bragg**, Malden, MA (US); **C. Anthony Lai**, Burlington, MA (US)

(73) Assignee: **Keurig, Incorporated**, Wakefield, MA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 273 days.

(21) Appl. No.: **10/734,649**

(22) Filed: **Dec. 12, 2003**

(65) **Prior Publication Data**

US 2005/0126399 A1      Jun. 16, 2005

(51) **Int. Cl.**
*A47J 31/00* (2006.01)

(52) **U.S. Cl.** .................... **99/295**; 99/289 R; 99/302 R; 426/433

(58) **Field of Classification Search** .................. 99/295, 99/289 R, 302 R
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,007,392 | A * | 11/1961 | Pecoraro et al. .............. 99/307 |
| 4,581,239 | A | 4/1986 | Woolman et al. |
| 4,644,855 | A | 2/1987 | Woolman et al. |
| 4,738,378 | A | 4/1988 | Oakley et al. |
| 5,272,960 | A | 12/1993 | Kinna |
| 5,649,472 | A | 7/1997 | Fond et al. |
| 5,794,519 | A * | 8/1998 | Fischer ........................ 99/295 |
| 6,009,792 | A | 1/2000 | Kraan |
| 6,047,630 | A | 4/2000 | Brown et al. |
| 6,050,175 | A | 4/2000 | Mirand et al. |
| 6,490,966 | B2 | 12/2002 | Mariller et al. |
| 6,584,888 | B2 | 7/2003 | Cortese |
| 6,655,260 | B2 * | 12/2003 | Lazaris et al. ................. 99/295 |
| 6,698,332 | B2 | 3/2004 | Kollep et al. |

| | | | |
|---|---|---|---|
| 6,725,762 | B2 | 4/2004 | Kollep et al. |
| 6,748,850 | B1 | 6/2004 | Kraan |
| 6,763,759 | B2 | 7/2004 | Denisart |
| 6,799,503 | B2 | 10/2004 | Kollep et al. |
| 6,857,352 | B2 | 2/2005 | Fischer |
| 6,857,353 | B2 * | 2/2005 | Kollep et al. ............. 99/289 R |
| 6,904,840 | B1 | 6/2005 | Pfeifer et al. |
| 2002/0002913 | A1 | 1/2002 | Mariller et al. |
| 2002/0124736 | A1 | 9/2002 | Kollep et al. |
| 2004/0031394 | A1 | 2/2004 | Yoakim et al. |
| 2004/0182248 | A1 | 9/2004 | Fischer |

(Continued)

FOREIGN PATENT DOCUMENTS

EP          0151252          8/1985

(Continued)

*Primary Examiner*—Reginald L. Alexander
(74) *Attorney, Agent, or Firm*—Wolf, Greenfield & Sacks, P.C.

(57) **ABSTRACT**

A brew chamber for a single serve filter package. The chamber includes a receptacle having an open top, configured and dimensioned to receive the package. A frame for supporting the receptacle for pivotal movement about a first axis between a vertical brew position and a forwardly inclined open position. A lid is supported on the frame for pivotal movement about a second axis between a raised position allowing access to the open top when the receptacle is in the open position, and a lowered position closing the open top when the receptacle is in the brew position. The receptacle is linked to the lid such that the receptacle is pivoted between the brew and open positions in response to movement of the lid between the lowered and raised positions.

**33 Claims, 8 Drawing Sheets**



**US 7,165,488 B2**

Page 2

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 2005/0106288 A1 | 5/2005 | Blanc et al. |
| 2005/0132891 A1 | 6/2005 | Chen et al. |
| 2005/0235834 A1 | 10/2005 | Blanc et al. |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| EP | 0870457 A1 | 10/1998 | |

| | | |
|---|---|---|
| WO | WO-94/02059 | 2/1994 |
| WO | WO-98/20782 | 5/1998 |
| WO | WO-01/30218 A1 | 5/2001 |

* cited by examiner

**U.S. Patent**     Jan. 23, 2007     Sheet 1 of 8     US 7,165,488 B2



FIG. I



FIG. 2



FIG. 3



**U.S. Patent**       Jan. 23, 2007       Sheet 5 of 8       US 7,165,488 B2



FIG. 5



FIG. 6



FIG. 7



FIG. 8

US 7,165,488 B2

1

## BREW CHAMBER FOR A SINGLE SERVE BEVERAGE BREWER

### BACKGROUND OF THE INVENTION

1. Field of the Invention

This invention relates generally to single serve beverage brewers, and is concerned in particular with the provision of a novel and improved brew chamber for such brewers.

