IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEURIG, INCORPORATED,<br><br>        Plaintiff,<br>v.<br><br>STURM FOODS, INC.,<br><br>        Defendants. | Civil Action No. 1:10-cv-00841-SLR |

**DECLARATION OF KEVIN SULLIVAN IN SUPPORT OF
PLAINTIFF KEURIG, INCORPORATED'S MOTION FOR PRELIMINARY
INJUNCTION**

I, Kevin Sullivan, state:

    1.    I am Vice President of Engineering and Product Development for Plaintiff, Keurig, Incorporated ("Keurig"). I make this declaration in support of Keurig's motion for a preliminary injunction. I have personal knowledge of the facts set forth below and if called as a witness I could and would testify competently thereto.

    2.    Keurig tested 30 Sturm beverage cartridges in KEURIG ® branded brewers.

    3.    Keurig normally tests 2,000 cartridges as part of its standard testing protocols used for qualifying all authorized KEURIG ® branded cartridges.

    4.    Testing revealed a number of serious problems with the Sturm beverage cartridges.

    5.    Over 25% (8 out of 30) of the Sturm beverage cartridges failed to work properly with the KEURIG ® branded brewers.

    6.    Several of the failures were critical, including one in which a Sturm beverage

cartridge delaminated (the aluminum foil lid separating from the plastic cartridge at its adhesive point) during the brew cycle causing 186 °F – 190 °F pressurized water to escape from the cartridge sideways at the joint between the lid and the cartridge container and to flow out from the Keurig brewer in an irregular manner near its top (i.e., not through the normal exit channel of the brewer) and onto the countertop.

7. One of the Sturm beverage cartridges experienced a delamination during the brew cycle causing pressurized 186 °F – 190 °F water to escape from the cartridge sideways at the joint between the lid and the cartridge container and to flow out from the Keurig brewer in an irregular manner near its top (i.e., not through the normal exit channel of the brewer) and onto the countertop, creating a serious scalding risk. Keurig considers this a critical failure of the cartridge. The inner layer of plastic forming the Sturm beverage cartridge appears to have delaminated and allowed the lid to separate from the cartridge. After this attempted use, the defective Sturm beverage cartridge was found to be distorted and soft when it was removed from the brewer. This indicates that the Sturm beverage cartridges may not be capable of withstanding pressurized 186 °F – 190 °F water used during the KEURIG ® branded brewer brew cycle.

8. The image below shows the defective Sturm beverage cartridge that exhibited a delamination failure (after the cartridge was removed from the brewer).



9. Because of the severe risk posed by scalding water in burning users, Keurig's standard testing protocols do not allow any delamination or other lid seal failures in qualification of a cartridge design.  A single delamination or other lid seal failure, like the one exhibited by the Sturm beverage cartridge, would disqualify the cartridge design under Keurig's established testing protocols used for qualifying all authorized KEURIG ® branded cartridges.

10. One of the Sturm beverage cartridges experienced a "non puncture" at the outlet side of the cartridge.  Although the inlet needle penetrated the cartridge lid and the brewer built up pressure, there was no flow through the cartridge because the outlet needle failed to pierce the bottom of the Sturm beverage cartridge.  The side wall of the defective Sturm beverage cartridge was found to be creased after the attempted use, indicating that the sidewall had collapsed during the puncturing process. Keurig considers this a critical failure of the cartridge.  It is an indication that the cartridge design is defective.

11. The image below shows the defective Sturm beverage cartridge that exhibited a non puncture failure.



12.     For these reasons, Keurig's standard testing protocols do not allow any non punctures in qualification of a cartridge design.  A non puncture in the qualification testing of a cartridge line, like that exhibited by the Sturm beverage cartridges, would disqualify the cartridge design under Keurig's established testing protocols used for qualifying all authorized KEURIG ® branded cartridges.

13.     Two of the Sturm beverage cartridges exhibited no flow out of the cartridges during attempted use in the KEURIG brewer even though the cartridges appeared to be punctured by both the inlet and outlet needles of the brewer.  Such failures are frustrating to the user, indicative of poor quality, and unacceptable.

