## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KEURIG INCORPORATED,       )
                                   )
        Plaintiff,          )
                                   )    C.A. No. 10-841-SLR-MPT
        v.                  )
                                   )    **PUBLIC VERSION**
STURM FOODS, INC.,         )
                                   )
        Defendant.       )

## REPLY BRIEF OF STURM FOODS, INC. IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON PATENT ISSUES AND ANSWERING BRIEF IN OPPOSITION TO KEURIG, INCORPORATED'S CROSS MOTION FOR SUMMARY JUDGMENT ON PATENT ISSUES

OF COUNSEL:

Craig S. Fochler
Scott R. Kaspar
Aaron J. Weinzierl
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Tel: (312) 832-4500

Allen A. Arntsen
FOLEY & LARDNER LLP
Verex Plaza
150 East Gilman Street
Madison, WI 53703
Tel: (608) 257-5035

Dated: July 2, 2012
PUBLIC VERSION
Dated: July 10, 2012
1066374 / 35644

Richard L Horwitz (I.D. No. 2246)
David E. Moore (I.D. No. 3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Sturm Foods, Inc.*

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ................................................................................................................ 1

ARGUMENT ........................................................................................................................ 2

I.     KEURIG EXHAUSTED ALL PATENT RIGHTS TO THE BREWERS ....................... 2

     A.     The Sale of a Patented Item Exhausts "All Patent Rights to That Item" ................ 2

     B.     Because the Keurig Brewers Are Patented Items, There is No Need to
Conduct the Two-Prong Analysis of *Univis Lens* and *Quanta* Pertaining to
Unpatented Items ................................................................................................... 5

     C.     Keurig Cannot Avoid Exhaustion By Asserting Method Claims Rather
Than Apparatus Claims .......................................................................................... 6

     D.     The Fact That Infringement and Invalidity Are Evaluated on a Claim-By-
Claim Basis Does Not Mean That Exhaustion Is ................................................... 7

     E.     Keurig's Cited Cases Do Not Mandate a Claim-By-Claim Analysis .................... 9

     F.     Even if the Court Analyzes Exhaustion Using the Two-Prong Analysis and
On a Claim-By-Claim Basis, Sturm Should Prevail ........................................... 11

          1.     The Keurig Brewers Used With The Accused Sturm Beverage
Cartridges "Substantially Embody" the "Inventive Aspects" of the
Asserted Claims of the Patents-in-Suit ..................................................... 11

          2.     There Are No Noninfringing Uses for the Keurig Brewers ...................... 13

II.     USERS OF KEURIG BREWERS HAVE AN IMPLIED LICENSE TO
PRACTICE THE PATENTS-IN-SUIT ...................................................................... 13

     A.     The Undisputed Implied License That Keurig's Brewer Customers Have
to Use Their Brewer Apparatuses Necessarily Includes an Implied License
to Practice the Asserted Method Claims ............................................................. 13

     B.     The Cases Keurig Cites Do Not Require a Claim-By-Claim Analysis of
the Implied License Defense in This Case ........................................................... 17

III.    USE OF THE ACCUSED CARTRIDGES IS PERMISSIBLE REPAIR ........................ 19

CONCLUSION ........................................................................................................... 21

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Adams v. Burke,*
  84 U.S. 453 (1873).............................................................................................3

*Anton/Bauer, Inc. v. PAG, Ltd.,*
  329 F.3d 1343 (Fed. Cir. 2003)................................................................13, 17, 18

*Bloomer v. Millinger,*
  68 U.S. 340 (1864)..........................................................................................3, 4

*Chemical Separation Tech., Inc. v. United States,*
  71 Fed. Cl. 135 (Fed. Cl. 2006) ...........................................................................15

*Cyrix Corp. v. Intel Corp.,*
  846 F. Supp. 522 (E.D. Tex. 1994)..............................................................10, 11, 12

*De Forest Radio Tel. Co. v. United States,*
  273 U.S. 236 (1927)..........................................................................................16

*Dynatron/Bondo Corp. v. Fibre Glass Evercoat Co.,*
  833 F.2d 1024 (Fed. Cir. 1987) (unpublished) ......................................................18

*Ethicon, Inc. v. United States Surgical Corp.,*
  135 F.3d 1456 (Fed. Cir. 1998)..............................................................................7

*Everpure, Inc. v. Cuno, Inc.,*
  875 F.2d 300 (Fed. Cir. 1989)..............................................................................20

*FMC Corp. v. Up-Right, Inc.,*
  21 F.3d 1073 (Fed. Cir. 1994)..............................................................................20

*Hewlett-Packard Co. v. Repeat-O-Type Stencil Manuf. Corp., Inc.,*
  123 F.3d 1445 (Fed. Cir. 1997)...............................................................15, 20, 21

*In re Katz Interactive Call Processing Patent Lit.,*
  Case No. 07-1816, 2009 U.S. Dist. LEXIS 72134 (C.D. Cal. May 1, 2009) ...........10

*Intel Corp. v. ULSI Sys. Tech., Inc.,*
  995 F.2d 1566 (Fed. Cir. 1993)..............................................................................3

*Jazz Photo Corp. v. ITC,*
  264 F.3d 1094 (Fed. Cir. 2001)..............................................................................20

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.,*
  863 F.2d 867 (Fed. Cir. 1988)................................................................................7

*LG Elecs. Inc. v. Asustek Computer Inc.,*
    65 U.S.P.Q.2d 1589 (N.D. Cal. 2002) ..................................................................10

