IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KEURIG, INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 10-841-SLR-MPT |
| | ) | |
| STURM FOODS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## JOINT [PROPOSED] FINAL JURY INSTRUCTIONS

Karen E. Keller (No. 4489)
Jeffrey T. Castellano (No. 4837)
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700

OF COUNSEL:

Michael A. Albert
Gerald B. Hrycyszyn
Chelsea A. Loughran
Christopher W. Henry
WOLF GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
(617)-646-8000
*Attorneys for Plaintiff Keurig, Incorporated*

Richard L Horwitz (# 2246)
David E. Moore (# 3983)
Bindu A. Palapura (# 5370)
POTTER ANDERSON & CORROON LLP
1313 N. Market Street, 6th Floor
Wilmington, DE  19801
(302) 984-6000

OF COUNSEL:

Craig S. Fochler
Scott R. Kaspar
Aaron J. Weinzierl
FOLEY & LARNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
(312) 832-4500

Allen A. Arntsen
150 East Gilman Street
Madison, WI 53703
(608) 257-5035

Kimberly L. Dodd
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
(414) 271-2400
*Attorneys for Defendant Sturm Foods, Inc.*

Dated: February 8, 2013

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................... i

JURY INSTRUCTION NO. 1
GENERAL INSTRUCTIONS ......................................................................................................... 1

JURY INSTRUCTION NO. 2
JURORS' DUTIES .......................................................................................................................... 2

JURY INSTRUCTION NO. 3
EVIDENCE DEFINED ................................................................................................................... 3

JURY INSTRUCTION NO. 4
DIRECT AND CIRCUMSTANTIAL EVIDENCE ....................................................................... 4

JURY INSTRUCTION NO. 5
CONSIDERATION OF EVIDENCE ............................................................................................. 5

JURY INSTRUCTION NO. 6
USE OF NOTES ............................................................................................................................. 6

JURY INSTRUCTION NO. 7
CREDIBILITY OF WITNESSES .................................................................................................. 7

JURY INSTRUCTION NO. 8
NUMBER OF WITNESSES .......................................................................................................... 9

JURY INSTRUCTION NO. 9
EXPERT WITNESSES ................................................................................................................. 10

JURY INSTRUCTION NO. 10
DEPOSITION TESTIMONY ....................................................................................................... 11

JURY INSTRUCTION NO. 11
THE PARTIES AND THEIR CONTENTIONS ........................................................................... 12

JURY INSTRUCTION NO. 12
BURDENS OF PROOF ................................................................................................................ 19

JURY INSTRUCTION NO. 13
TRADEMARK INFRINGEMENT - DEFINITION OF A TRADEMARK ................................... 21

JURY INSTRUCTION NO. 14
HOW A TRADEMARK IS OBTAINED .......................................................................... 22

JURY INSTRUCTION NO. 15
TRADEMARK REGISTRATION ................................................................................... 24

JURY INSTRUCTION NO. 16
THE PLAINTIFF'S BURDEN OF PROOF FOR A
TRADEMARK INFRINGEMENT CLAIM ................................................................... 26

JURY INSTRUCTION NO. 17
TRADEMARK LIABILITY – THEORIES AND POLICIES ........................................ 27

JURY INSTRUCTION NO. 18
TRADEMARK INFRINGEMENT –
ELEMENTS AND BURDEN OF PROOF ..................................................................... 29

JURY INSTRUCTION NO. 19
TRADEMARK INFRINGEMENT ELEMENTS
PRESUMED VALIDITY AND OWNERSHIP
– REGISTERED TRADEMARK .................................................................................. 31

JURY INSTRUCTION NO. 20
TRADEMARK INFRINGEMENT LIKELIHOOD
OF CONFUSION – LAPP FACTOR TEST .................................................................. 33

JURY INSTRUCTION NO. 21
TRADEMARK INFRINGEMENT
– FACTORS – ACTUAL CONFUSION ........................................................................ 36

JURY INSTRUCTION NO. 22
TRADEMARK INFRINGEMENT
– FACTORS – DE MINIMIS ACTUAL CONFUSION ................................................. 37

JURY INSTRUCTION NO. 23
TRADEMARK INFRINGEMENT– FACTORS – INTENT ........................................... 38

JURY INSTRUCTION NO. 24
TRADEMARK INFRINGEMENT
– FACTORS – THE PARTIES' SALES EFFORTS ....................................................... 39

JURY INSTRUCTION NO. 25
TRADEMARK INFRINGEMENT
 – FACTORS – DEGREE OF CARE ............................................................................. 40

JURY INSTRUCTION NO. 26
TRADEMARK INFRINGEMENT – SURVEYS ..................................................................... 41

JURY INSTRUCTION NO. 27
TRADEMARK INFRINGEMENT – PROPER UNIVERSE ......................................................... 42

JURY INSTRUCTION NO. 28
TRADEMARK INFRINGEMENT –
GENERALLY ACCEPTED STANDARDS OF PROCEDURE ...................................................... 43

JURY INSTRUCTION NO. 29
FAIR USE ................................................................................................................. 44

JURY INSTRUCTION NO. 30
OTHER UNFAIR COMPETITION CLAIMS ......................................................................... 48

JURY INSTRUCTION NO. 31
UNFAIR COMPETITION UNDER DELAWARE COMMON LAW ............................................. 49

JURY INSTRUCTION NO. 32
KEURIG'S CLAIM OF FALSE ADVERTISING ................................................................... 50

JURY INSTRUCTION NO. 33
TRADE DRESS INFRINGEMENT ..................................................................................... 53

JURY INSTRUCTION NO. 34
FUNCTIONALITY ........................................................................................................ 57

JURY INSTRUCTION NO. 35
SECONDARY MEANING ............................................................................................... 58

JURY INSTRUCTION NO. 36
TRADE DRESS INFRINGEMENT
– LIKELIHOOD OF CONFUSION ..................................................................................... 60

JURY INSTRUCTION NO. 37
TRADEMARK DILUTION .............................................................................................. 63

JURY INSTRUCTION NO. 38
FEDEARL UNFAIR COMPETITION, COMMON LAW
UNFAIR COMPETITION AND VIOLATION OF THE
DELAWARE UNIFORM DECEPTIVE TRADE
SECRETS PRACTICES LAW ........................................................................................... 67

JURY INSTRUCTION NO. 39
DAMAGES GENEARLLY ................................................................................ 69

JURY INSTRUCTION NO. 40
PLAINTIFF'S ACTUAL DAMAGES (15. U.S.C. § 117(a)) ........................................ 70

JURY INSTRUCTION NO. 41
STURM'S PROFITS (15 U.S.C. § 1117(**a**))
– TRADEMARK INFRINGEMENT ................................................................... 72

JURY INSTRUCTION NO. 42
STURM'S PROFITS – TRADE DRESS INFRINGEMENT ........................................ 73

JURY INSTRUCTION NO. 43
STURM'S PROFITS – FALSE ADVERTISING ..................................................... 74

JURY INSTRUCTION NO. 44
STURM'S PROFITS (15 U.S.C. § 1117(**a**)) – TRADEMARK
INFRINGEMENT, TRADE DRESS INFRINGEMENT,
AND FALSE ADVERTISING ........................................................................... 75

JURY INSTRUCTION NO. 45
TRADEMARK DAMAGES – REASONABLE ROYALTY .......................................... 77

JURY INSTRUCTION NO. 46
DELIBERATION AND VERDICT ..................................................................... 79

JURY INSTRUCTION NO. 47
UNANIMOUS VERDICT ................................................................................ 80

JURY INSTRUCTION NO. 48
DUTY TO DELIBERATE ................................................................................ 82

JURY INSTRUCTION NO. 49
COURT HAS NO OPINION ............................................................................. 84

**JURY INSTRUCTION NO. 1**

**GENERAL INSTRUCTIONS**

**INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.  I will start by explaining your duties and the general rules that apply in every civil case.  I will explain some rules that you must use in evaluating particular testimony and evidence.  I will explain the positions of the parties and the law you will apply in this case.  Last, I will explain the rules that you must follow during your deliberations in the jury room.  Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the interrogatories, or questions, that you must answer to decide this case.

**Source**:  Model Final Jury Instructions – Hon. Sue L. Robinson.

**JURY INSTRUCTION NO. 2**

**JURORS' DUTIES**

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide which party should prevail on the issues presented.  I will instruct you about the burden of proof shortly.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

**Source**:  Model Final Jury Instructions – Hon. Sue L. Robinson.

## JURY INSTRUCTION NO. 3

### EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in the courtroom.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.  The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, and any facts that the parties agreed to by stipulation.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  My legal rulings are not evidence.  None of my comments or questions are evidence.  The notes taken by any juror are not evidence.

Certain charts and graphics have been used to illustrate testimony from witnesses.  Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence even if they refer to, identify, or summarize evidence.

During the trial I may not have let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And sometimes I may have ordered you to disregard things that you saw or heard.  You must completely ignore all of these things.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

**Source**:  Model Final Jury Instructions – Hon. Sue L. Robinson.

**JURY INSTRUCTION NO. 4**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of any eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weights that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**Source**:  Model Final Jury Instructions – Hon. Sue L. Robinson.

## JURY INSTRUCTION NO. 5

## CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence.  Consider it in light of

your everyday experience with people and events, and give it whatever weight you believe it

deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you

are free to reach that conclusion.

**Source**:  Model Final Jury Instructions – Hon. Sue L. Robinson.

**JURY INSTRUCTION NO. 6**

**USE OF NOTES**

You may use notes taken during the trial to assist your memory.  Remember that your notes are for your personal use.  They may not be given or read to anyone else.  Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors. Your notes are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Some testimony that is considered unimportant at the time presented and, thus, not written down, may take on greater importance later on in the trial in light of all the evidence presented.  Your notes are valuable only as a way to refresh your memory.  Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.

<u>**Source**</u>:  Model Final Jury Instructions – Hon. Sue L. Robinson.

## JURY INSTRUCTION NO. 7

## CREDIBILITY OF WITNESSES

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all the testimony each witness has given and every matter of evidence that tends to show whether he or she is worthy of belief.  Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand.  Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters.  Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony.  Two or more persons witnessing an incident or transaction may see or hear it differently.  Likewise, in determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different, or inconsistent, from the testimony that he or she gave during the trial.  It is the province of the jury to determine whether a false statement or a prior inconsistent statement discredits the witness's testimony.