2. Description of the Prior Art

In known brew chambers for single serve beverage brewers, such as those disclosed for example in U.S. Pat. Nos. 5,325,765; 6,079,315; 6,142,063; and 6,606,938, a disposable beverage filter cartridge is pierced by inlet and outlet probes to accommodate a through flow of heated hot water. The hot water infuses a dry beverage medium contained in the cartridge to thereby produce a single serving of the beverage.

The brew chambers are opened and closed by automatically operable mechanisms that have proven to be reliable, although relatively complex and expensive.

Other beverage brewers of the type disclosed for example in WO 02/43541 A1 have brew chambers that are opened and closed manually, but these also employ unduly complicated operating mechanisms.

Moreover, the prior art brew chambers, be they automatically or manually operated, suffer from an added disadvantage in that their cartridge or pod receptacles remain vertical and thus inconveniently oriented when the chambers are opened.

There exists a need, therefore, for an improved beverage chamber that has a relatively simple and inexpensive operating mechanism, with the capability of presenting the cartridge receptacle in a forwardly inclined position, thus enhancing its accessibility during both insertion of fresh cartridges and retrieval of spent cartridges.

### SUMMARY OF THE INVENTION

A brew chamber in accordance with the present invention has a receptacle with an open top configured and dimensioned to receive a beverage filter cartridge. A fixed frame supports the receptacle for pivotal movement about a first axis between a vertical brew position and a forwardly inclined open position. A lid is supported on the frame for pivotal movement about a second axis between a raised position allowing access to the forwardly inclined open receptacle, and a lowered position closing the receptacle in its vertical brew position. The first and second axes are parallel. A linkage connects the receptacle to the lid and serves to pivotally manipulate the receptacle between its open and brew positions in response to movement of the lid between its raised and lowered positions.

These and other features and advantages of the present invention will now be described in greater detail with reference to the accompanying drawings, wherein:

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a front perspective view of a single serve beverage brewer, with a brew chamber in accordance with the present invention shown in its closed condition;

FIG. 2 is a side elevational view of the brewer as shown in FIG. 1;

FIG. 3 is a view similar to FIG. 1 showing the brew chamber in its open condition;

2

FIG. 4 is a side elevational view of the brewer as shown in FIG. 3;

FIG. 5 is a side view of the brew chamber and its operating mechanism removed from the brewer housing, the chamber being shown open;

FIG. 6 is a view similar to FIG. 5 showing the brew chamber in the process of being closed;

FIG. 7 is a view similar to FIGS. 5 and 6 showing the brew chamber closed; and

FIG. 8 is a top plan view of the closed brew chamber.

### DETAILED DESCRIPTION OF PREFERRED EMBODIMENTS

With reference initially to FIGS. 1–4, a single serve beverage brewer is shown at 10 having a housing 12 with a forwardly protruding shelf 14 arranged to support a cup 16 for the brewed beverage.

The housing 12 contains components conventionally included in brewers of this type, including, inter alia, a water tank, heater, pump, electronic controls, etc. These are well known to those skilled in the art, and thus have not been illustrated, nor will they be described further in this specification. Suffice it to say that these components coact in response to the user's command to deliver a metered amount of heated water to a brew chamber generally indicated at 18.

The brew chamber includes a cartridge receptacle 20 and a lid 22. The receptacle has an open top configured and dimensioned to receive a beverage filter cartridge 24 (see FIGS. 3 and 4). The cartridge 24 is preferably of the type disclosed, for example, in U.S. Pat. No. 5,840,189, the description of which is herein incorporated by reference. Cartridge 24 includes an impermeable pierceable container internally subdivided by a filter element into two compartments, one of which contains a dry beverage medium. Alternatively, the brew chamber could be employed to process beverage pods that typically are structured with soluble beverage materials confined between top and bottom filter media.

With reference additionally to FIGS. 5–8, the brew chamber 18 includes a frame structure 26 secured in any known manner within the brewer housing 12.

The receptacle 20 is supported by the frame structure for pivotal movement about a first axis $A_1$ between a vertical brew position, as shown in FIGS. 1, 2, 7 and 8, and a forwardly inclined open position, as shown in FIGS. 3, 4 and 5.