14.     For that reason, Keurig's standard testing protocols would not allow any such no flow failures in qualification of a cartridge design.  A single no flow failure, like those exhibited by the Sturm beverage cartridges, will disqualify the cartridge design under Keurig's established testing protocols used for qualifying all authorized KEURIG ® branded cartridges.

15. A coffee cartridge manufactured by one of Keurig's licensed coffee roasters was used immediately after these failures of the Sturm beverage cartridges. The KEURIG ® branded brewer performed normally with the cartridge manufactured by one of Keurig's licensed coffee roasters.

16. One of the Sturm beverage cartridges experienced a "needle stick" after the brew cycle. Keurig considers this a critical failure of the cartridge. In a "needle stick," the cartridge gets stuck to the inlet needle of the brewer after the brew cycle is complete and the brew chamber is opened, rather than remaining in the cartridge holder of the KEURIG ® branded brewer. When this occurs, the cartridge lifts from the cartridge holder and jams the brewer's puncture mechanism. In order to remove the stuck cartridge from the brewer, the cartridge must be crushed and pulled out by the user. To do this, the user must reach into the brewer, close to the sharp inlet needle, to remove the stuck cartridge. In addition to exposing the user to risk of injury, the stuck cartridge and its removal have the potential to damage the brewer. If a consumer tried to close the brewer with a cartridge stuck to the inlet needle, the inlet needle or the ejection system may be damaged.

17. The image below shows the defective Sturm beverage cartridge that exhibited a "needle stick" failure (after it was removed from the brewer). The wrinkled lid and crease marks in the cartridge are the result of removing the cup from the brewer.



18.     For these reasons, Keurig's standard testing protocols do not allow any needle sticks in qualification of a cartridge design.  A single needle stick in the qualification testing of a cartridge line, like the one exhibited by the Sturm beverage cartridge, would disqualify the cartridge design under Keurig's established testing protocols used for qualifying all authorized KEURIG ® branded cartridges.

19.     Three of the Sturm beverage cartridges failed to eject from a KEURIG brewer after the brew cycle was complete and the brew chamber was opened.  These defective cartridges remained in the brewer cartridge holder after the brew chamber was opened and did not transfer out of the cartridge holder during the ejection stroke.  Failure to eject from the cartridge holder can cause damage to the brewer.

20.     For each of the reasons stated above, the Sturm beverage cartridges are not compatible for use with KEURIG ® branded brewers.  The critical failures that these cartridges

exhibited during testing pose serious risks of scalding or other injuries to consumers, e.g., in attempting to clear a failed Sturm cartridge from their KEURIG brewer, and create the potential that the KEURIG ® branded brewers used with these Sturm beverage cartridges will be damaged.

21.     Any one of the delamination, needle stick, and non-puncture failures and no flows exhibited by the Sturm cartridges, had they occurred at any point in the 2,000 samples normally tested – let alone five in the first 30 tested – would disqualify the cartridge design under those established testing protocols.

22.     If this were Keurig's cartridge, Keurig would consider the design a disaster and stop the testing after this initial batch of 30 cartridges and look to re-design the cartridge.

I declare under penalty of perjury of the laws of the United States and Delaware that the foregoing is true and correct to the best of my knowledge.

Signed:  October 15, 2010

                                                          /s/ Kevin Sullivan
                                                          Kevin Sullivan

## **CERTIFICATE OF SERVICE**

I, Karen E. Keller, Esquire, hereby certify that on October 18, 2010, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire [*rhorwitz@potteranderson.com*]
> David E. Moore, Esquire [*dmoore@potteranderson.com*]
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street, 6th Floor
> Wilmington, Delaware 19801

Additionally, I hereby certify that on October 18, 2010, copies of the foregoing document were served by e-mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated below:

### **BY E-MAIL**

> Craig S. Fochler, Esquire *[cfochler@foley.com]*
> Foley & Lardner LLP
> 321 N. Clark Street
> Suite 2800
> Chicago, IL  69654-5313

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> /s/ *Karen E. Keller*
> Karen E. Keller (No. 4489) [*kkeller@ycst.com*]
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19801
> (302)-571-6600
>
> *Attorneys for Plaintiff Keurig, Incorporated*