*LG Elecs., Inc. v. Bizcom Elecs., Inc.,*
    453 F.3d 1364 ....................................................................................................9

*Priebe & Sons Co. v. Hunt,*
    188 F.2d 880 (8th Cir. 1951) ............................................................................18

*Quanta Computer, Inc. v. LG Elecs., Inc.,*
    128 S. Ct. 2109 (2008) ............................................................................. *passim*

*Sage Prods., Inc. v. Devon Indus., Inc.,*
    45 F.3d 1575 (Fed. Cir. 1995) ..................................................................2, 19, 20

*Static Control Components, Inc. v. Lexmark Int'l, Inc.,*
    615 F. Supp. 2d 575 (E.D. Ken. 2009) ....................................................14, 17, 19

*Stukenborg v. United States,*
    372 F.2d 498 (Ct. Cl. 1967) ..............................................................................18

*TransCore v. Elec. Transaction Consultants Corp.,*
    563 F.3d 1271 (Fed. Cir. 2009) ...............................................................14, 17, 19

*United States v. Univis Lens Co.,*
    316 U.S. 241 (1942) .................................................................................. *passim*

**STATUTES**

35 U.S.C. § 271(a) ...........................................................................................7, 13

## INTRODUCTION

Despite making millions of dollars from the sale of its brewers, Keurig is attempting to use its brewer patents to also monopolize the sale of unpatented beverage cartridges. The Supreme Court formulated the doctrine of patent exhaustion in the nineteenth century to prohibit patent owners from precisely this type of practice. The long lineage of Supreme Court cases on this issue makes clear that the statutory monopoly achieved through the grant of a patent does not extend to unpatented items. A patentee must surrender its monopoly when it sells a patented item, and may not control the use or disposition of that item thereafter.

Keurig does not dispute that its patent rights in the brewers are exhausted with respect to the apparatus claim 1 of the patents-in-suit. In an attempt to side-step the exhaustion doctrine, Keurig chose not to assert the apparatus claims and instead asserted the method claims that are only performed by its own customers. However, Keurig cites no authority to support its position that a patent owner who sells a patented apparatus may avoid exhaustion by simply including an array of patent claims in its specification and asserting only a certain subset. To allow such a practice would eviscerate the exhaustion doctrine because a patentee could reap the benefit of selling its patented apparatus without surrendering its statutory monopoly for that same apparatus. Clearly the doctrine of patent exhaustion cannot be avoided so easily.

Keurig takes the same stilted approach with respect to Sturm's implied license defense. Although Keurig does not dispute that its brewer customers have an implied license to practice the apparatus claims, it argues that those same customers do not have an implied license to practice the asserted method claims. According to Keurig, its brewer customers may as well throw their brewers in the trash because they have no right to even brew the starter pack of K-Cups that the brewers come with. Keurig's position cannot be squared with the overlapping scope of the claims, the mechanism of the brewers, and its own conduct in selling the brewers.

A customer who uses his or her licensed brewer apparatus (which has a sharp inlet valve for piercing the lid of a beverage cartridge) necessarily practices the asserted method claims. Accordingly, the license to the apparatus claims necessarily extends to the method claims. This is consistent with Keurig's own conduct in advertising use of its brewers with disposable K-Cups that require piercing, and even including a starter pack of K-Cups in the brewer box.

Finally, Keurig attempts to dodge the permissible repair defense by arguing that the defense requires a predicate finding that either the doctrine of exhaustion or implied license applies. Keurig is wrong that the cases demand such a predicate finding. But what is more telling about Keurig's brief is what is missing. Keurig completely ignores the indistinguishable Federal Circuit case of *Sage Prods., Inc. v. Devon Indus., Inc.*, which found the defense of permissible repair applicable without even mentioning the doctrine of exhaustion or implied license. Just as in *Sage Prods.*, Keurig's brewer customers have a right to use the accused Sturm cartridges under the doctrine of permissible repair.

The Court should enter summary judgment of noninfringement based on Sturm's defenses of exhaustion, implied license, and permissible repair.

## ARGUMENT

## I.   KEURIG EXHAUSTED ALL PATENT RIGHTS TO THE BREWERS

### A.    The Sale of a Patented Item Exhausts "All Patent Rights to That Item"

Keurig's contention that exhaustion of a patented item is specific to particular patent claims is contrary to the wealth of Supreme Court case law on this issue. "The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates *all patent rights to that item*." *Quanta Computer, Inc. v. LG Elecs., Inc.*, 128 S. Ct. 2109, 2115 (2008) (emphasis added). Thus, the focus is on the sale of the patented item, not the

intricacies of the various claims within the patent it embodies. *See Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993) ("The law is well settled that an authorized sale of a patented product places that product beyond the reach of ***the patent***.") (emphasis added) (citing *Bloomer v. Millinger*, 68 U.S. 340, 350-51 (1864)).

Because the first authorized sale extinguishes "all patent rights to that item," the purchaser has the right to use the item for *any* purpose for the duration the item's life: "where a person had purchased a patented machine of the patentee or his assignee, this purchase carried with it the right to the use of that machine so long as it was capable of use, . . . the sale by a person who has the full right to make, sell, and use such a machine carries with it the right to the use of that machine to the full extent to which it can be used in point of time." *Adams v. Burke*, 84 U.S. 453, 455 (1873); *see also Millinger*, 68 U.S. at 350 ("When the respondent had purchased the right to construct the machines and operate them during the lifetime of the patent as then existing, and had actually constructed the machines under such authority, and put them in operation, he had then acquired full dominion over the property of the machines, and an absolute and unrestricted right to use and operate them until they were worn out."). In other words, the patentee cannot control the use of the patented item after the first authorized sale. *Intel*, 995 F.2d at 1568 ("The patent owner's rights with respect to the product end with its sale . . . ." (citing *United States v. Univis Lens Co.*, 316 U.S. 241, 252 (1942)).