You should remember that a simple mistake by a witness does not mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

**<u>Source</u>**:  Model Final Jury Instructions – Hon. Sue L. Robinson.

**JURY INSTRUCTION NO. 8**

**NUMBER OF WITNESSES**

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.  Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

**<u>Source</u>**:  Model Final Jury Instructions – Hon. Sue L. Robinson.

**JURY INSTRUCTION NO. 9**

**EXPERT WITNESSES**

When scientific, technical, or other specialized knowledge regarding certain matters might be helpful to the jury, a person who has special knowledge, skill, experience, training, or education – he or she is called an expert witness – is permitted to state his or her opinion on those matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon his or her testimony.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

**Source**:  Model Final Jury Instructions – Hon. Sue L. Robinson.

**JURY INSTRUCTION NO. 10**

**DEPOSITION TESTIMONY**

During the trial, certain testimony was presented to you through depositions that were read into evidence or electronically played.  This testimony must be given the same consideration you would give it had the witness personally appeared in court.  Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts.

**Source**:  Model Final Jury Instructions – Hon. Sue L. Robinson.

## JURY INSTRUCTION NO. 11

## THE PARTIES AND THEIR CONTENTIONS [KEURIG PROPOSED]

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict.

The Plaintiff in this case is Keurig, Incorporated.  I will refer to this party either as "Plaintiff" or as "Keurig."  The Defendant in this case is Sturm Foods, Inc.  I will refer to this party either as "Defendant" or as "Sturm.

Keurig has designed and developed a single-serve beverage brewing system, including a series of single-serve beverage brewers and single-serve cartridges for use with those brewers. Keurig owns a United States trademark registration for the mark KEURIG (U.S. Reg. No. 2,933,253; registered March 15, 2005) for coffee and tea sold in single-serve containers for use in coffee and tea brewing machines.  Keurig also owns a United States trademark registration for the mark KEURIG (U.S. Reg. No. 2,057,361; registered April 29, 1997) for coffee brewing machines for domestic and commercial use.  I will refer collectively to these trademarks as "the KEURIG mark."

Sturm has made, marketed, used and sold single serve beverage cartridges that are designed to be used in Keurig brewers to make a single serve beverage, and which are sold under the "Grove Square" brand.  Sturm indicates on the packaging for its Grove Square cartridges that such are "For use by owners of KEURIG® coffee makers."  I may refer collectively to these beverage cartridge packages as the "accused Sturm cartridges" or the "accused Sturm products."

Keurig contends that Sturm infringes the KEURIG mark through the unauthorized use of this mark on the packaging of the accused Sturm cartridges and sales and marketing materials for the accused Sturm cartridges.  Sturm denies such trademark infringement.

Keurig further contends that Sturm is liable for false designation of origin under federal law (the Lanham act) by virtue of its infringement of Keurig's trademark.  Keurig further contends that Sturm has engaged in unfair competition under the Delaware Uniform Deceptive Trade Practices Act, and under federal law (Section 1125(a) of the Lanham Act).   If you find Sturm to have infringed Keurig's KEURIG trademark, you must also find Sturm liable for false designation of origin and unfair competition as the legal elements of these claims are identical.

Keurig also contends that Sturm has engaged in unfair competition under Delaware Common Law.  Sturm denies this allegation.

Keurig also contends that it owns rights to the trade dress of its single-serve beverage cartridge packaging because Keurig contends that such packaging has a distinctive look and feel. Keurig further contends that Sturm's packaging for its Grove Square cartridges (certain of the accused Sturm cartridges) infringes upon Keurig's trade dress rights.  Sturm denies such trade dress infringement

Keurig also contends that Sturm has falsely represented the quality and nature of the accused Sturm cartridges by indicating to consumers (on the product packaging) that such cartridges are "For use by owners of Keurig® coffee makers.  Keurig contends that such false representation has a tendency to deceive consumers into believing that the accused Sturm cartridges bear the quality of Keurig's manufactured or authorized K-Cup cartridges.  Sturm denies such false advertising allegations.

Sturm indicates on the center of the front facing panel of its cartridge package that its coffee is "Naturally Roasted, Soluble & Microground Arabica Coffee."  Keurig also contends that this representation deceives and has deceived consumers into believing that the accused Sturm cartridges contain fresh brewed coffee and not instant coffee.  Keurig also contends that

13

such deception causes consumers to purchase the accused Sturm cartridges when they would not otherwise purchase them if they knew that the contents were instant coffee.  Sturm denies such false advertising allegations.

Keurig also contends that Sturm is liable for dilution of Keurig's trademark as Sturm's unauthorized use of the KEURIG mark has blurred consumers' understanding of the origin of the goods associated with the KEURIG mark.  Sturm denies such dilution allegations.

Keurig contends that it has suffered harm from Sturm's unlawful actions and is entitled to collect monetary damages in the form of both actual damages—to compensate Keurig for such harm—and an award of Sturm's profits on the accused products—to prevent Sturm's unjust enrichment arising out of Sturm's unlawful acts.

You will be asked to determine the issues of trademark infringement, false advertising, unfair completion, dilution and an appropriate measure of damages according to instructions I will give you in a moment.

**Source**:  Model Final Jury Instructions – Hon. Sue L. Robinson. pp. 13-14 (modified with details relating to the specific contentions in this case).

### STURM OBJECTS TO THIS INSTRUCTION

**THE PARTIES AND THEIR CONTENTIONS [STURM PROPOSED]**

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict.

1. <u>Trademark Infringement</u>

This case includes a count of trademark infringement.  Keurig contends that Sturm infringes its "KEURIG®" mark through the unauthorized use of this mark in the statement "*For use by owners of Keurig® coffee makers" on the packaging of the Sturm containers to identify the source of the Sturm containers and Sturm contends that its use of the mark is to describe the use of its containers.

In this case, you must determine whether Keurig has proven that:  (1) the KEURIG mark is a valid, protectable trademark; (2) Keurig owns the KEURIG mark as a trademark; (3) Sturm's use of the KEURIG mark is likely to cause confusion among a substantial portion of potential ordinary purchasers of Sturm containers as to the source of the goods, and even if Keurig has proven all of these things has Sturm fairly used the "Keurig" mark to describe the use of its containers.

Sturm denies such trademark infringement and Keurig denies such fair use.

2. <u>Dilution of the KEURIG® Trademark</u>

This case also includes a count of trademark dilution.  Keurig contends that Sturm is liable for dilution of Keurig's trademark as Sturm's unauthorized use of the KEURIG mark in the statement "*For use by owners of Keurig® coffee makers" has lessened the distinctiveness of the Keurig mark for Keurig's coffee makers.  As mentioned earlier, Sturm contends that its use of the Keurig marks is fair use to describe the use of its containers.

Sturm denies Keurig's dilution allegations and Keurig denies Sturm's fair use allegations.

3.     Trade Dress Infringement

This case also includes a count of trade dress infringement.  Trade dress is the product's

total image and overall appearance, and may include features such as the size, shape, and color

of the various elements of the claimed trade dress.

Keurig contends that it has used a certain trade dress for certain of its single-serve

beverage container packages which have a look that became distinctive and indicated Keurig as

the source of those products prior to September 2010.  Keurig contends that the overall look and

feel of Sturm's "Grove Squre" brand packaging for certain of the Sturm containers infringes

upon Keurig's alleged trade dress rights.

In this case you must determine whether Keurig has proven that:  (1) Keurig has such a

trade dress; (2) Keurig's allegedly infringed trade dress is non-functional; (3) Keurig's alleged

trade dress had acquired distinctiveness prior to September 2010; and (4) a substantial portion of

potential purchasers of Sturm's "Grove Square" containers are likely to confuse the source of

Keurig's product with that of Sturm's products because Keurig's alleged trade dress and Sturm's

"Grove Square" trade dress are overall so similar in appearance.

Sturm denies such trade dress infringement.

4.     False Advertising

This case also includes claims for false advertising by both Keurig and Sturm.  Keurig

contends that Sturm has falsely represented the quality and nature of the Sturm products by

stating to consumers (on the product packaging) that such cartridges are "For use by owners of

Keurig® coffee makers."  Keurig contends that representation is false and has a tendency to

deceive the potential purchasers of Sturm's product because Keurig's manufactured or

authorized K-Cup products all have the same quality and the quoted Sturm statement causes

them to believe that Sturm's products are of the same quality.  Keurig also contends that such deception causes those potential purchasers to purchase the Sturm products when they would not otherwise so purchase them if they knew that those products were not of the same quality as Keurig's manufactured or authorized K-Cup products.

Keurig also contends that the statement "Naturally Roasted, Soluble & Microground Arabica Coffee" which appears on the center of the front facing panel of the Sturm packaging has a tendency to deceive a substantial portion of potential purchasers of Sturm products into believing that Sturm's products only contain fresh brewed coffee .  Keurig also contends that such alleged deception causes consumers to purchase the Sturm products when they would not otherwise purchase them.

Sturm denies these false advertising allegations.

Sturm contends that Keurig has represented that the coffee product containers for which Keurig uses the term "K-Cup" and "K-Cups" contain ground coffee.  Sturm contends that representation is false and has a tendency to deceive consumers into believe that none of Keurig's coffee products contain instant coffee.

Sturm contends that Keurig has represented that the containers which it uses for various beverages and for which its uses the terms "K-Cup" and "K-Cups" have filters.  Sturm contends that representation is false and has a tendency to deceive consumers into believing that non of Keurig's containers lack filters.

Keurig denies these false advertising allegations.

You must decide these issues according to the instructions that I shall give you at the end of the trial.  Those instructions will repeat this summary and will provide more detail.

Source:      Model Final Jury Instructions – Hon. Sue L. Robinson.

**KEURIG OBJECTS TO THIS INSTRUCTION**

## JURY INSTRUCTION NO. 12

## BURDENS OF PROOF [KEURIG PROPOSED]

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof."  Keurig must prove its counts of trademark infringement, trade dress infringement, false advertising, false designation or origin, unfair competition and dilution by a preponderance of the evidence.