The lid 22 is supported by the frame structure 26 for pivotal movement about a second axis $A_2$ between a lowered closed position, again as shown in FIGS. 1, 2, 7 and 8, and a raised open position as shown in FIGS. 3, 4 and 5. The raised lid allows access to the forwardly inclined receptacle for convenient insertion and removal of a beverage filter cartridge 24. The lowered lid closes and cooperates with the receptacle to enclose a filter cartridge during the brew cycle. As shown in FIG. 6, the lid carries an inlet probe 28 and as shown in FIG. 7, the base of the receptacle includes an outlet probe 30. The probes pierce the cartridge as the lid is lowered to its closed position, thus accommodating a through flow of heated water into the cartridge via the inlet probe for infusion with the beverage medium contained in the cartridge, with the resulting brewed beverage exiting via the outlet probe for delivery to the underlying cup 16. As mentioned previously, a beverage pod could be employed alternatively, with water flowing into the brew chamber via

US 7,165,488 B2

3

an inlet port or ports rather than an inlet probe, with the brewed beverage exiting the brew chamber via an outlet port or ports.

As can be seen in FIGS. 5–8, a linkage generally indicated at 32 connects the receptacle 20 to the lid 22 and serves to pivot the former between its vertical brew and forwardly inclined positions in response to movement of the latter between its lowered and raised positions. The linkage includes arms 34 secured at their upper ends to the lid 22, and carrying pins 36 at their lower ends. The pins 36 are positioned to ride in contoured slots 38 in opposite sides of the receptacle 20. The slots 38 have upper horizontal segments 38a communicating at bends 38b with rearwardly inclined and somewhat enlarge lower segments 38c.

A generally U-shaped operating handle 40 has its ends connected to the lid 22 for pivotal movement about a third axis $A_3$ parallel to the first and second axes $A_1$, $A_2$. The handle 40 carries connecting arms 42 pivotally connected as at 44 to links 46 which in turn are pivotally connected as at 48 to the frame structure 26.

When the receptacle 20 is in its forwardly inclined open position as shown in FIG. 5, the operating handle 40 is at an angle of approximately 90° with respect to the lid 22, and the pins 36 on arms 34 are at the rearmost ends of the horizontal slot segments 38a.

As the arm 40 is pivoted forwardly about axis $A_3$ (FIG. 6), the pins 36 on arms 34 progress around the slot bends 38b, pivotally urging the receptacle about axis $A_1$ rearwardly from its forwardly inclined position. Simultaneously, the cooperative pivotal action of the arms 42 and links 46 causes the lid 22 to be pivotally lowered about axis $A_2$.

At the closed position shown in FIG. 7, the pins 36 on arms 34 have reached the lower ends of the slots 38, and the operating arm 40 is substantially parallel to the fully lowered lid 22.

In light of the foregoing, it will now be understood that the mechanism of the present invention is relatively simple, involving as major components the receptacle 20, lid 22 and handle 40 respectively mounted for pivotal movement about parallel axes $A_1$, $A_2$ and $A_3$. The brew chamber 18 can accommodate various types of disposable filter packages, including the filter cartridge 24 shown in the drawings, as well as filter pods. When the brew chamber is opened, the receptacle is inclined forwardly to facilitate insertion of fresh filter packages and removal of spent filter packages.

We claim:

1. An apparatus for forming a beverage, comprising:
   a housing adapted to support components of a beverage forming device;
   a receptacle, having an opening to receive a beverage cartridge, movable relative to the housing between a vertical position and a stationary, inclined position in which the receptacle is arranged to receive and hold a beverage cartridge; and
   a lid movable relative to the housing between open and closed positions, the lid in the closed position cooperating with the receptacle in the vertical position to facilitate formation of a beverage when liquid is provided to the cartridge;
   wherein in the inclined position, the receptacle opening faces in a direction away from the lid, and the receptacle opening has a center axis extending from a center of the opening, and when the receptacle is in the vertical position, the center axis extends vertically and intersects the lid, and when the receptacle is in the stationary, inclined position, the center axis does not intersect the lid.

4

2. The apparatus of claim 1, wherein the receptacle is pivotable about a first axis relative to the housing.

3. The apparatus of claim 1, wherein the lid is pivotable about a second axis relative to the housing.

4. The apparatus of claim 1, wherein the receptacle is pivotable about a first axis relative to the housing, and the lid is pivotable about a second axis relative to the housing.