The rationale behind the exhaustion doctrine is to require the patentee to part with its statutory monopoly upon receiving compensation for the patented item:

> The declared purpose of the patent law is to promote the progress of science and the useful arts by granting to the inventor a limited monopoly, the exercise of which will enable him to secure the financial rewards for his invention. Constitution of the United States, Art. I, § 8, Cl. 8; 35 U.S.C. §§ 31, 40. The full extent of the monopoly is the patentee's "exclusive right to make, use, and vend the invention or discovery." The patentee may surrender his monopoly in whole by the sale of his patent or in part by the sale of an article embodying the invention. *His monopoly remains so long as he retains the ownership of the patented article. But sale of it exhausts the monopoly **in that article** and the patentee may not thereafter, by virtue of his patent, control the use or disposition of the article.*

*Univis Lens*, 316 U.S. at 250 (emphasis added) (citations omitted); *see also Millinger*, 68 U.S. at 350 ("[Patentees] are entitled to but one royalty for a patented machine, and consequently when a patentee has himself constructed the machine and sold it, or authorized another to construct and sell it, or to construct and use and operate it, and the consideration has been paid to him for the right, he has then to that extent parted with his monopoly, and ceased to have any interest whatever in the machine so sold or so authorized to be constructed and operated.").

In this case, Keurig does not dispute that its brewers are patented items. (D.I. 203 at 22 n.15.) The brewers embody the apparatus claims of the patents-in-suit (claim 1 of the patents). (*Id.*) Nor does Keurig dispute that the sales of its brewers were authorized. (*See generally* D.I. 203.) Based on this long line of Supreme Court case law, Keurig has exhausted "all patent rights" in the brewers. *Quanta*, 128 S. Ct. at 2115. Having done so, Keurig cannot "by virtue of [its] patent, control the use or disposition of the [brewers]." *Univis Lens*, 316 U.S. at 250.

**B.     Because the Keurig Brewers Are Patented Items, There is No Need to Conduct the Two-Prong Analysis of *Univis Lens* and *Quanta* Pertaining to Unpatented Items**

There being no dispute about the material facts that give rise to exhaustion of the patented brewers, Keurig attempts to avoid dismissal by relying on a standard that only pertains to *unpatented* items. Because the two-prong analysis of *Univis Lens* and *Quanta* only pertains to unpatented items, Keurig's arguments do not apply.

The Supreme Court cases prior to *Univis Lens* all addressed the straightforward scenario of exhaustion of a patented item. As discussed above, the question of exhaustion of a patented item simply turns on whether there was an authorized sale of the item.

In *Univis Lens*, the court was faced with a different question—whether the exhaustion doctrine can also apply based on the sale of an *unpatented* item. Although the lens blanks at issue did not embody the patents, the court found it relevant that the unpatented lens blanks embodied "essential features of the patented invention" and were "capable of use only in practicing the patent[s]." *Univis Lens*, 316 U.S. at 249-251.

Sixty-six years later, the Supreme Court in *Quanta* once again faced the issue of exhaustion based on the sale of *unpatented* items. *Quanta*, 128 S. Ct. at 2113. Relying on *Univis Lens*, the court found that the authorized sale of unpatented microprocessors and chipsets exhausted the patentee's rights in the asserted patents. *Id.* at 2118-2121. The court reasoned that the unpatented components "had no reasonable noninfringing use and included all the inventive aspects of the patented methods." *Id.* at 2122.

In forging this analysis for *unpatented* items, neither the court in *Univis Lens* nor *Quanta* indicated a retreat from the more simplistic analysis of exhaustion of *patented* items, i.e., whether the sale of the patented item was authorized. Nor has Keurig identified any controlling case law indicating that the two-pronged standard pertaining to the sale of unpatented items now

applies to patented items.  Indeed, none of the Supreme Court cases addressing exhaustion of patented items embarked on any sort of analysis of "noninfringing uses" or "substantial embodiment" of "inventive aspects."  Absent such a retreat, the question of exhaustion of a patented item is the same as it has been since the nineteenth century:  whether the sale of the patented item was authorized.

## C.    Keurig Cannot Avoid Exhaustion By Asserting Method Claims Rather Than Apparatus Claims

Having authorized the sale of patented brewers that embody the apparatus claims of the patents-in-suit (claim 1), Keurig cannot avoid exhaustion by simply choosing to assert method claims instead.  As *Quanta* and is predecessors made clear, "the initial authorized sale of a patented item terminates ***all patent rights to that item*.**"  *Quanta*, 128 S. Ct. at 2115 (emphasis added).

The *Quanta* court recognized the gamesmanship that could result if the exhaustion doctrine were limited to apparatus claims.  The court reasoned that "[b]y characterizing their claims as method instead of apparatus claims, or including a method claim for the machine's patented method of performing its task, a patent drafter could shield practically any patented item from exhaustion."  *Id.* at 2118.  Similar to the facts of *Quanta*, "[t]his case illustrates the danger of allowing such an end-run around exhaustion."  *Id.*  If this Court were to examine exhaustion on a claim-by-claim basis as Keurig insists, a patentee could always avoid exhaustion by including narrow method claims in the specification.[1]

---

[1] As an example of the type of gamesmanship that could ensue if exhaustion were evaluated on a claim-by-claim basis, a patentee could always draft a method claim covering use of its apparatus in the contiguous United States.  Such a method claim could never be exhausted because the apparatus would have noninfringing uses in Alaska and Hawaii.  Clearly this cannot be the law of exhaustion.  Although this is a blatant example of gamesmanship, a clever patentee could always draft a method claim in a subtle way to achieve the same result.