When a party has the burden of proof by a preponderance of the evidence, it means that you must be persuaded that what the party seeks to prove is more probably true than not true.  To put it differently, if you were to put Keurig's and Sturm's evidence of trademark infringement on opposite sides of a scale, the evidence supporting Keurig's assertions would have to make the scale tip somewhat to Keurig's side.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt."  That burden does not apply in a civil case and you, therefore, should put it out of your mind in considering whether or not Keurig has met its "more likely than not" burden of proof.

**Source**:  Model Final Jury Instructions – Hon. Sue L. Robinson, pp. 15-16 (modified to include evidentiary burdens on non-patent issues); Model Civ. Jury Instr. 9th Cir. 15.5 (2007); <u>David Sherman Corp. v. Heublein, Inc.</u>, 340 F.2d 377 (8th Cir. 1965).

## STURM OBJECTS TO THIS INSTRUCTION

## BURDENS OF PROOF [STURM PROPOSED]

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof."  The burden of proof applied in this case is called "preponderance of the evidence."

Keurig must prove its claims of trademark infringement and dilution, trade dress infringement, and false advertising by a preponderance of the evidence.  Sturm must prove its defense of fair use and its claims of false advertising by a preponderance of the evidence.

When a party has the burden of proof by a preponderance of the evidence, it means that you must be persuaded that what the party seeks to prove is more probably true than not true.  To put it differently, if you were to put Keurig's and Sturm's evidence of trademark infringement on opposite sides of a scale, the evidence supporting the party's assertions would have to make the scale tip somewhat to that party's side.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt."  That burden does not apply in a civil case and you, therefore, should put it out of your mind in considering whether either party has met its "more likely than not" burden of proof.

Source:        Model Final Jury Instructions – Hon. Sue L. Robinson (modified).

### KEURIG OBJECTS TO THIS INSTRUCTION

**JURY INSTRUCTION NO. 13**

**TRADEMARK INFRINGEMENT - DEFINITION OF A TRADEMARK**

**[KEURIG PROPOSED]**

Keurig contends that Sturm infringes Keurig's trademarks.  Recall, Keurig owns United States trademark registration for the mark KEURIG (U.S. Reg. No. 2,933,253; registered March 15, 2005) for coffee and tea sold in single-serve containers for use in coffee and tea brewing machines.  Keurig also owns a United States trademark registration for the mark KEURIG (U.S. Reg. No. 2,057,361; registered April 29, 1997) for coffee brewing machines for domestic and commercial use.  Again, I will refer collectively to these trademarks as "the KEURIG mark." Keurig asserts that Sturm has infringed its KEURIG mark by unlawfully using this mark on its cartridge packaging.

A trademark is a word, a name, a symbol, a device, or a combination of them that indicates the source of goods.  The owner of a trademark, in this case Keurig, has the right to exclude others from using that trademark.

**Source:**  Model Civ. Jury Instr. 9th Cir. 15.0 (2007).

**STURM OBJECTS TO THIS INSTRUCTION**

21

**JURY INSTRUCTION NO. 14**

**HOW A TRADEMARK IS OBTAINED [KEURIG PROPOSED]**

A person acquires the right to exclude others from using a trademark by being the first to use it in the marketplace.  Rights in a trademark are obtained only through commercial use of the mark.  The owner of a trademark has the right to exclude others from using his or her mark.

**Source:**  Model Civ. Jury Instr. 9th Cir. 15.0 (2007).

**STURM OBJECTS TO THIS INSTRUCTION**

**HOW A TRADEMARK IS OBTAINED [STURM PROPOSED]**

A person acquires the right to exclude others from using a trademark as an indication of source for the other's product by being the first to use it in the marketplace.  Rights in a trademark are obtained only through commercial use of the mark.  The owner of a trademark has the right to exclude others from using the trademark as an indication of source for the others' products unless the trademark is or has become generic or has been abandoned.

Source:  *Ninth Circuit Manual of Model Jury Instructions* – Civil 15.0 (modified)

**KEURIG OBJECTS TO THIS INSTRUCTION**

## JURY INSTRUCTION NO. 15

## TRADEMARK REGISTRATION [KEURIG PROPOSED]

Once the owner of a trademark has obtained the right to exclude others from using the trademark, the owner may obtain a certificate of registration issued by the United States Patent and Trademark Office.  Thereafter, when the owner brings an action for infringement, the owner may rely solely on the registration certificate to prove that the owner has the right to exclude others from using the trademark in connection with the type of goods specified in the certificate.

**<u>Source</u>**  Model Civ. Jury Instr. 9th Cir. 15.0 (2007).

### STURM OBJECTS TO THIS INSTRUCTION

**TRADEMARK REGISTRATION [STURM PROPOSED]**

Once the owner of a trademark has obtained the right to exclude others from using the trademark as an indication of source for the others' product, the owner may obtain a certificate of registration issued by the United States Patent and Trademark Office. Thereafter, when the owner brings an action for infringement, the owner may rely solely on the registration certificate to prove that the owner has the right to exclude others from using the trademark as an indication of source for the others' product in connection with the type of goods specified in the certificate, unless the defendant offers evidence that the mark should no longer be registered.

Source:    *Ninth Circuit Manual of Model Jury Instructions* – Civil 15.0 (modified)

**KEURIG OBJECTS TO THIS INSTRUCTION**

**JURY INSTRUCTION NO. 16**

**THE PLAINTIFF'S BURDEN OF PROOF**
**FOR A TRADEMARK INFRINGEMENT CLAIM**

In this case, Keurig contends that Sturm has infringed Keurig's trademark "the

KEURIG® mark."  Keurig  has the burden of proving by a preponderance of the evidence that it

is the owner of a valid trademark and that Sturm infringed that trademark.  Again, preponderance

of the evidence means that you must be persuaded by the evidence that it is more probably true

than not true that Sturm infringed Keurig's trademark.

**Source:**  Model Civ. Jury Instr. 9th Cir. 15.0 (2007).

## JURY INSTRUCTION NO. 17

## TRADEMARK LIABILITY –  THEORIES AND POLICIES [KEURIG PROPOSED]

The trademark laws balance three often-conflicting goals: 1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; 2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and 3) protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case, because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

In my instructions, I will identify types of facts you are to consider in deciding if Sturm is liable to Keurig for violating the trademark law.  Many of the claims asserted by Keurig against Sturm relate to its unauthorized use of the KEURIG mark and therefore overlap in legal elements and factual requirements of proof.  These facts are relevant to whether Sturm is liable for:

1.  infringing Keurig's registered trademark rights, by using a trademark in a manner likely to cause confusion among consumers;

2.  unfairly competing, by using a trademark in a manner likely to cause confusion as to the origin or quality of Keurig's goods;

3. unfairly competing, by using trade dress in a manner likely to cause confusion as to the origin or quality of Keurig's goods; and

4.  false advertising, by making a false statement that was material and that tended to deceive consumers, injuring Keurig in the market.

**Source:**  Model Civ. Jury Instr. 9th Cir. 15.4 (2007).

27

**STURM OBJECTS TO THIS INSTRUCTION**

## JURY INSTRUCTION NO. 18

## TRADEMARK INFRINGEMENT – ELEMENTS AND BURDEN OF PROOF

## [KEURIG PROPOSED]

On Keurig's claim for trademark infringement, Keurig has the burden of proving each of the following three elements by a preponderance of the evidence that:

1. the KEURIG® mark is a valid, protectable trademark;

2. Keurig owns the KEURIG® mark as a trademark; and

3. Sturm used the KEURIG® mark without the consent of Keurig in a manner that is likely to cause confusion among ordinary purchasers as to the source or origin of the goods.

If you find that each of the elements on which Keurig has the burden of proof has been proved by a preponderance of the evidence, your verdict should be for Keurig.  If, on the other hand, Keurig has failed to prove any of these elements, your verdict should be for Sturm.

**Source**  Model Civ. Jury Instr. 9th Cir. 15.5 (2007); E.T. Browne Drug Co. v. Cococare Prods. Inc., 538 F.3d 185, 191 (3d. Cir. 2008).

## STURM OBJECTS TO THIS INSTRUCTION

**TRADEMARK INFRINGEMENT – ELEMENTS AND BURDEN OF PROOF**

**[STURM PROPOSED]**

On Keurig's claim for trademark infringement, Keurig has the burden of proving each of the following three elements by a preponderance of the evidence that:

1.  the KEURIG® mark is a valid, protectable trademark;

2.  Keurig owns the KEURIG® mark as a trademark; and

3.  Sturm used the KEURIG® mark without the consent of Keurig in a manner that is likely to cause confusion among ordinary purchasers as to the source or origin of the goods.

If Keurig has failed to prove any of these elements, your verdict should be for Sturm. If, on the other hand, you find that each of the elements on which Keurig has the burden of proof has been proved by a preponderance of the evidence, you must then decide whether Sturm has met its burden of proof on its trademark fair use defense before you can reach a verdict on Keurig's trademark infringement claim.

Source:    *Ninth Circuit Manual of Model Jury Instructions* – Civil 15.5 (modified); *E.T. Browne Drug Co. v. Cococare Prods. Inc.*, 538 F.3d 185, 191 (3d. Cir. 2008).

**KEURIG OBJECTS TO THIS INSTRUCTION**

## JURY INSTRUCTION NO. 19

## TRADEMARK INFRINGEMENT ELEMENTS

## PRESUMED VALIDITY AND OWNERSHIP – REGISTERED TRADEMARK

## [KEURIG PROPOSED]

I instructed you that Keurig is required to prove by a preponderance of the evidence the KEURIG® mark is valid and protectable and that Keurig owns that trademark.  A valid trademark is a word, name, symbol, device, or any combination of these, that indicates the source of goods and distinguishes those goods from the goods of others. A trademark becomes protectable after it is used in commerce

One way for Keurig to prove trademark validity is to show that the trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate.

Exhibits [to be filled-in] and [to be filled-in] are certificates of registration from the United States Patent and Trademark Office.  They were submitted by Keurig as proof of the validity of the KEURIG® marks and that Keurig owns the trademarks.  Sturm does not contest these two elements of Keurig's trademark infringement claim, so you must presume that the KEURIG® mark is valid and protectable and that Keurig owns that trademark.