5. The apparatus of claim 4, wherein the first and second axes are parallel.

6. The apparatus of claim 1, further comprising a handle that is manually movable to cause the receptacle to move between the vertical and inclined positions and the lid to move between the closed and open positions, respectively.

7. The apparatus of claim 1, further comprising a linkage that causes movement of the receptacle in response to movement of the lid.

8. The apparatus of claim 7, wherein the linkage includes at least one pin attached to the lid that engages with a slot formed in the receptacle.

9. The apparatus of claim 1, further comprising a linkage and a handle coupled to the linkage, wherein movement of the handle causes the linkage to move the lid.

10. The apparatus of claim 9, wherein the linkage includes at least one arm pivotally connected to the lid and at least one link pivotally connected to the at least one arm and to the housing.

11. The apparatus of claim 10, wherein the handle is coupled to the at least one arm such that movement of the handle causes rotation of the at least one arm.

12. The apparatus of claim 11, wherein rotation of the at least one arm causes the lid to move between the open and closed positions.

13. The apparatus of claim 12, wherein the linkage further includes at least one pin attached to the lid that engages with a slot formed in the receptacle and wherein movement of the lid causes the receptacle to move between the vertical and inclined positions.

14. The apparatus of claim 1, further comprising an inlet probe that is arranged to pierce a beverage cartridge in the receptacle when the lid is moved to the closed position.

15. The apparatus of claim 14, wherein the receptacle is arranged to receive a filter pod.

16. The apparatus of claim 14, further comprising an outlet probe arranged to pierce a beverage cartridge in the receptacle to allow a beverage to exit the cartridge.

17. The apparatus of claim 1, further comprising a beverage cartridge that includes a beverage medium and a filter element.

18. The apparatus of claim 1, wherein the lid and receptacle move simultaneously in at least part of their respective movement between the open and closed positions, and the vertical and inclined positions.

19. The apparatus of claim 1, constructed and arranged to produce a brewed beverage.

20. The apparatus of claim 1, further comprising a water tank, a heater to heat water and a pump to provide heated water to the beverage cartridge.

21. The apparatus of claim 1, wherein the inclined position in which the receptacle is arranged to receive and hold a beverage cartridge is a forwardly inclined position.

22. A method for forming a beverage, comprising:
   providing a beverage forming device having a housing with a receptacle accessible to a user, the receptacle having an opening to receive a beverage cartridge, and the receptacle opening having a center axis extending from a center of the opening;

US 7,165,488 B2

5

moving the receptacle from a vertical position, in which the center axis extends vertically and intersects a lid in a closed position, to a forwardly inclined position in which the opening of the receptacle to receive a cartridge faces away from the lid, and the center axis does not intersect the lid in an open position;

moving the lid to the open position;

providing a beverage cartridge in the receptacle while the receptacle is in the forwardly inclined position;

moving the receptacle to the vertical position;

moving the lid to the closed position in which the lid cooperates with the receptacle to at least partially enclose the beverage cartridge; and

providing a liquid into the beverage cartridge to produce a beverage.

23. The method of claim 22, wherein:

the step of moving the receptacle from a vertical position to a forwardly inclined position comprises moving a handle from a closed position to an open position.

24. The method of claim 22, wherein:

the steps of moving the receptacle from a vertical position to a forwardly inclined position and moving the lid to the open position comprises moving a handle from a closed position to an open position.

25. The method of claim 22, wherein:

the step of moving the receptacle from a vertical position to a forwardly inclined position comprises pivoting the receptacle about a first axis.

26. The method of claim 25, wherein:

the step of moving the lid to the open position comprises pivoting the lid about a second axis relative to the housing.

27. The method of claim 22, wherein a linkage causes movement of the receptacle in response to movement of the lid.

6

28. The method of claim 27, wherein the step of moving the lid to the open position comprises moving at least one pin attached to the lid relative to a slot formed in the receptacle.

29. The method of claim 22, further comprising piercing the beverage cartridge with an inlet probe when the lid is moved to the closed position.

30. The method of claim 22, wherein the beverage cartridge includes a beverage medium and a filter element.

31. The method of claim 22, wherein the beverage is a brewed beverage.

32. An apparatus for forming a beverage, comprising:

a housing adapted to support components of a beverage forming device;

a receptacle rotatable relative to the housing about a first axis between a vertical position and an inclined position in which the receptacle is accessible to insert or remove a beverage cartridge; and

a lid rotatable relative to the housing about a second axis between open and closed positions with the position of the second axis remaining stationary relative to the housing, the lid in the closed position cooperating with the receptacle in the vertical position to facilitate formation of a beverage when liquid is provided to the cartridge, the receptacle being rotatable about the first axis in a first direction toward the inclined position, and the lid being rotatable about the second axis in a second direction, different from the first direction, toward the open position.