The illogic of Keurig's argument is demonstrated by the customers who use Keurig's own K-Cups. According to Keurig, a customer who uses a pierceable K-Cup ███████ ████████████████████████████████████████████████████ infringes the asserted method claims. Adopting Keurig's claim-by-claim approach would allow Keurig to enjoy the million of dollars in compensation it has received in brewer revenue without surrendering its monopoly because it could sue its own customers for use of the brewer patents-in-suit. The purpose of the exhaustion doctrine is to avoid this result.

**D.    The Fact That Infringement and Invalidity Are Evaluated on a Claim-By-Claim Basis Does Not Mean That Exhaustion Is**

Keurig fails to cite a single case stating that exhaustion is analyzed on a claim-by-claim basis. (D.I. 203 at 10-21.) Without any case law stating this proposition, Keurig leads with the argument that the "core" patent law issues of infringement and invalidity are analyzed on a claim-by-claim basis. (*Id.* at 11-14.) However, the fact that certain patent law issues are analyzed on a claim-by-claim basis does not mean they all are. Examples of patent law issues that are *not* examined on a claim-by-claim basis include inequitable conduct and inventorship. *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988) ("[W]hen inequitable conduct occurs in relation to one claim the entire patent is unenforceable."); *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) ("[A] co-inventor need not make a contribution to every claim of a patent. A contribution to one claim is enough.") (citations omitted).

And even though infringement is *evaluated* on a claim-by-claim basis, a finding of infringement of only a single patent claim gives rise to infringement of the patent. 35 U.S.C. § 271(a). This means that a finding of infringement of only a single patent claim also gives rise to liability for damages, and may even result in a permanent injunction. Just as infringement of a

single patent claim gives rise to infringement of the patent, exhaustion of a single patent claim gives rise to exhaustion of the patent.

Limiting exhaustion to a claim-by-claim doctrine would basically eviscerate the principle upon which it is based. As discussed above, the purpose of the exhaustion doctrine is to ensure that a patentee surrenders its statutory monopoly once it has received compensation for an article that embodies its patent. *Univis Lens*, 316 U.S. at 250. Here, Keurig has already received millions of dollars in compensation for its brewers that embody the apparatus claim 1 of the patents-in-suit. A finding of no exhaustion in this case would allow Keurig to extend its brewer patent monopoly to cover the unpatented cartridges[2] even though it has already received compensation for the patented brewers. The Supreme Court has held that a patentee cannot use its monopoly to secure market control over unpatented items:

> in *Motion Picture Patents Co. v. Universal Film Mfg. Co.*, the Court explicitly overruled *A.B. Dick*. In that case, a patent holder attempted to limit purchasers' use of its film projectors to show only film made under a patent held by the same company. The Court noted the "increasing frequency" with which patent holders were using *A.B. Dick*-style licenses to limit the use of their products and thereby using the patents to secure market control of related, unpatented items. Observing that "the primary purpose of our patent laws is not the creation of private fortunes for the owners of patents but is 'to promote the progress of science and useful arts,'" the Court held that "the scope of the grant which may be made to an inventor in a patent, pursuant to the [patent] statute, must be limited to the invention described in the claims of his patent." Accordingly, it reiterated the rule that "the right to vend is exhausted by a single, unconditional sale, the article sold being thereby carried outside the monopoly of the patent law and rendered free of every restriction which the vendor may attempt to put upon it."

---

[2] As discussed in Sturm's opening brief, Keurig has other patents that cover its filtered beverage cartridges. (*See* D.I. 184 at 6.) However, the asserted claims of the brewer patents-in-suit do not require the use of a filtered cartridge. (D.I. 185, Ex. A, '488 patent, claim 29; *id.*, Ex. B, '938 patent, claims 6-8.) Instead, they recite the use of a generic cartridge. (*Id.*)

*Quanta*, 128 S. Ct. at 2116 (internal citations omitted). Analyzing exhaustion on a claim-by-claim basis would be contrary to this reasoning because it would give Keurig market control over unpatented beverage cartridges for the term of the brewer patents-in-suit.

### E.     Keurig's Cited Cases Do Not Mandate a Claim-By-Claim Analysis

Because none of Keurig's cases state that exhaustion must be analyzed on a claim-by-claim basis, Keurig attempts to make inferences based on what those courts did. However, none of Keurig's cases support the proposition that exhaustion of a patented item should be analyzed on a claim-by-claim basis.