**Source**:  Model Civ. Jury Instr. 9th Cir. 15.7 (2007).

## STURM OBJECTS TO THIS INSTRUCTION

**TRADEMARK INFRINGEMENT ELEMENTS**

**PRESUMED VALIDITY AND OWNERSHIP – REGISTERED TRADEMARK**

**[STURM PROPOSED]**

I instructed you that Keurig is required to prove by a preponderance of the evidence the KEURIG® mark is valid and protectable and that Keurig owns that trademark.  A valid trademark is a word, name, symbol, device, or any combination of these, that indicates the source of goods and distinguishes those goods from the goods of others. A term becomes protectable as a trademark after it is used in commerce unless it is descriptive or generic.

An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate.   The certificate creates a presumption that may be rebutted by evidence from the defendant that the mark is not valid or protectable.

Source:    *Ninth Circuit Manual of Model Jury Instructions* – Civil 15.7 (modified); 15 U.S.C. § 1057(b); *Georgia-Pacific Consumer Prods. LP v. Kimberly-Clark Corp*, 647 F.3d 723, 727 (7th Cir. 2011).

**KEURIG OBJECTS TO THIS INSTRUCTION**

## JURY INSTRUCTION NO. 20

## TRADEMARK INFRINGEMENT

## LIKELIHOOD OF CONFUSION – LAPP FACTOR TEST [KEURIG PROPOSED]

You must consider whether Sturm's use of the KEURIG® trademark is likely to cause confusion about the source of Sturm's goods.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

(1)     price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;

(2)     length of time Sturm has used the mark without evidence of actual confusion;

(3)     intent of Sturm in adopting the mark;

(4)     evidence of actual confusion - If use by Sturm of the KEURIG® trademark has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, Sturm's use of the KEURIG® mark may still be likely to cause confusion.

(5)     whether the goods are marketed through the same channels of trade and advertised through the same media - If Keurig's and Sturm's products are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

(6)     the extent to which the targets of the parties' sales efforts are the same - If Keurig and Sturm use the KEURIG® mark on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

(7) the relationship of the goods in the minds of consumers because of the similarity of function; and

(8) other facts suggesting that the consuming public might expect Keurig to manufacture or approve of the accused Sturm cartridges.

**Source**:  Century 21 Real Estate Corporation v. Lendingtree, Inc., 425 F.3d 211, 224-25 (3d Cir. 2005); Interpace Corporation v. Lapp, Inc., 721 F.2d 460, 462-63 (3d Cir. 1983).

**STURM OBJECTS TO THIS INSTRUCTION**

**TRADEMARK INFRINGEMENT – FACTORS [STURM PROPOSED]**

As I have told you, one of the things that Keurig must prove is that Sturm used the mark KEURIG in a manner that is likely to cause confusion as to whether Keurig is the source of Sturm's products.  Keurig must prove there is such a likelihood of confusion among a substantial portion of the potential purchasers of the Sturm products.

In deciding this, you should consider the following:

1.     the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;

2.     the length of time the defendant has used the mark without evidence of actual confusion;

3.     intent of the defendant in adopting the mark;

4.     evidence of actual confusion; and

5.     the extent to which the targets of the parties' sales efforts are the same.

The weight to be given to each of these factors is up to you to determine.  No particular factor or number of factors is required to prove a likelihood of confusion.  As I will instruct you, Sturm has raised the defense of nominative fair use.  You will only need to decide whether Sturm's use is a fair use if you find that Keurig has met its burden to prove a likelihood of confusion among a substantial number of people who buy or use, or consider buying or using, the Sturm products.  Sturm has no burden to show there is no likelihood of confusion.

Source:     *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 217, 224-25 (3d Cir. 2005); *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983); *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 114, 123 (2004); *Ninth Circuit Manual of Model Jury Instructions* – Civil 15.16 (modified); Seventh Circuit – 13.1.2.3 (modified)

**KEURIG OBJECTS TO THIS INSTRUCTION**

## JURY INSTRUCTION NO. 21

## TRADEMARK INFRINGEMENT – FACTORS – ACTUAL CONFUSION

## [STURM PROPOSED]

In order for you to find that consumers were actually confused as to whether Keurig is the source of Sturm's products, Keurig must prove two things by a preponderance of the evidence.

First, Keurig must prove that potential purchasers of the Sturm products actually believed that Keurig is the source of Sturm's products.

Second, Keurig must prove that those potential purchasers of the Sturm products were confused as to whether Keurig is the source of or approved Sturm's products by Sturm's use of the mark KEURIG.  In order for you to find that there was actual confusion, you must find that any consumer misconceptions were caused by the use of the mark KEURIG and not by other aspects of the packaging.

Source:   2 Duane Burton, *Jury Instructions in Intellectual Property Cases* 30:51:61 (modified); *Chronicle Pubs. Co. v. Legrand*, 24 U.S.P.Q.2d 1881 (N.D. Cal. 1992)

## KEURIG OBJECTS TO THIS INSTRUCTION

## JURY INSTRUCTION NO. 22

## TRADEMARK INFRINGEMENT – FACTORS – DE MINIMIS ACTUAL CONFUSION

## [STURM PROPOSED]

Isolated or idiosyncratic instances of confusion are not sufficient to create a likelihood of confusion.  If there is a large volume of sales, but only a few isolated instances of actual confusion, the amount of actual confusion is not substantial and should be discounted.

Source:    *A & H Sportsweak, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 227 (3d Cir. 2000); 2 Duane Burton, *Jury Instructions in Intellectual Property Cases* 30:51:62 (modified).

## KEURIG OBJECTS TO THIS INSTRUCTION

## JURY INSTRUCTION NO. 23

### TRADEMARK INFRINGEMENT – FACTORS – INTENT [STURM PROPOSED]

In order for you to find that Sturm's intent weighs in support of a likelihood of confusion, you must find that Sturm intended to cause potential purchasers to believe Sturm's products came from or were approved by Keurig.

Source:   *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 224-25 (3d Cir. 2005).

**KEURIG OBJECTS TO THIS INSTRUCTION**

**JURY INSTRUCTION NO. 24**

**TRADEMARK INFRINGEMENT – FACTORS – THE PARTIES' SALES EFFORTS**

**[STURM PROPOSED]**

If you find that the parties target identical customers, that fact has no bearing on the likelihood of confusion.  However, to the extent the targeted customers differ, that lessens the likelihood of confusion.

Source:    *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 249 (3d Cir. 2005).

**KEURIG OBJECTS TO THIS INSTRUCTION**

## JURY INSTRUCTION NO. 25

## TRADEMARK INFRINGEMENT – FACTORS – DEGREE OF CARE

## [STURM PROPOSED]

This factor requires your consideration and comparison of the potential customers of both parties.  The degree of care exercised by the potential customers of Keurig's and Sturm's products is a consideration because the lesser the degree of care exercised, the more likely it is for confusion or mistake to occur.  In determining the degree of care exercised by customers, you may consider the costs associated with each product or service.  You may also consider the sophistication of the purchasers of the products or services.  Typically, sophistication of consumers, that is knowledge and experience, weighs against a finding of a likelihood of confusion, depending on the circumstances of the market and the products.

Source:    2 Duane Burton, *Jury Instructions in Intellectual Property Cases* 30:51:73 (modified).

## KEURIG OBJECTS TO THIS INSTRUCTION

## JURY INSTRUCTION NO. 26

### TRADEMARK INFRINGEMENT – SURVEYS [STURM PROPOSED]

It is up to you to decide how much weight, if any, to give to a survey.  In determining how much weight, if any, to give to a survey, you should consider the following:

1.      The appropriateness of the consumer population that was selected and examined;

2.      Whether a representative sample was drawn from that survey universe;

3.      Whether the questions asked of interviewees were framed in a clear, precise and non-leading manner;

4.      The qualifications and reputation of the person designing and conducting the survey;

5.      Whether the data gathered was accurately reported;

6.      Whether there was any bias built into the survey by the person who designed it; and

7.      Whether the sample, questionnaire, interviewing and data analysis were done in accordance with generally accepted standards of procedure and statistics in the field of consumer surveys.

Source:    2 Duane Burton, *Jury Instructions in Intellectual Property Cases* 30:31:02 (modified).

### KEURIG OBJECTS TO THIS INSTRUCTION

## JURY INSTRUCTION NO. 27

### TRADEMARK INFRINGEMENT – PROPER UNIVERSE [STURM PROPOSED]

In surveys taken in trademark litigation to determine whether the use by two different persons or parties of their respective marks on their respective goods is likely to cause confusion among consumers and prospective consumers, it is necessary to determine the proper universe. The term "universe," in surveys of this type means those individuals who are potential purchasers of Sturm's product.

Source:    2 Duane Burton, *Jury Instructions in Intellectual Property Cases* 30:31:11 (modified).

**KEURIG OBJECTS TO THIS INSTRUCTION**

## JURY INSTRUCTION NO. 28

## TRADEMARK INFRINGEMENT – GENERALLY ACCEPTED STANDARDS OF

## PROCEDURE [STURM PROPOSED]

In surveys taken in trademark litigation to determine whether the use by two different persons or parties of their respective marks on their respective goods is likely to cause confusion among consumers and potential purchasers, the generally accepted standards of procedure require that the survey employ a control to account for "noise" such as preexisting beliefs, guessing and other irrelevant responses. The generally accepted standards of procedure also require that survey responses be "validated"—that a percentage of respondents be contacted to be sure that the respondents actually took the survey.

Source:    *THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 240 (S.D.N.Y. 2010); *P&G Pharms., Inc. v. Hoffmann-La Roche, Inc.*, No. 06-cv-34, 2006 WL 2588002, at *23-25 (S.D.N.Y. Sept. 6, 2006); *Pharmacia Corp. v. GlaxoSmithKline Cons. Healthcare, L.P.*, 292 F. Supp. 2d 594, 604-05 (D.N.J. 2003); Shari Diamond, *Ref. Guide on Survey Research* 398-99 (3d ed. 2011); "Why Online Consumer Surveys Can Be a Smart Choice in Intellectual Property Cases," 26 *IPL Newsletter* 1, 12 (2008).