33. The apparatus of claim 32, wherein the first axis is parallel to the second axis.

*   *   *   *   *

# EXHIBIT B



US006606938B2

(12) **United States Patent**   (10) Patent No.: **US 6,606,938 B2**
Taylor   (45) Date of Patent: **Aug. 19, 2003**

(54) **TWO STEP PUNCTURING AND VENTING OF SINGLE SERVE FILTER CARTRIDGE IN A BEVERAGE BREWER**

(75) Inventor: **Jon Taylor**, Groton, MA (US)

(73) Assignee: **Keurig, Incorporated**, Wakefield, MA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/113,282**

(22) Filed: **Apr. 1, 2002**

(65) **Prior Publication Data**

US 2002/0144603 A1 Oct. 10, 2002

**Related U.S. Application Data**

(60) Provisional application No. 60/281,952, filed on Apr. 6, 2001.

(51) Int. Cl.⁷ ............................ **A47J 31/32**; A23F 5/00
(52) U.S. Cl. ...................... **99/295**; 99/302 R; 426/433; 426/77

(58) Field of Search ............................... 99/295, 302 R, 99/275; 426/433, 435, 77

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,472,719 A | * 12/1995 | Favre | 426/77 |
| 5,773,067 A | * 6/1998 | Freychet et al. | 99/295 X |
| 5,840,189 A | 11/1998 | Sylvan et al. | |
| 6,142,063 A | 11/2000 | Beaulieu et al. | |

* cited by examiner

*Primary Examiner*—Reginald L. Alexander
(74) *Attorney, Agent, or Firm*—Samuels, Gauthier & Stevens

(57) **ABSTRACT**

In a method and apparatus for brewing a beverage from a dry beverage medium contained in a disposable cartridge, the cartridge is initially pierced and vented by a tubular outlet probe, and then pierced by a tubular inlet probe. Heated liquid is admitted to the cartridge interior via the inlet probe for combination with the beverage medium to produce a beverage, and the beverage is extracted from the cartridge via the outlet probe.

**8 Claims, 5 Drawing Sheets**





*FIG. 1*



*FIG. 2*



*FIG. 3*



**FIG. 4**



*FIG. 5*

US 6,606,938 B2

1

## TWO STEP PUNCTURING AND VENTING OF SINGLE SERVE FILTER CARTRIDGE IN A BEVERAGE BREWER

### CROSS REFERENCE TO RELATED APPLICATION

This application claims priority of provisional patent application Serial No. 60/281,952 filed Apr. 6, 2001.

### BACKGROUND DISCUSSION

1. Field of the Invention

This invention relates generally to beverage brewers, and is concerned in particular with an improved system for puncturing and venting single serve beverage filter cartridges utilized in the brew cycles of such brewers.

2. Description of the Prior Art

It is known, as disclosed for example in U.S. Pat. Nos. 5,325,765 (Sylvan et al.) and U.S. Pat. Nos. 5,840,189 (Sylvan et al.) to employ sharpened tubular inlet and outlet probes to puncture the lid and base of a single serve beverage filter cartridge. The inlet probe admits heated liquid into the cartridge for combination with a beverage medium to produce a beverage which then exits the cartridge via the outlet probe. While this arrangement operates in a generally satisfactory manner, experience has indicated that the cartridge interiors occasionally become pressurized as a result of altitude or temperature changes and/or outgassing of the beverage medium. If internal pressures are relieved by venting through the inlet probe, particles of the beverage medium may be entrained with the exiting gas, causing clogging of the inlet probe and a malfunction of the brewer.

### SUMMARY OF THE INVENTION

The objective of the present invention is to avoid or at least significantly minimize this problem by first puncturing the cartridge with the outlet probe, followed sequentially with a second puncturing by the inlet probe. In this manner, the cartridge is initially vented through the outlet probe, which then will be flushed clean by the exiting beverage flow.