Keurig is wrong that the *Quanta* case and its predecessor lower court decisions involved a claim-by-claim analysis of exhaustion. The patentee (LG) asserted both system and method claims at the district level, and exhaustion of both types of claims was at issue before the Federal Circuit. *LG Elecs., Inc. v. Bizcom Elecs., Inc.*, 453 F.3d 1364, 1369-1371. However, it is unclear whether the system claims were before the Supreme Court. *See generally Quanta*, 128 S. Ct. 2109. Even if they were, the court did not conduct the two-prong analysis for the system claims separately from the method claims. *Id.* at 2118-2121. The only reason the court made particular mention of the method claims was to address the broader question of whether method claims can ever be exhausted. *Id.* at 2117-2118. After concluding that they can be, the court made no indication that the doctrine of exhaustion should be examined on a claim-by-claim basis, or that the apparatus claims should be examined separately from method claims. *See generally Quanta*, 128 S. Ct. 2109. To the extent one of the earlier lower courts decisions made

such an indication, those cases are not binding on this Court because they have all been reversed or vacated.[3]

Moreover, *Quanta* is factually distinguishable from this case. As discussed above, the present case involves a patented apparatus, whereas the *Quanta* case involved unpatented components for use in patented systems and to perform patented methods. *Id.* at 2114. Because the Keurig brewers are patented items, there is no need to conduct the two-prong analysis of *Quanta* and *Univis* and, thus, no need to resolve whether the two-prong analysis should be performed on a claim-by-claim basis.

The only other cases Keurig cites are distinguishable district court cases. *In re Katz Interactive Call Processing Patent Lit.*, Case No. 07-1816, 2009 U.S. Dist. LEXIS 72134 (C.D. Cal. May 1, 2009); *Cyrix*, 846 F. Supp. 522. The *Katz* case is inapplicable to this case because it involved the sale of services, not a patented item. *Katz*, 2009 U.S. Dist. LEXIS, 72134, at *50-61. Moreover, the components and services that were at issue in *Katz* did not completely embody the patents-in-suit, which necessitated the two-prong analysis of *Quanta* and *Univis*. *Id.* at *55. That two-prong analysis is unnecessary in cases like this one that involve exhaustion of a patented item.

---

[3] Keurig argues (D.I. 203 at 18) that the district court in *Quanta* relied on another district court decision, *Cyrix Corp. v. Intel Corp.*, 846 F. Supp. 522, 536 (E.D. Tex. 1994), *aff'd*, 42 F.3d 1411 (Fed. Cir. 1994) (unpublished), for the proposition that the exhaustion analysis must be conducted on a claim-by-claim basis. *LG Elecs. Inc. v. Asustek Computer Inc.*, 65 U.S.P.Q.2d 1589, 1595 n.3 (N.D. Cal. 2002). As explained below, the court in *Cyrix* did not need to analyze the asserted claims because the parties stipulated that the patentee's sale of the microprocessors at issue exhausted claim 1. Despite undertaking this unnecessary analysis, the court found that the asserted claims were also exhausted. Because the court reached the correct conclusion, the Federal Circuit's affirmance (without opinion) provides no support for the notion that the district court's analysis of the asserted claims was necessary.

*Cyrix* was a pre-*Quanta* case that found exhaustion based on the patentee's sale of patented microprocessors. 846 F. Supp. at 541. Keurig relies on *Cyrix* because the parties in that case stipulated to exhaustion of claim 1, yet the court went on to analyze whether the asserted claims 2 and 6 were also exhausted. *Id.* at 525 & 538. The court found that claims 2 and 6 were also exhausted by the sale of the product covered by claim 1:

> The sale or other transfer by ST or TI to Cyrix of a claim 1 microprocessor exhausts Intel's patent rights in the '338 Patent, including, ***without limitation*** in claims 1, 2 and 6. Intel thus may not, by virtue of the '338 Patent, control the further use or disposition of such microprocessors.

*Id.* at 541 (emphasis added). The *Cyrix* court reached the correct conclusion, but did not need to analyze claims 2 and 6 separately from claim 1. Neither Keurig nor *Cyrix* cite any authority supporting the notion that a court must separately analyze the asserted claims where there is no dispute about exhaustion of an unasserted claim. The Federal Circuit affirmed *Cyrix* without opinion. 42 F.3d 1411. But because the *Cyrix* court reached the correct result, the Federal Circuit's affirmance does not mean that the district court's analysis of claims 2 and 6 was necessary.

### F.   Even if the Court Analyzes Exhaustion Using the Two-Prong Analysis and On a Claim-By-Claim Basis, Sturm Should Prevail

Although it would defy Supreme Court precedent and logic to evaluate exhaustion of a patented item using the *Univis* and *Quanta* two-prong analysis and do so on a claim-by-claim basis, Sturm should nonetheless prevail if the Court chooses to do so.

#### 1.   The Keurig Brewers Used With The Accused Sturm Beverage Cartridges "Substantially Embody" the "Inventive Aspects" of the Asserted Claims of the Patents-in-Suit

The first prong of the two-prong test is met because the brewers "substantially embody" the "inventive aspects" of the asserted claims. Contrary to Keurig's brief (D.I. 203 at 3), Sturm

addressed exhaustion of the asserted claims in its opening brief (D.I. 184 at 10-18).   Sturm

devoted entire sections of its opening brief to explaining how the Keurig brewers "substantially

embody" the "inventive aspects" of the asserted claims.  (*Id.*)

  In its brief, Keurig argues that the brewers themselves do not substantially embody the

asserted claims because the claims recite the use of a beverage cartridge. (D.I. 203 at 24-25.)  In

making this argument, Keurig ignores the key language of the test, which requires an analysis of

the "inventive aspects" of the claims.  *Quanta*, 128 S. Ct. at 2118-2121.  The generic beverage

cartridge recited in the claims is not an "inventive aspect" because beverage cartridges were in

the prior art long before the patents-in-suit were filed.  ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████   In addition, the specification of the '488 patent indicates that the recited

beverage cartridge is "preferably" one described in the prior art:  "The cartridge 24 is *preferably*

of the type disclosed, for example, in U.S. Pat. No. 5,840,189."  (*Id.*, Ex. A, '488 patent at 2:32-

33 (emphasis added).)