## KEURIG OBJECTS TO THIS INSTRUCTION

## JURY INSTRUCTION NO. 29

## FAIR USE [KEURIG PROPOSED]

Sturm contends that it did not infringe the KEURIG® mark because its use of that mark was a fair use

To prove its use of the KEURIG® mark is fair, Sturm must prove, by a preponderance of the evidence:

1. that use of the KEURIG® mark is necessary to describe both Keurig's product and in order to describe Sturm's product;

2. that Sturm uses only so much of the KEURIG® mark as is necessary to describe Keurig's product; and

3. that Sturm's conduct or language reflects a true and accurate relationship between Keurig and Sturm's products.

Keurig contends that Sturm failed to show the true and accurate relationship between Keurig and Sturm's product.  Specifically, Keurig contends that the use of the KEURIG® mark was prominent on the front of the Sturm product packaging, while a disclaimer was in fine print on the bottom or back of the box where it would be unlikely to be seen by consumers.  Keurig further contends, even if consumers did see that disclaimer, it fails to accurately communicate the lack of relationship between Keurig and Sturm's "Grove Square" product.  Keurig contends that survey evidence shows that consumer confusion was not remedied by the presence of Sturm's disclaimer.  Sturm's position is that there is a disclaimer on its products and its use of the KEURIG® mark is a fair use.

If you find that Sturm's does not adequately convey the true and accurate relationship between Keurig and Sturm's product to consumers, then Sturm has failed to prove its use of the KEURIG® mark is fair use.

**Source:**    Ninth Circuit Manual of Model Jury Instructions – Civil 15.23 (modified); *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 228-29 (3d Cir. 2005); *KP Permanent Make-Up Inc. v. Lasting Impression I Inc.*, 543 U.S. 111, 121, 122 (2004); on effectiveness of disclaimer-- *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1550 (S.D. Tex. 1996) ("[I]nconspicuous disclaimers (or lack thereof) in [defendant's] written brochures and advertisements do not eliminate the confusion generated by the [defendant's] uses of plaintiffs' service marks."); *Weight Watchers Int'l, Inc. v. Stouffer Corp.*, 744 F. Supp. 1259 (S.D.N.Y. 1990) ("Because of its location and size, the disclaimer does not effectively eliminate the misleading impression conveyed in the ad's large headline."); *Holmes Group, Inc. v. RPS Products, Inc.*, 424 F. Supp. 2d 271, 293 (D. Mass. 2006) ("Potentially confusing statements may not be effectively disclaimed for purposes of trademark infringement claim where the disclaimer is not in sufficiently close proximity to the statements."); *Toho Co., Ltd. v. William Morrow & Co., Inc.*, 33 F. Supp. 2d 1206, 1212 (C.D. Cal. 1998) (Court found "unauthorized" gave a limited amount of information and did not negate sponsorship. "That this [disclaimer] is conveyed on the back cover does not suffice. This Court is of the belief that most consumers look primarily at the front cover of a book prior to purchase."); *Charles of the Ritz Group Ltd. v. Quality King Distributors, Inc.*, 832 F.2d 1317, 1324 (2d Cir. 1987) ("In this case of substantial confusion, however, the district court judge was well within his discretion in requiring that the disclaimer be prominent and also indicate that the two companies were competitors, rather than allowing the current ambiguous wording "not related to.").

## STURM OBJECTS TO THIS INSTRUCTION

## FAIR USE [STURM PROPOSED]

The owner of a trademark cannot exclude others from making fair use of the trademark. A defendant makes fair use of a mark when the defendant uses it, to refer to the plaintiff's products in order to describe the defendant's own products.

Sturm contends that it did not infringe the mark Keurig because its use of "Keurig" was a fair use of the mark to refer to Keurig's brewer products, in describing the use of Sturm's product. Sturm has the burden of proving its fair use of the mark by a preponderance of the evidence.

A defendant makes fair use of a trademark when:

1.     The defendant used the plaintiff's mark to refer to plaintiff's product in order to describe defendant's product,

2.     The identification by the defendant of plaintiff's product would be rendered significantly more difficult without use of the plaintiff's mark;

3.     The defendant uses only so much of the plaintiff's mark as is necessary to refer to the plaintiff's products; and

4.     The defendant's conduct and language does not reflect an untrue or inaccurate relationship, between the plaintiff and the defendant's product. The mere fact that Sturm used the "Keurig" mark does not suggest unfairness under this analysis and the disclaimer on Sturm's packaging must be considered in determining whether Sturm accurately portrayed the relationship between the plaintiff, Keurig, and Sturm's own product.

In determining whether the Sturm used only so much of the "Keurig" mark as is necessary, you should consider the manner in which Sturm displays the mark. For example, did

Sturm use Keurig's distinctive letters or logo when using the "Keurig" mark or did Sturm simply use block letters.

The fact that Sturm's use of the Keurig mark may bring Sturm a profit or help in competing with Keurig does not mean the use was not a fair use.

To prove fair use, Sturm does not have to negate any evidence of a likelihood of any confusion.

Source:   *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 228-29 (3d Cir. 2005); *KP Permanent Make-Up Inc. v. Lasting Impression I Inc.*, 543 U.S. 111, 121, 122 (2004); Ninth Circuit Manual of Model Jury Instructions – Civil 15.23 (modified).

**KEURIG OBJECTS TO THIS INSTRUCTION**

## JURY INSTRUCTION NO. 30

## OTHER UNFAIR COMPETITION CLAIMS [KEURIG PROPOSED]

As I explained to you earlier, Keurig has asserted a number of claims against Sturm that are related to Sturm's use of Keurig's KEURIG® mark.  These are:

(1)      Sturm is liable for false designation of origin under the Lanham act by virtue of its infringement of Keurig's trademark;

(2)      Sturm has engaged in unfair competition under the Delaware Uniform Deceptive Trade Practices Act; and

(3)      Sturm has engaged in unfair competition under Section 1125(a) of the Lanham Act.

The legal elements of each of these claims are identical to those of trademark infringement.  Therefore, if you find Sturm to have infringed the KEURIG® trademark, you must also find Sturm liable for false designation of origin and unfair competition.  If you find that Keurig has failed to prove that Sturm's use of the KEURIG® mark causes a likelihood of confusion as to the source of Sturm's product, you cannot find Sturm liable for false designation or origin or any of the three asserted claims of unfair competition.

**Source:** A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 166 F.3d 197, 202 (3d. Cir. 1999).  Schering-Plough Healthcare Prods., Inc. v. Neutrogena Corp., 702 F. Supp. 2d 266, 272 (D. Del. 2010); Primepoint, L.L.C. v. Primepay, Inc., 545 F. Supp. 2d 426, 431-32 (D.N.J. 2008).

## STURM OBJECTS TO THIS INSTRUCTION

## JURY INSTRUCTION NO.31

## UNFAIR COMPETITION UNDER DELAWARE COMMON LAW [KEURIG PROPOSED]

Keurig also contends that Sturm's unauthorized use of the KEURIG mark constitutes unfair competition under Delaware Common Law.  This legal claim is different and broader than the unfair competition claims under the Uniform Deceptive Trade Practices Act and Lanham Act that I have mentioned previously.  Thus, if you find that Keurig has met its evidentiary burden in demonstrating trademark infringement, you must find that Keurig has succeeded on its Unfair Competition claim under Delaware Common Law.  However, if you find that Keurig has not met its burden on its trademark infringement claim, you must still consider whether it has met its burden on its claim of Unfair Competition under Delaware Common Law.

To prove its claim of Unfair Competition under Delaware Common Law, you must find that Keurig has demonstrated, by a preponderance of the evidence, the following:

1.      That Keurig had a reasonable expectancy of entering a valid business relationship with its customers (in the form of product sales);

2.      That Sturm has wrongfully interfered with that relationship; and

3.      That Sturm's actions have defeated Keurig's legitimate expectancy of entering a valid business relationship.

**Source**: Deston Therapeutics LLC v. Trigen Labs., Inc., 723 F. Supp. 2d 665, 676 (D. Del. 2010) (quoting Ethypharm S.A. v. Abbott Labs., 598 F. Supp. 2d 611, 618 (D. Del. 2009) and Total Care Physicians, P.A. v. O'Hara, 798 A.2d 1043, 1057 (Del. Super. Ct. 2001)).

### STURM OBJECTS TO THIS INSTRUCTION

49

## JURY INSTRUCTION NO.32

### KEURIG'S CLAIM OF FALSE ADVERTISING [KEURIG PROPOSED]

As I have described in my introduction, Keurig contends that certain of the statements Sturm makes on the packaging for the accused Sturm cartridges constitute false advertising. To prevail on its false advertising claim(s), Keurig must establish by a preponderance of the evidence, each of the following elements:

(1)     Sturm made false or misleading statements as to its own product;

(2)     There is actual deception or at least a tendency to deceive a substantial portion of the intended audience;

(3)     That the deception is material in that it is likely to influence purchasing decisions; and

(4)     That the advertised goods entered interstate commerce.

For purposes of the first element, Keurig may establish that Sturm has made a false or misleading statement by proving that Sturm has made a statement that left the intended audience with a false impression. A statement that is true on its face can be misleading. In determining whether a statement is misleading, you should consider both the statement itself and the context in which it was made.

**Source:**  Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone Poulenc Rorer Pharms. Inc., 19 F.3d 125, 129 (3d Cir. 1994); Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F.2d 869, 872 (3d Cir. 1992); U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 921 (3d Cir. 1990).

### STURM OBJECTS TO THIS INSTRUCTION

**KEURIG'S CLAIM OF FALSE ADVERTISING – EQUIVALENT QUALITY**

**[STURM PROPOSED]**

Plaintiff claims that Defendant engaged in false advertising by showing on its packaging the following "∗For Use By Owners of Keurig® coffee makers".  To succeed on this claim, Plaintiff must prove five things by a preponderance of the evidence:

1.      All Keurig containers are of the same quality

2.      The Sturm statement has been shown necessarily or by direct evidence from a substantial portion of potential purchasers of Sturm's containers to communicate a false statement of the quality of Sturm's containers is not the same as that level of quality of Sturm's containers.

3.      The false statement actually deceived or had the tendency to deceive that portion of potential purchasers of Sturm's containers into believing that Sturm products had such quality level.