These and other features and objectives of the present invention will now be described in greater detail with reference to the accompanying drawings, wherein:

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a vertical sectional view taken through a single serve brewer having a liquid dispensing system embodying the concepts of the present invention, with the dispensing system shown in a "ready" state prior to commencement of a brew cycle;

FIGS. 2–4 are views of the brewing chamber showing successive steps in the brew cycle, including the sequential puncturing sequence of the present invention ; and

FIG. 5 is a vertical sectional view through a single serve beverage filter cartridge of the type used with the brewer shown in FIG. 1.

### DETAILED DESCRIPTION OF PREFERRED EMBODIMENT

With reference initially to FIG. 1, a single serve brewer 10 includes a housing 12 containing a liquid storage tank 14. The tank has a lower metering chamber 16 formed by a reduced diameter cup-shaped bottom 18 integrally joined to the larger diameter tank side wall at a circular sealing surface defining a seat 20.

2

A fixed internal structure includes a horizontal platform 22 and struts 24 supporting a vertically disposed sleeve bearing 26 aligned centrally with respect to the tank 14 and its cup-shaped bottom 18.

A vertically reciprocal shaft 28 extends through the sleeve bearing 26. The shaft carries a generally conically shaped baffle 30 at its lower end, and a circular plate 32 disposed beneath the platform 22. A resilient and compressible circular gasket 33 on the lower surface of the baffle overlies the seat 20.

An arm 34 is pivotally mounted on a bracket 36 carried by the platform 22. Arm 34 is connected to the shaft 28 by a pin 38. A coiled spring 40 surrounds the pin 38 between the arm 34 and the upper surface of platform 22, and an inflatable bladder 42 is positioned between the bottom surface of the platform 22 and the plate 32.

The distal end of arm 34 extends into a brewing chamber 44 designed to accept a single serve beverage filter cartridge 46 of the type described in copending patent application Ser. No. 09/782,622 filed Feb. 13, 2001, the description of which is herein incorporated by reference in its entirety.

An air pump 58 on platform 22 is connected to the bladder 42, and is also connected via a flexible hose 60 to a port 62 in the baffle 30. A metering tube 64 extends through the baffle 30 into the chamber 16. The metering tube 64 is connected via a second flexible hose 66 to a depending tubular inlet probe 68 carried by the arm 34. A second tubular outlet probe 70 underlies the cartridge 46 and opens downwardly above an exterior shelf 72 configured and dimensioned to support a cup 74 or other like receptacle.

As shown in FIG. 5, the beverage filter cartridge 46 includes a cup-shaped container 48 having a bottom 50 configured with a depending reduced diameter well 52. The interior of the container is subdivided by a cone-shaped permeable filter 54 into first and second chambers, A, B. The bottom of the filter is received in and fixed to the bottom of the well 52. A dry beverage medium "M", typically ground roasted coffee, is stored in the chamber A, after which oxygen is purged from the container interior by the introduction of an inert gas, typically nitrogen. The top of the container is then closed by a lid 56. Both the container and the lid are formed of impermeable yieldably piercable materials.

When the cartridge 46 is located in the brewing chamber 44, inlet probe 68 is above and aligned with chamber A, and outlet probe 70 is offset from well 52 and aligned beneath chamber B. A helical spring 76 surrounds the inlet probe 68. Spring 76 underlies a platen 77 carried on the distal end of arm 34. A second helical spring 78 underlies the depending cartridge well 52. Spring 78 has a resistance to compression that is lower than that of spring 76.

The tank 14 stores a supply of water 80 heated by an electrical heating element 82 underlying the cup-shaped bottom 18.

During a brew cycle, a control system including appropriate valves and circuitry (not shown) operates the air pump 58 to pneumatically effect the following sequence:

a) The bladder 42 is inflated, pushing shaft 28 and baffle 30 downwardly, until the gasket 33 is pressed against the seat 20 to seal off the water in the metering chamber 16 from the remainder of the tank 14. Downward movement of the shaft 28 also produces downward pivotal movement of arm 34 against the resistance of the spring 40.

b) As shown in FIG. 3, during the initial stage of downward pivotal movement of arm 34, platen 77, spring 76

US 6,606,938 B2

3

and probe **68** move downwardly in concert. Spring **76** resists compression, while spring **78** becomes compressed. The cartridge **46** is thus pressed downwardly, causing the cartridge bottom **50** to be pierced by the underlying exit probe **70**. The interior of the cartridge is thus vented via probe **70**, resulting in its internal pressure being equalized to that the surrounding atmosphere.