  The same is true of Keurig's additional allegations of "novelty."  (*See* D.I. 203 at 24-25.)

Claim 29 of the '488 patent does not recite a "user interface" or timing of the piercing

mechanism. (D.I. 185, Ex. A, '488 patent, claim 29.)  Claims 6-8 of the '938 patent do not recite

"an interactive mechanism that prevents the internal pressure of that sealed, pierceable beverage

cartridge from clogging the inlet needle." (*Id.*, Ex. B, '938 patent, claims 6-8.)  Even if claims 6-

8 of the '938 patent recited such an "interactive mechanism," such mechanism would be

contained in the Keurig brewer, not a beverage cartridge.

Because the brewers embody all aspects of the asserted claims except for the non-inventive beverage cartridge, this prong is met.

### 2.      There Are No Noninfringing Uses for the Keurig Brewers

The second prong is also met because the brewers have no noninfringing uses. Keurig's brief wrongly focuses exclusively on the asserted claims. (*See* D.I. 203 at 22-23.) However, whether a product has noninfringing uses with respect to one patent claim is irrelevant if the product infringes any of the other claims. A device that practices a single claim of a patent infringes the patent. 35 U.S.C. § 271(a). Keurig does not dispute that the brewers embody the apparatus claim 1 of the patents-in-suit and have no noninfringing uses with respect to claim 1. Because the brewers have no noninfringing uses with respect to claim 1, they have no noninfringing uses with respect to the entire patent. Accordingly, this prong is also met.

* * * *

In sum, Keurig has exhausted all of its patent rights to the brewers, which include its rights to the apparatus claims and the asserted method claims. The Court should enter summary judgment of noninfringement based on Sturm's exhaustion defense.

## II.      USERS OF KEURIG BREWERS HAVE AN IMPLIED LICENSE TO PRACTICE THE PATENTS-IN-SUIT

### A.      The Undisputed Implied License That Keurig's Brewer Customers Have to Use Their Brewer Apparatuses Necessarily Includes an Implied License to Practice the Asserted Method Claims

Similar to exhaustion, Keurig does not dispute that its brewer customers have an implied license to practice the apparatus claim 1 of the patents-in-suit.[4] Despite having this implied

---

[4] "A patentee grants an implied license to a purchaser when (1) the patentee sells an article that has no noninfringing uses and (2) the circumstances of the sale plainly indicate that the grant of a license should be inferred." *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1350 (Fed. Cir. 2003) (citation omitted). With respect to this first element, Keurig admits in its brief

license to practice the apparatus claims, Keurig argues that its customers do not have an implied license to use their brewers to practice the asserted method claims. (D.I. 203 at 25-26.) Keurig's argument fails because its brewer customers must be permitted to practice the asserted method claims so that they may enjoy their license to practice the apparatus claims. *TransCore v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1279 (Fed. Cir. 2009) ("[T]he district court properly concluded that in order for Mark IV to obtain the benefit of its bargain with TransCore, it must be permitted to practice the '946 patent to the same extent it may practice the '183, '275 and '082 patents."); *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 615 F. Supp. 2d 575, 584 n.5 (E.D. Ken. 2009) ("Lexmark's method patents 'are so intertwined with the use of the licensed patented article itself that denying a license in the method claims to a user would deprive the user of his non-infringing, bargained-for use of the toner cartridge.'"); *see also Cyrix*, 846 F. Supp. at 541 (finding an implied license to claims 2 and 6 because "Cyrix's claim 1 microprocessors cannot be used without infringing claims 2 and 6"). In other words, the implied license to practice the apparatus claims necessarily extends to the method claims. *Id.*

Just as in *Transcore* and *Static Control Components*, the apparatus and method claims of the patents-in-suit in this case are so intertwined and coextensive such that denying Keurig's brewer customers a license to practice the method claims would deprive them of their bargained-for use of the brewers. ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

that "[c]laim 1 of the '488 patent and claim 1 of the '938 patent are apparatus claims, which cover Keurig beverage forming apparatuses ('brewers')." (D.I. 203 at 22, n.15.) Keurig does not dispute that the second element is also met for purposes of claim 1 of the patents-in-suit. (*Id.* at 25-26.)

████████████████████████████████████████████████

███████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ Keurig's sale of the brewers gives its

customers an implied license to use the apparatuses for their intended use. *Hewlett-Packard Co.*

*v. Repeat-O-Type Stencil Manuf. Corp.*, Inc., 123 F.3d 1445, 1450-1454 (Fed. Cir. 1997)

("Generally, when a seller sells a product without restriction, it in effect promises the purchaser

that in exchange for the price paid, it will not interfere with the purchaser's full enjoyment of the

product purchased.  The buyer has an implied license under any patents of the seller that

dominate the product or any uses of the product to which the parties might reasonably

contemplate the product will be put.") (citation omitted); *Chemical Separation Tech., Inc. v.*

*United States*, 71 Fed. Cl. 135, 151 (Fed. Cl. 2006), *aff'd*, 224 Fed. Appx. 976 (Fed. Cir. 2007)

("The ordinary rule, of course, is that, absent an express limitation, the sale of a patented item

carries with it an implied license to use that item in any fashion the purchaser deems fit.")

(citation omitted).