4.      Such deception was likely to influence the purchasing decisions of those potential purchasers.

5.      Plaintiff has been or is likely to be injured as a result of the false statement. Injury includes direct diversion of sales from itself to Defendant as a result of the false statement.

You must find for Sturm if you find that Keurig has not proved each of these things or that Sturm has used the "Keurig" mark fairly.  If, on the other hand, you find that Keurig has proved each of these things and that Sturm was not making fair use of that mark, you should find in favor of Keurig on its trademark infringement claim.

Source:    Seventh Circuit Model Jury Instructions 13.3.1 (modified).

**KEURIG OBJECTS TO THIS INSTRUCTION**

## KEURIG'S CLAIM OF FALSE ADVERTISING – INSTANT

## [STURM PROPOSED]

Plaintiff claims that Defendant engaged in false advertising by showing on its coffee container packaging the following phrases: "Naturally Roaster Soluble and Microground Arabica Coffee". To succeed on this claim, Plaintiff must prove four things by a preponderance of the evidence:

1.      The phrase has been shown by direct evidence from a substantial portion of potential purchasers of Sturm's containers to necessarily mean that the Sturm products contain only regular ground coffee.

2.      The non-literal, necessary meaning of the phrase actually deceived or had the tendency to deceive a substantial portion of potential purchasers of Defendant's products or the phrase has been shown by direct evidence from a substantial portion of potential purchasers of Sturm products to mean that those products contain only regular ground coffee and not soluble and microground coffee.

3.      The deception was likely to influence the purchasing decisions of the potential purchasers of Defendant's product.

4.      Plaintiff has been or is likely to be injured as a result of that false statement of fact about Defendant's product. Injury includes direct diversion of sales from itself to Defendant as a result of the false statement.

If you find that Plaintiff has proved each of these things, then you must find for Plaintiff on this claim. If, on the other hand, you find that Plaintiff has failed to prove any one of these things, then you must find for Defendant on this claim.

Source:    Seventh Circuit Model Jury Instructions 13.3.1 (modified).

## KEURIG OBJECTS TO THIS INSTRUCTION

## JURY INSTRUCTION NO. 33

## TRADE DRESS INFRINGEMENT [KEURIG PROPOSED]

In this case, Keurig contends that Sturm has infringed Keurig's trade dress.  Keurig has

the burden of proving by a preponderance of the evidence that it is the owner of a valid trade

dress and that Sturm infringed that trade dress.  Again, preponderance of the evidence means that

you must be persuaded by the evidence that it is more probably true than not true that Sturm

infringed Keurig's trade dress.

Trade dress is the product's total image and overall appearance, and may include features

such as the size, shape, and color of the various elements of the claimed trade dress.  In other

words, trade dress is the form in which a person or company presents a product to the market, or

its manner of display.

To establish trade dress infringement over multiple product lines of K-Cup® cartridge

products, as Keurig alleges in this case, Keurig must first demonstrate that the series of line has a

recognizable and consistent overall look.  A consistent overall look does not require that the

products be identical.  Furthermore, this consistent overall look need only be present over the

products or packaging for which Keurig is seeking trade dress protection.

Once Keurig establishes this consistent overall look, Keurig must then show the

following:

(1)      Keurig's allegedly infringed design is non-functional;

(2)      the design has acquired secondary meaning; and

(3)      consumers are likely to confuse the source of Keurig's product with that of

Sturm's product.

If you find that each of the elements on which Keurig bears the burden of proof has been

53

proved, your verdict should be for Keurig.  If, on the other hand, Keurig has failed to prove any

of these elements, your verdict should be for Sturm.

**Source:**  Rose Art Industries, Inc. v. Swanson, 235 F.3d 165, 173, 175 (3d. Cir. 2000); McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC, 511 F.3d 350, 357 (3d. Cir. 2007); Ninth Cir. Model Civil JURY INSTRUCTION 15.0, 15.2, 15.6 (modified).

**STURM OBJECTS TO THIS INSTRUCTION**

**BURDEN OF PROOF ON TRADE DRESS INFRINGEMENT [STURM PROPOSED]**

In this case, Keurig contends that the trade dress used by Sturm bearing the "Grove Square" trademark has infringed Keurig's trade dress.  Keurig has the burden of proving by a preponderance of the evidence that it is the owner of a valid trade dress and that Sturm infringed that trade dress.

Again, preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that Sturm infringed Keurig's trade dress.

**Source:**          *Ninth Cir Model Civil JURY INSTRUCTION* – Civil 15.0 (modified).

**KEURIG OBJECTS TO THIS INSTRUCTION**

## ELEMENTS OF TRADE DRESS INFRINGEMENT [STURM PROPOSED]

To establish trade dress infringement over multiple lines of Keurig containers, as Keurig alleges in this case, Keurig must first demonstrate that the series of lines has a recognizable and consistent overall look.  A consistent overall look does not require that the products be identical.  This consistent overall look must be present over the series of lines for which Keurig is seeking trade dress protection.

Once Keurig establishes this consistent overall look of its series of lines, Keurig must then show the following:

(1)     Keurig's allegedly infringed trade dress is non-functional;

(2)     the trade dress had acquired secondary meaning prior to Sturm's use of its "Grove Square" trade dress; and

(3)     Sturm's "Grove Square" trade dress is so similar overall to Keurig's allegedly infringed trade dress that consumers are likely to confuse the source of Sturm's product with that of Keurig's product.

If you find that Keurig has failed to prove any of these elements, your verdict should be for Sturm.  If, on the other hand, you find that each of the elements on which Keurig bears the burden of proof has been proved, your verdict should be for Keurig.

**Source:**     *Rose Art Industries, Inc. v. Swanson*, 235 F.3d 165, 173, 175 (3d. Cir. 2000); *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357 (3d Cir. 2007); Ninth Cir. Model Civil JURY INSTRUCTION 15.6.

### KEURIG OBJECTS TO THIS INSTRUCTION

**JURY INSTRUCTION NO. 34**

**FUNCTIONALITY**

A trade dress must be non-functional.  A trade dress may be deemed functional if, taken as a whole, the collection of trade dress elements is essential to the use or purpose of the article or if it affects the cost or quality of the article; in other words, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage.  A trade dress may be non-functional even though certain particular elements of the trade dress may be functional.

Trade dress concerns the overall visual impression created in the consumer's mind when viewing the non-functional aspects of the product and not from the utilitarian or useful aspects of the product.  In considering the impact of the non-functional aspects, which are often a complex combination of many features, you must consider the appearance of features together, rather than separately.

**Source**:  Ninth Cir. Model Civil JURY INSTRUCTION 15.2 (modified).

57

## JURY INSTRUCTION NO. 35

## SECONDARY MEANING [KEURIG PROPOSED]

Secondary meaning is established when it is shown that, in the minds of the public, the primary significance of a product trade dress is to identify the source of the product rather than the product itself.

As you consider secondary meaning, you should examine the length, degree, manner and exclusivity of use of the trade dress and whether Sturm has intentionally copied Keurig's trade dress.  Evidence of deliberate copying is itself persuasive evidence of secondary meaning.  The presence or absence of any particular factor that I have suggested here should not necessarily resolve whether there is secondary meaning, because you must consider all relevant evidence in determining this.

The mere fact that Keurig is using its trade dress, or that Keurig began using it before Sturm, does not mean that the trade dress has acquired secondary meaning.  There is no particular length of time that a trade dress must be used before it acquires secondary meaning.

**Source**:  Ninth Cir. Model Civil JURY INSTRUCTION 15.10; Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 292 (3d. Cir.1991).

**STURM OBJECTS TO THIS INSTRUCTION**

## SECONDARY MEANING [STURM PROPOSED]

Secondary meaning is established when it is shown that, in the minds of the public, the primary significance of a product trade dress is to identify the source of the product rather than the product itself.

I will suggest some factors you should consider in whether Keurig's trade dress has acquired secondary meaning.  The presence or absence of any particular factor that I suggest should not necessarily resolve whether there is secondary meaning, because you must consider all relevant evidence in determining this.

As you consider secondary meaning, you should examine the length, degree, manner and exclusivity of use of the trade dress and whether Sturm has intentionally copied Keurig's trade dress for the purpose of causing confusion.

The mere fact that Keurig is using its trade dress, or that Keurig began using it before Sturm, does not mean that the trade dress has acquired secondary meaning.  There is no particular length of time that a trade dress must be used before it acquires secondary meaning.

**Source**:   Ninth Cir. Model Civil JURY INSTRUCTION 15.10 (modified); *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 (3d. Cir.1991).

## KEURIG OBJECTS TO THIS INSTRUCTION

JURY INSTRUCTION NO. 36

**TRADE DRESS INFRINGEMENT – LIKELIHOOD OF CONFUSION**

**[KEURIG PROPOSED]**

In order to prevail on its claim for trade dress infringement, Keurig must prove, by a preponderance of the evidence, that there is a likelihood of confusion between Keurig's trade dress and Sturm's accused product packaging.

In order to decide whether such likelihood of confusion exists, you must consider the following factors. Not all factors will be relevant in all cases, further, these different factors may be given different weight depending upon the facts in this case.

(1) the degree of similarity between Keurig's trade dress and the allegedly infringing trade dress;

(2) the strength of Keurig's trade dress;

(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;

(4) the length of time Sturm has used its trade dress without evidence of actual confusion arising;

(5) the intent of Sturm in adopting its trade dress;

(6) the evidence of actual confusion;

(7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media;

(8) the extent to which the targets of the parties' sales efforts are the same;

(9) the relationship of the goods in the minds of consumers because of the similarity of function;

(10) other facts suggesting that the consuming public might expect Keurig to manufacture a product in Sturm's market, or that Keurig is likely to expand into that market.

**Source**:  McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC, 511 F.3d 350, 358 (3d. Cir. 2007); Freedom Card, Inc. v. JPMorgan Chase & Co., 432 F.3d 463, 471 (3d Cir.2005).

<b>STURM OBJECTS TO THIS INSTRUCTION</b>

**TRADE DRESS INFRINGEMENT – LIKELIHOOD OF CONFUSION**

**[STURM PROPOSED]**

In order to prevail on its claim for trade dress infringement, Keurig must prove, by a preponderance of the evidence, that there is a likelihood of confusion between the overall look of Keurig's trade dress and the overall look of  Sturm's "Grove Square" trade dress.