c) As shown in FIG. **4**, during the final stage of downward pivotal movement of arm **34**, spring **76** is axially compressed between the platen **77** and the container lid **56**, resulting in the lid being pierced by probe **68**. The probes **68**, **70** are now in communication, respectively, with chambers A and B of the cartridge **46**.

d) Compressed air is then fed into the metering chamber **16** via hose **60**, causing a metered amount of heated water to be expelled and fed to the cartridge **46** via hose **66** and the tubular probe **68**. The heated water infuses the beverage medium M in chamber A to produce a brewed beverage. The beverage passes through the filter **54** into chamber B, from which it exits via probe **70** and is received in the underlying cup **74**.

e) At the conclusion of the brewing cycle, the pump **56** is deactivated and the system is vented and returned to the condition shown in FIG. **1**. The bladder **42** is collapsed, allowing an upward displacement of the shaft **28** and arm **34** under the combined return force of springs **40**, **76** and **78**. The baffle **30** is thus raised above the seat **20**, allowing air in the chamber **16** to be displaced by water in the tank **14**. Upward pivotal movement of arm **34** results in extraction of probe **68** and expansion of spring **78** raises the cartridge to it original position, resulting in extraction of the exit probe **70**. The spent cartridge **46** may then be removed from the brew chamber **44**, readying the system for the next cycle.

Various modifications may be made to the embodiment herein disclosed. For example, in certain circumstances, it may be desirable to omit the second spring **78**, in which case the cartridge will remain impaled on and will require manual removal from the exit probe **70** at the conclusion of the brew cycle. The force required to compress spring **78** will be selected to insure that the cartridge is initially pierced by and safely vented through exit probe **70**. Another modification might entail fixing the inlet probe **68** and spring **76**, and vertically shifting the exit probe **70** and spring **78** to elevate rather than lower the cartridge, resulting in the cartridge again being initially pierced by the exit probe, followed by piercing of the lid by the inlet probe.

Still another modification might be to fix the cartridge in place, and independently operate the probes to effect the desired sequential piercing by the exit and inlet probes. Also, instead of a single air pump **58**, two pumps might be employed, one to inflate the bladder **42** and the other to pressurize the metering chamber **16**.

It is my intention to cover these and any other changes or modifications that do not depart from the spirit and scope of the invention encompassed by the claims appended hereto.

4

I claim:

1. In a single serve beverage brewer wherein a beverage medium is contained in a disposable cartridge having a yieldably pierceable lid and base, and wherein the cartridge lid is pierced by a tubular inlet probe through which heated liquid is admitted into the cartridge interior for combination with the beverage medium to produce a beverage, and the cartridge base is pierced by a tubular outlet probe through which the beverage is extracted from the cartridge, the improvement comprising:

a brewing chamber structured and dimensioned to removably retain said cartridge between and spaced from both said inlet and outlet probes;

a platen carrying said inlet probe;

means for shifting said platen between a raised position at which said inlet probe is spaced from the cartridge lid, and a lowered position at which said inlet probe has pierced said lid, and

resilient means responsive to movement of said platen from said raised position to said lowered position for urging said cartridge towards said outlet probe to effect piercing of the cartridge base by said outlet probe prior to the cartridge lid being pierced by said inlet probe.

2. The single serve beverage brewer of claim **1** wherein said resilient means is carried by said platen and arranged to contact the cartridge lid.

3. The single serve beverage brewer of claims **1** or **2** wherein said resilient means comprises a coiled spring surrounding said inlet probe.

4. The single serve beverage brewer of claim **3** wherein further comprising a second spring positioned to yieldably resist movement of said cartridge towards said outlet probe.

5. The single serve beverage brewer of claim **4** wherein said second spring has a resistance to compression that is lower than the resistance to compression of said first mentioned spring.

6. A method of brewing a beverage from a beverage medium contained in a disposable cartridge, comprising the following steps, in sequence:

(a) piercing the cartridge with a tubular outlet probe to vent the cartridge interior;

(b) piercing the cartridge with a tubular inlet probe;

(c) admitting heated liquid into the cartridge interior via the inlet probe for combination with the beverage medium to produce a beverage; and

(d) extracting the beverage from the cartridge interior via the outlet probe.

7. The method of claim **6** wherein step (a) is achieved by resiliently urging the cartridge against the outlet probe.

8. The method of claim **7** wherein the cartridge is resiliently urged against the outlet probe in response to movement of the inlet probe towards the cartridge.