████████████████████████████████████████████████

███████████████████████████ Thus, the implied license that Keurig gives its customers

to use the brewer apparatuses necessarily includes the right to brew cartridges ██████████

████████ Had Keurig wanted to limit the scope of the implied license █████████████ it

could have done so contractually or sold brewers without ██████████████████████████

██████████████████████████████████████████

The implied right to use cartridges ████████████ is also evident by Keurig's own packaging of the brewers. The brewers come packaged in a cardboard box. (D.I. 185, Ex. BB (photographs of representative brewer packaging).) The outside of the box includes photos of K-Cups (disposable cartridges ████████████). (*Id.*) The contents of the box include a starter pack of K-Cups. (*Id.* (indicating that the box "Includes 12 K-Cup® Variety Pack"); D.I. 182, Wallace Decl., Ex. 6, Whoriskey Dep. at 91:12-22.) ██████████████████████

████████████████████████████████████████████████████

████████████████ *See De Forest Radio Tel. Co. v. United States*, 273 U.S. 236, 241 (1927) ("Any language used by the owner of the patent, or any conduct on his part exhibited to another from which that other may properly infer that the owner consents to his use of the patent in making or using it, or selling it, upon which the other acts, constitutes a license and a defense to an action for a tort."). Keurig makes no attempt to restrict this right to cartridges from any particular source.

In sum, there is no dispute that Keurig's brewer customers have an implied license to practice the apparatus claim 1 of the patents-in-suit. (D.I. 203 at 22 n.15 & 25-26.) Because the brewer apparatuses have ████████████ the scope of this implied license includes the right to use cartridges ████████████ Keurig reinforces this implication to its customers by including photos of K-Cups that require piercing on the outside of the brewer box and including a starter pack of K-Cups in the box. (D.I. 185, Ex. BB (photographs of representative brewer packaging).) Keurig does not attempt to prevent its customers from using non-Keurig brand cartridges through its packaging, the owner's manuals that accompany the brewers, or otherwise. (D.I. 185, Ex. C Keurig's Interrog. Resps. at 20-22 (Resps. to Interrog. Nos. 8-9); *id.*, Ex. BB (photographs of representative brewer packaging); *id.*, Ex. S, B150 Owner's Manual.) Because

the implied license to use the brewer apparatuses necessarily includes the right ████████
████████ the brewer customers also have an implied license to practice the asserted method claims. *TransCore*, 563 F.3d at 1279-1280; *Static Control Components*, 615 F. Supp. 2d at 584 n.5.

**B.      The Cases Keurig Cites Do Not Require a Claim-By-Claim Analysis of the Implied License Defense in This Case**

None of the cases Keurig cites in its brief (in footnote 19) stands for the proposition that the implied license defense must be evaluated on a claim-by-claim basis in all cases. (*See* D.I. 203 at 26 n.19 and cases cited therein.) Nor do any of the cases involve facts similar to *Transcore*, *Static Control Components*, or this case. (*Id.*) Accordingly, the implied license that Keurig's brewer customers have to practice the apparatus claim 1 of the patents-in-suit necessarily extends to the asserted method claims.

The first case Keurig cites, *Anton/Bauer*, actually supports Sturm's position, not Keurig's. That case involved a patent for a battery pack with a male and female plate. *Anton/Bauer*, 329 F.3d at 1345. The accused infringer sold a battery pack with a male plate that was intended to be combined with a female plate sold by the patentee. *Id.* at 1347. The Federal Circuit held that the patentee's unrestricted sale of the female plate gave its customers an implied license to use the female plate in the patented battery pack combination. *Id.* at 1351-1353. After coming to this conclusion, the court reasoned that:

> Anton/Bauer could have, if novel, claimed its female plate and
> male plate individually in the '204 patent in order to improve its
> protection of its invention. If the male component were patented,
> PAG would potentially be liable as a direct infringer by
> manufacturing the part itself, avoiding the question of infringement
> by the patentee's customers.[5]

*Id.* at 1353. The same reasoning applies here. If Keurig had a patent claim that covered Sturm's

cartridges, it could have sued Sturm directly rather than assert infringement by Keurig's own

brewer customers. However, there is nothing in the *Anton/Bauer* opinion, let alone this passage,

that supports the notion that the implied license defense is evaluated on a claim-by-claim basis.

The remaining cases that Keurig cites in footnote 19 are distinguishable because they all

involved components parts for use in larger patented apparatuses. The court in *Dynatron/Bondo*

*Corp. v. Fibre Glass Evercoat Co.* found that a license for a putty dispenser did not give rise to a

license to claims for a particular attachment and stand. 833 F.2d 1024, at *1 & 3 (Fed. Cir.

1987) (unpublished). The court in *Stukenborg v. United States* found that a license to clips did

not give rise to a license to claims that covered turnbuckle assemblies that used the clips. 372

F.2d 498, 504 (Ct. Cl. 1967). The court in *Priebe & Sons Co. v. Hunt* found that a license for

chicken plucking fingers did not give rise to a license for claims that covered chicken plucking

machines. 188 F.2d 880, 885 (8th Cir. 1951).

Contrary to these cases, the present case does not involve a license to a mere component

part that is used in a larger apparatus. Rather, this case involves an implied license to the

apparatus itself, and method claims that recite the use of the apparatus. Because Keurig's brewer

customers necessarily practice the asserted method claims when they use their brewer

---

[5] This is the language Keurig relies on for the proposition that the implied license defense
is analyzed on a claim-by-claim basis. (D.I. 203 at 26 n.19.)

18

apparatuses, the *Transcore* rationale applies and the implied license to practice the apparatus claims necessarily extends to the method claims.