In order to decide whether such likelihood of confusion exists, you must consider the following factors.  Not all factors will be relevant in all cases, further, these different factors may be given different weight depending upon the facts in this case.

(1) the degree of similarity between the overall looks of Keurig's trade dress and the "Grove Square" trade dress;

(2) the strength of Keurig's trade dress;

(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;

(4) the length of time Sturm has used its trade dress without evidence of actual confusion arising;

(5) the intent of Sturm in adopting its trade dress;

(6) any evidence of actual confusion caused by the overall look of the "Grove Square" trade dress;

(7) the extent to which the targets of the parties' sales efforts are the same;

**Source:** *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 358 (3d. Cir. 2007); *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 471 (3d Cir. 2005).

**KEURIG OBJECTS TO THIS INSTRUCTION**

## JURY INSTRUCTION NO. 37

## TRADEMARK DILUTION [KEURIG PROPOSED]

Keurig contends that Sturm's unauthorized use of its KEURIG mark constitutes dilution by blurring under federal trademark laws. In order to succeed on its dilution by blurring claim, Keurig must prove the following five elements by a preponderance of the evidence:

1.      Keurig is the owner of the KEURIG® mark which qualifies as a famous mark (I will explain what qualifies as a famous mark in more detail momentarily);

2.      Sturm is making use of the challenged designation as a mark or trade name;

3.      Sturm's use of the mark is in interstate commerce;

4.      Sturm's use of the KEURIG mark began after Keurig's mark became famous; and,

5.      Sturm's use is likely to cause dilution by blurring by creating a likelihood of association with Keurig's famous mark arising from its similarity to Keurig's famous mark;  that is likely to impair the distinctiveness of Keurig's famous mark.

In evaluating this fifth element (likelihood of association) you should consider the following six factors:

(i)      The degree of similarity between the mark or trade name and the famous mark.

(ii)      The degree of inherent or acquired distinctiveness of the famous mark.

(iii)      The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.

(iv)      The degree of recognition of the famous mark.

(v)      Whether the user of the mark or trade name intended to create an association with the famous mark.

(vi)     Any actual association between the mark or trade name and the famous mark.

A mark is considered famous depending upon a consideration of the totality of the following factors:

(i)     The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

(ii)     The amount, volume, and geographic extent of sales of goods or services offered under the mark.

(iii)     The extent of actual recognition of the mark.

(iv)     Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

**Source**:  15 U.S.C. § 1125(c).

## STURM OBJECTS TO THIS INSTRUCTION

**TRADEMARK DILUTION [STURM PROPOSED]**

Keurig contends that Sturm's use of the statement "*For use by owners of Keurig®

coffee makers" constitutes dilution by blurring under federal trademark laws. In order to succeed

on its dilution by blurring claim, Keurig must prove the following five elements by a

preponderance of the evidence:

1.      Keurig is the owner of the "Keurig" mark which qualifies as a famous mark (I

will explain what qualifies as a famous mark in more detail momentarily);

2.      The "Keurig" mark is widely recognized among the general consuming public;

3.      Sturm is making use of a similar mark as a mark for Sturm's products;

4.      Sturm's use of the similar mark began after Keurig's mark became famous;

and,

5.      Sturm's use is likely to cause dilution by blurring by creating a likelihood of

association between the "Keurig" mark and a similar mark used by Sturm as a mark for Sturm

products that is likely to lessen the distinctiveness of the "Keurig" mark.

In evaluating this fifth element (likelihood of association) you should consider the

following six factors:

(i)      The degree of similarity between a similar mark used by Sturm and the "Keurig"

mark.

(ii)     The degree of inherent or acquired distinctiveness of the "Keurig" mark.

(iii)    The extent to which Keurig is engaging in substantially exclusive use of the

         "Keurig" mark.

(iv)     The degree of recognition of "Keurig" mark, as mark, among the general

         consuming public.

(v)     Whether Sturm intended the similar mark to create an association with the "Keurig" mark.

(vi)    Any actual association between the similar mark and the "Keurig" mark.

A mark is considered famous depending upon a consideration of the totality of the following factors:

(i)     The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

(ii)    The amount, volume, and geographic extent of sales of goods or services offered under the mark.

(iii)   The extent of actual recognition of the mark, as a mark, by the general consuming public.

(iv)    Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

**Source:**     15 U.S.C. § 1125(c).

**KEURIG OBJECTS TO THIS INSTRUCTION**

## JURY INSTRUCTION NO. 38

## FEDERAL UNFAIR COMPETITION, COMMON LAW UNFAIR COMPETITION AND VIOLATION OF THE DELAWARE UNIFORM DECEPTIVE TRADE PRACTICES ACT [KEURIG PROPOSED]

Sturm also contends that Keurig is liable to Sturm for unfairly competing with Sturm by making false representations regarding its products, namely, that all K-Cup® cartridges have ground coffee and a filter.  On Sturm's claim for unfair competition under federal law, Sturm has the burden of proving: (1) Keurig made a misleading statement of fact in commercial advertising or promotion about Sturm's goods or services; (2) the statement actually deceives or is likely to deceive a substantial segment of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; and (4) Keurig caused the statement to enter interstate commerce.

On Sturm's claims for unfair competition under the common law and the Delaware Uniform Deceptive Trade Practices Act related to false representations made by Keurig, Sturm has the burden of proving that (1) Keurig used in commercial advertising or promotion a false representation of fact in connection with Keurig's goods; (2) Sturm had a reasonable expectancy of entering a valid business relationship with its customers; (3) Keurig's actions wrongfully interfered with that relationship; and (4) Keurig's actions have defeated Sturm's legitimate expectation of entering such a valid business relationship.

**Source:**      15 U.S.C. § 1125(a)(1)(B); 6 Del. C. 2531 *et seq.*; *Accenture Global Services v. Guidewire Software,Inc.*, 581 F. Supp. 2d 654, 665-66 (D. Del. 2008).

## STURM OBJECTS TO THIS INSTRUCTION

**FEDERAL UNFAIR COMPETITION, COMMON LAW UNFAIR COMPETITION AND VIOLATION OF THE DELAWARE UNIFORM DECEPTIVE TRADE PRACTICES ACT [STURM PROPOSED]**

Sturm also contends that Keurig is liable to Sturm for unfairly competing with Sturm by making false representations regarding its products, namely, that all K-Cups have ground coffee and a filter.  On Sturm's claim for unfair competition under federal law, the common law, and the Delaware Uniform Deceptive Trade Practices Act related to false representations made by Keurig, Sturm has the burden of proving that Keurig used in commercial advertising or promotion, a false representation of fact in connection with Keurig's goods.

<u>Source:</u> O'Malley, Grenig and Lee, 2 Federal Jury Practice and Instructions Civil Companion Handbook (2011-2012) § 6.1.10.a; 15 U.S.C. § 1125(a)(1)(B); 6 Del. C. 2531 *et seq.*; *Accenture Global Services v. Guidewire Software,Inc.*, 581 F. Supp. 2d 654, 665 (D. Del. 2008); *Schering-Plough Healthcare Prods., Inc. v. Neutrogena Corp.*, C.A. No. 09-642-SLR, 2010 WL 1992247, at * 4 (D. Del. May 18, 2010).

**KEURIG OBJECTS TO THIS INSTRUCTION**

## JURY INSTRUCTION NO. 39

## DAMAGES GENERALLY [KEURIG PROPOSED]

If you find for Keurig on any of Keurig's claims against Sturm, you must determine what amount, if any, is owed from Sturm to Keurig in the form of monetary damages.

Keurig has presented three measures of damages for Sturm's unlawful actions during the course of this trial: (1) actual damages as lost profits from lost sales and lost profits from owed royalties, (2) compensation for corrective advertisement Keurig had to implement because of the Sturm cartridges, (3) unjust enrichment of Sturm from its unlawful actions.

For its claim for trademark infringement, Keurig seeks a damages award in the form of actual damages and an award of Sturm's profits as unjust enrichment. Actual damages includes Keurig's lost profits, Keurig's lost royalty payments and compensation for Keurig's corrective advertisement expenses.

For its claim of trade dress infringement, Keurig seeks damages in the form of recoupment of Sturm's unjust enrichment.

For its claims of false advertisement, Keurig seeks damages in the form of recoupment of Sturm's unjust enrichment.

I will begin with an instruction on Keurig's actual damages for Sturm's trademark infringement.

## STURM OBJECTS TO THIS INSTRUCTION

**JURY INSTRUCTION NO. 40**

**PLAINTIFF'S ACTUAL DAMAGES (15 U.S.C. § 1117(a)) [KEURIG PROPOSED]**

Keurig has the burden of proving actual damages due to trademark infringement by a preponderance of the evidence. Actual damages means the amount of money which will reasonably and fairly compensate Keurig for any injury you find was caused by Sturm's infringement of the plaintiff's registered trademark.

In determining the amount of Keurig's damages award, you should consider the following:

1. The injury to Keurig's reputation;
2. The injury to Keurig's goodwill, including injury to Keurig's general business reputation;
3. The lost profits that Keurig would have earned but for the Sturm's infringement.
   a. Lost profit is determined in two ways.  First, by deducting all expenses associated with Keurig's sales of K-Cup portion packs from Keurig's gross revenue on these sales.  Lost profits can also be calculated by determining how much money Keurig would have collected from Sturm if Sturm had paid Keurig a license fee (commonly called a "royalty") for using Keurig's trademark.
4. The expense Keurig undertook to prevent customers from being deceived;
5. The cost of future corrective advertising reasonably required to correct any public confusion caused by Sturm's infringement.

When considering prospective costs (e.g., cost of future advertising, expense of preventing customers from being deceived), you must not overcompensate.  Accordingly, your award of such future costs should not exceed the actual damage to the value of the Keurig's mark at the time of the infringement by the defendant.

**Source**:  Ninth Cir. Model Civil JURY INSTRUCTION 15.25 (modified).

**STURM OBJECTS TO THIS INSTRUCTION**

**PLAINTIFF'S ACTUAL DAMAGES (15 U.S.C. § 1117(a)) [STURM PROPOSED]**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered. If you find for Keurig on its trademark infringement, you must determine Keurig's actual damages, if any.