* * * * *

# EXHIBIT C

**Int. Cl.: 30**

**Prior U.S. Cl.: 46**

**United States Patent and Trademark Office**

Reg. No. 2,933,253
Registered Mar. 15, 2005

## TRADEMARK
### PRINCIPAL REGISTER

# KEURIG

KEURIG, INCORPORATED (DELAWARE COR-
PORATION)
101 EDGEWATER DRIVE
WAKEFIELD, MA 01880

FOR: COFFEE AND TEA SOLD IN SINGLE-SER-
VING CONTAINERS FOR USE IN COFFEE AND
TEA BREWING MACHINES, IN CLASS 30 (U.S. CL.
46).

FIRST USE 1-0-1998; IN COMMERCE 1-0-1998.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 2,057,361, 2,739,031
AND OTHERS.

SER. NO. 78-381,620, FILED 3-10-2004.

ELLEN B. AWRICH, EXAMINING ATTORNEY

# EXHIBIT D

Int. Cl.: 11

Prior U.S. Cls.: 13, 21, 23, 31 and 34

**Reg. No. 2,057,361**

## United States Patent and Trademark Office

**Registered Apr. 29, 1997**

### TRADEMARK
#### PRINCIPAL REGISTER

## KEURIG

KEURIG, INC. (MASSACHUSETTS CORPORA-
TION)
300 BEAR HILL ROAD
WALTHAM, MA 02154

FOR: COFFEE BREWING MACHINES FOR
DOMESTIC AND COMMERCIAL USE, IN
CLASS 11 (U.S. CLS. 13, 21, 23, 31 AND 34).

FIRST USE 12–8–1994; IN COMMERCE
12–8–1994.

SER. NO. 75–111,242, FILED 5–29–1996.

JANICE BAKER, EXAMINING ATTORNEY

# EXHIBIT 2

FedEx

Español | Customer Support | FedEx Locations   Search [ ] [Go]

| Package/Envelope | Freight | Expedited | Office/Print Services ✻ |

Ship ▸    Track ▸    Manage ▸    Business Solutions ▸

## Detailed Results

Printer-Friendly      Get Link      Help

Enter tracking number [ ] [Track]

| Detailed Results | Notifications |

Tracking no.: 983393011287          Select time format: 12H | 24H          E-mail notifications

### Delivered

Initiated    Picked up    In transit    Delivered

**Delivered**
Signed for by: L.TIMDAL

| Shipment Dates | | Destination |
|---|---|---|
| Ship date ⓘ  Oct 1, 2010 | | MANAWA, WI |
| Delivery date ⓘ  Oct 4, 2010 9:13 AM | | Signature Proof of Delivery ⓘ |

### Shipment Options                                                        Help

**Hold at FedEx Location**
Hold at FedEx Location service is not available for this shipment.

### Shipment Facts                                                          Help

| Service type | First Overnight Envelope | Delivered to | Receptionist/Front Desk |
|---|---|---|---|
| Weight | 0.5 lbs/.2 kg | Reference | 65927.1001/755 |

### Shipment Travel History                                                 Help

Select time zone: Local Scan Time

All shipment travel activity is displayed in local time for the location

| Date/Time | Activity | Location | Details |
|---|---|---|---|
| Oct 4, 2010 9:13 AM | Delivered | MANAWA, WI | |
| Oct 4, 2010 6:24 AM | On FedEx vehicle for delivery | APPLETON, WI | |
| Oct 4, 2010 6:16 AM | At local FedEx facility | APPLETON, WI | |
| Oct 2, 2010 7:26 AM | At dest sort facility | APPLETON, WI | |
| Oct 2, 2010 4:47 AM | Departed FedEx location | MEMPHIS, TN | |
| Oct 1, 2010 11:53 PM | Arrived at FedEx location | MEMPHIS, TN | |
| Oct 1, 2010 8:59 PM | Left FedEx origin facility | NEWCASTLE, DE | |
| Oct 1, 2010 7:54 PM | Picked up | NEWCASTLE, DE | |
| Oct 1, 2010 5:47 PM | Shipment cancelled by sender | | |

Sign up for FedEx® Billing Online Plus to save paper, save time and enter for a chance to win

FedEx Desktop: Tracking at your fingertips.   Learn more ▸

Learn more ▸

Global Home | Small Business Center | Service Info | About FedEx | Investor Relations | Careers | fedex.com Terms of Use | Privacy Policy | Site Map
This site is protected by copyright and trademark laws under US and International law. All rights reserved. © 1995- 2010 FedEx