Not only are Keurig's cases factually distinct, none of them addressed the same issue as that of *Transcore*, i.e., whether the right to practice the asserted claims was necessary to practice the licensed claims such that a denial of that right would preclude the purchaser the benefit of its bargain with the patentee. *TransCore*, 563 F.3d at 1279; *see also Static Control Components*, 615 F. Supp. 2d at 584 n.5. In fact, the *Stukenborg* court suggested the opposite was true. 372 F.2d at 504. The court found that the licensed clips cost approximately 4 cents each, and a complete turnbuckle assembly covered by the asserted claims cost between $1.50 and $20.00 depending upon its size. *Id.* Sturm is not suggesting such a result here. Keurig's brewer customers, many who paid upwards of $100 for their brewers, have an implied license to use the brewers for their intended use—to brew beverage cartridges that require piercing.

The implied license that Keurig's brewer customers have to the apparatus claims necessarily extends to the asserted claims. Accordingly, the Court should enter summary judgment of noninfringement based on Sturm's implied license defense.

## III.   USE OF THE ACCUSED CARTRIDGES IS PERMISSIBLE REPAIR

In addition to having an implied license to the asserted claims, Keurig's brewer customers who use the accused Sturm cartridges avoid infringement based on the doctrine of permissible repair. In its opening brief, Sturm relied on the case of *Sage Prods., Inc. v. Devon Indus., Inc.*, 45 F.3d 1575 (Fed. Cir. 1995) as support for this defense. (D.I. 184 at 19-21.) In *Sage Prods.*, the Federal Circuit found the doctrine of permissible repair applicable based on facts that are indistinguishable from the facts of this case. 45 F.3d at 1578-1579. Keurig does not even mention *Sage Prods.* in its brief, let alone attempt to distinguish it. (D.I. 203 at 27-28.)

Having no way to distinguish *Sage Prods.*, Keurig conjures the proposition that the doctrine of permissible repair requires a predicate finding of either the doctrine of exhaustion or implied license. (*Id.* at 27.) There is no support for this proposition. Although courts have commented that the doctrines of exhaustion, implied license, and permissible repair are similar and based upon the same principles,[6] there are no cases that stand for the proposition that one doctrine is predicated on the finding of another. Indeed, there are Federal Circuit cases that have found the doctrine of permissible repair applicable without even mentioning the separate defense of exhaustion or implied license. *See, e.g., Sage Prods.*, 126 F.3d 1420; *FMC Corp. v. Up-Right, Inc.*, 21 F.3d 1073 (Fed. Cir. 1994); *Everpure, Inc. v. Cuno, Inc.*, 875 F.2d 300 (Fed. Cir. 1989).

Nor would such a proposition make sense. There would be no point in having a separate defense of permissible repair if it required a predicate finding of exhaustion or implied license because the predicate finding would give rise to noninfringement on its own.

Contrary to Keurig's brief, all that is required to invoke the doctrine of permissible repair is an unrestricted sale of the patented product. *See, e.g., Hewlett-Packard*, 123 F.3d at 1450-1454. The *Hewlett-Packard* case demonstrates that the purchaser does not even need to use the product for its intended use before making the permissible repair. *Id.* In *Hewlett-Packard*, the accused infringer had a business of purchasing brand-new, unused HP toner cartridges that were not refillable, modifying the caps of the cartridges to render the cartridges refillable, and then reselling the cartridges to end users. *Id.* at 1448-1449. The court found that this practice qualified as permissible repair even though the cartridges were brand new and had never been used. *Id.* at 1450-1454. All that mattered was that the accused infringer purchased the cartridges from legitimate sources without restriction. *Id.* at 1451-1452.

---

[6] *See, e.g., Jazz Photo Corp. v. ITC*, 264 F.3d 1094, 1105 (Fed. Cir. 2001).

In this case, it is likely that most, if not all, of Keurig's brewer customers initially use their brewers with the starter pack of Keurig K-Cups included in the box. This should qualify as a "predicate lawful use" even according to Keurig. But even if a brewer customer were to throw his or her starter pack of Keurig K-Cups in the trash in favor of Sturm's cartridges, doing so would constitute permissible repair under the *Hewlett-Packard* case because the brewers are all sold through Keurig or authorized retailers without restriction.

The Court should enter summary judgment of noninfringement because use of the accused Sturm cartridges constitutes permissible repair.

## CONCLUSION

For the foregoing reasons, Sturm respectfully requests that the Court enter summary judgment of noninfringement.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Craig S. Fochler
Scott R. Kaspar
Aaron J. Weinzierl
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Tel: (312) 832-4500

Allen A. Arntsen
FOLEY & LARDNER LLP
Verex Plaza
150 East Gilman Street
Madison, WI 53703
Tel: (608) 257-5035

Dated: July 2, 2012
PUBLIC VERSION
Dated: July 10, 2012
1066374 / 35644

By: */s/ David E. Moore*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19801
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendant Sturm Foods, Inc.*

**FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on July 10, 2012, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on July 10, 2012, the attached document was Electronically Mailed to the following person(s):

John W. Shaw
Karen E. Keller
David M. Fry
Shaw Keller LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
jshaw@shawkeller.com
kkeller@shawkeller.com
dfry@shawkeller.com

Michael A. Albert
Gerald B. Hrycyszyn
Christopher W. Henry
Chelsea A. Loughran
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA 02210
malbert@wolfgreenfield.com
ghrycyszyn@wolfgreenfield.com
chenry@wolfgreenfield.com
cloughran@wolfgreenfield.com

By:   */s/ David E. Moore*
      Richard L. Horwitz
      David E. Moore
      POTTER ANDERSON & CORROON LLP
      Tel: (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

987174/35644