Keurig has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate Keurig for any injury you find was caused by Sturm's infringement of Keurig's registered trademark.

You should consider the following:

1.     The lost profits that Keurig would have earned on sales that it would have made but for the defendant's infringement. Profit is determined by deducting all expenses from gross revenue;

2.     The expense of correcting customers from confusion resulting from Sturm's infringement; and

3.     A reasonable royalty for use of Keurig's trademark on sales Sturm made as a result of the infringement and that Keurig's licensees would have made.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

It is for you to determine what damages, if any, have been proved.

Source:      *Ninth Circuit Manual of Model Jury Instructions* – Civil 5.1 (modified), 15.25
             (modified)
                    **KEURIG OBJECTS TO THIS INSTRUCTION**

# JURY INSTRUCTION NO. 41

## STURM'S PROFITS (15 U.S.C. § 1117(a)) – TRADEMARK INFRINGEMENT

## [KEURIG PROPOSED]

In addition to actual damages, Keurig is entitled to any profits earned by Sturm that are attributable to Sturm's trademark infringement.  This is otherwise known as Sturm's unjust enrichment.  You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Sturm's profit on its accused products is determined by deducting all expenses from gross revenue.

Gross revenue is all of Sturm's receipts from using the trademark in the sale of its Grove Square beverage cartridges.  Keurig has the burden of proving a defendant's gross revenue by a preponderance of the evidence.

Sturm's expenses are all operating, overhead and production costs incurred in producing the accused Grove Square cartridges.  Sturm has the burden of proving these expenses and any portion of the profit attributable to factors other than use of the infringed trademark by a preponderance of the evidence.  Unless you find that a portion of the profit from the sale of Sturm's Groves Square beverage cartridges using the trademark is attributable to factors other than use of the trademark, you shall find that the total profit is attributable to Sturm's infringement.

**Source**:  Ninth Cir. Model Civil JURY INSTRUCTION 15.26 (modified); Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co., 316 U.S. 203, 206 (1942); Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 176 (3d Cir. 2005); Members 1st Federal Credit Union v. Metro Bank, 1:09-CV-1171, 2011 WL 208743 (M.D. Pa. Jan. 21, 2011).

## STURM OBJECTS TO THIS INSTRUCTION

**JURY INSTRUCTION NO. 42**

**STURM'S PROFITS – TRADE DRESS INFRINGEMENT [KEURIG PROPOSED]**

If you find that Sturm has infringed Keurig's trade dress, you must determine Sturm's unjust enrichment from it infringement of Keurig's trade dress.

Keurig's damages from such infringement can be measured by Sturm's profits on sales of products using the infringing trade dress.  Again, Sturm's profits on its accused products is determined by deducting all expenses from gross revenue.  Gross revenue is all of Sturm's receipts from using the trade dress in the sale of its Grove Square beverage cartridges.  Keurig has the burden of proving a defendant's gross revenue by a preponderance of the evidence.

Sturm's expenses are all operating, overhead and production costs incurred in producing the accused Grove Square cartridges.  Sturm has the burden of proving these expenses and any portion of the profit attributable to factors other than use of the infringed trade dress by a preponderance of the evidence.  Unless you find that a portion of the profit from the sale of Sturm's Groves Square beverage cartridges using the trade dress is attributable to factors other than use of the trade dress, you shall find that the total profit is attributable to Sturm's infringement.

**Source**:  Ninth Cir. Model Civil JURY INSTRUCTION 15.26 (modified).

**STURM OBJECTS TO THIS INSTRUCTION**

## JURY INSTRUCTION NO. 43

## STURM'S PROFITS – FALSE ADVERTISING [KEURIG PROPOSED]

If you find that Sturm has committed false advertising, you must determine Sturm's unjust enrichment from such false advertising.

Keurig's damages from such infringement can be measured by Sturm's profits on sales of products using the false statements. Again, Sturm's profits on its accused products is determined by deducting all expenses from gross revenue. Gross revenue is all of Sturm's receipts from sale of its Grove Square beverage cartridges with the false advertising. Keurig has the burden of proving a defendant's gross revenue by a preponderance of the evidence.

Sturm's expenses are all operating, overhead and production costs incurred in producing the accused Grove Square cartridges. Sturm has the burden of proving these expenses and any portion of the profit attributable to factors other than use of false advertising by a preponderance of the evidence. Unless you find that a portion of the profit from the sale of Sturm's Groves Square beverage cartridges using the false advertising is attributable to factors other than use of the false advertising, you shall find that the total profit is attributable to Sturm's false advertising.

**Source**:  Ninth Cir. Model Civil JURY INSTRUCTION 15.26 (modified).

## STURM OBJECTS TO THIS INSTRUCTION

## JURY INSTRUCTION NO. 44

### STURM'S PROFITS (15 U.S.C. § 1117(a)) – TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT, AND FALSE ADVERTISING  [STURM PROPOSED]

In addition to actual damages, Keurig may obtain profits earned by Sturm that are attributable to the trademark infringement, trade dress infringement, unfair competition, or false advertising, which Keurig proves by a preponderance of the evidence.  For Keurig's Trademark Infringement claim you may not, however, include in any award of profits any amount that you took into account in determining actual damages.

For Keurig's trademark infringement claim, Keurig has the burden of proving the portion of Sturm's profits that were attributable to the use of the mark KEURIG.

For Keurig's trade dress infringement claim, Keurig has the burden of proving the portion of Sturm's profits that were attributable to the use of the GROVE SQUARE trade dress.

For Keurig's false advertising claim that the statement "Naturally Roasted, Soluble & Microground Arabica Coffee" has a tendency to deceive potential purchasers of Sturm's products that Sturm's products contain "fresh brewed coffee," Keurig has the burden of proving the portion of Sturm's profits that were attributable to the belief that products in packages containing the statement "Naturally Roasted, Soluble & Microground Arabica Coffee" contained only ground coffee.

For Keurig's false advertising claim that the phrase "For use by owners of Keurig® coffee makers" has a tendency to deceive potential purchasers of Sturm's products that Sturm's products have the same quality as all of Keurig's authorized K-Cup products, Keurig has the burden of proving the portion of Sturm's profits that were attributable to the belief that Sturm's GROVE SQUARE cartridges had the same quality characteristics as Keurig;s cartridges.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is all of Sturm's receipts that were attributable to the wrongful conduct.

Source:     *Gucci Am., Inc. v. Daffy's, Inc.*, 354 F.3d 228 (3d Cir. 2003); *Bracco Diagnositics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 443-444 (D.N.J. 2009); *Ninth Circuit Manual of Model Jury Instructions* – Civil 15.26 (modified)

**KEURIG OBJECTS TO THIS INSTRUCTION**

## JURY INSTRUCTION NO. 45

## TRADEMARK DAMAGES – REASONABLE ROYALTY  [STURM PROPOSED]

In determining a reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

1.      The royalties received by Keurig for the licensing of the trademarks-in-suit, proving or tending to prove an established royalty

2.      The rates paid by the licensee for the use of other trademarks comparable to the trademark-in-suit.

3.      The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

4.      The licensor's established policy and marketing program to maintain his or her trademark monopoly by not licensing others to use the trademark or by granting licenses under special conditions.

5.      The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

6.      The established profitability of the products sold under the trademark, its commercial success, and its current popularity.

7.      The extent to which the infringer has made use of the trademark and any evidence probative of the value of that use.

8.      The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for use of the trademark.

9.      The opinion and testimony of qualified experts.

10.     The amount that a licensor (such as the plaintiff) and a licensee (such as the defendant) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licnsee—who desired, as a business proposition, to obtain a license to the trademark—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent licensor who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the licensee would have been willing to pay and the licensor would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the trademark owner and the infringer taking place at a time prior to when the infringement began.

Source:        The Federal Circuit Bar Association, Model Patent Jury Instructions – 6.7
               Reasonable Royalty – Relevant Factors (2010) (modified)

**KEURIG OBJECTS TO THIS INSTRUCTION**

## JURY INSTRUCTION NO. 46

## DELIBERATION AND VERDICT

## INTRODUCTION

Let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I will have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is the juror seated in the first seat, first row.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

**Source**:  Model Final Jury Instructions – Hon. Sue L. Robinson..

## JURY INSTRUCTION NO. 47

## UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.

Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. The verdict form asks you a series of questions about the parties' claims. Unless you are directed otherwise in the form of the verdict, you must answer all of the questions posed, and you all must agree on each answer. When you have reached a unanimous agreement as to your verdict, you will return your verdict to the courtroom deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

**Source**:  Model Final Jury Instructions – Hon. Sue L. Robinson.

## JURY INSTRUCTION NO. 48

## DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that – your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience. If any member of the jury took notes, let me remind you that notes are not given any greater weight than the memory or impression of each juror as to what the testimony may have been. Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds. Listen carefully to what the other jurors have to say, and then decide for yourself.

We generally end our business day at 4:30 p.m. If we do not hear from you by 4:30, I will be sending you a note to see whether you are close enough to a verdict to want to deliberate after 4:30 or whether you are going to recess for the evening and resume your deliberations on the next business day. You will need to respond in writing to that question.

I am going to remind you now, if you go home this evening and resume your deliberations on the next business day, you are not to talk about the case among yourselves or with anyone else during the evening recess. You may not read or listen to any news about the case in a newspaper, online or on television during the evening recess.

You may talk about the case only while you are in the jury room and everyone on the jury is present. Unless I hear from you that you have a different schedule in mind, I will expect you all to come back the next business day at 9:30. You are not to start deliberating until you are all present in the jury room and participating together.  Because the lawyers have to make themselves available to respond to questions or receive the verdict, I generally give them between 12:30 and 1:30 to step away from the phone. So whenever you are deliberating over the lunch hour, let me remind you, if you ask a question during this time, you probably will not get an answer right away because we are all going to be stepping away from our phones.

**Source**:  Model Final Jury Instructions – Hon. Sue L. Robinson.

**JURY INSTRUCTION NO. 49**

**COURT HAS NO OPINION**

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.  Finally, if I have read any of these instructions inconsistently with the written text, you are to rely on the written instructions in your deliberations.

**Source**:  Model Final Jury Instructions – Hon. Sue L. Robinson.