IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEURIG, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 10-841-SLR-MPT |
| | ) |
| STURM FOODS, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

At Wilmington this 19th day of February, 2013, having considered the parties' letters regarding the burden of proof for disgorgement of defendant's profits (D.I. 422, 424);

IT IS ORDERED, in connection with the pretrial evidentiary disputes:

1. Disgorgement of defendant's profits ("accounting") is an equitable remedy permitted under 15 U.S.C. § 1117(a).[1] In determining an accounting under 15 U.S.C. § 1117(a), the court must: (1) decide whether, under the principles of equity, a plaintiff should get an accounting of profits ("the first stage"); and, if so, (2) assess, or estimate, the profits ("the second stage").[2]  See Banjo Buddies, 399 F.3d at 176.

---

[1] Section 1117(a) also permits recovery of damages (such as **plaintiff's** lost profits) and costs.

[2] Under the Lanham Act, "[t]he court shall assess such profits and damages **or cause the same to be assessed under its direction**." 15 U.S.C. § 1117(a) (emphasis added). Disgorgement of defendant's profits, under a theory of unjust enrichment, is a purely equitable remedy. See Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 172 (3d Cir. 2005); see also Castrol, Inc. v. Pennzoil Quaker State Co., 169 F. Supp. 2d 332, 344 (D.N.J. 2001); Vulcan Print Media, Inc. v. Las Vegas Sports News, LLC, No. 2:98-CV-5768, 2001 WL 35974201, at *1 (E.D. Pa. Nov. 20, 2001); Am. Cyanamid Co. v.

2. **The First Stage.** The parties do not dispute that in the first stage, plaintiff carries the burden of proof to demonstrate that an accounting is appropriate. In *Banjo Buddies*, 399 F.3d at 175,[3] the Third Circuit held that, "in evaluating whether equity supports disgorging the infringer's profits," the factors that a court should evaluate

> include, but are not limited to (1) whether the defendant had the intent to confuse or deceive; (2) whether sales have been diverted; (3) the adequacy of other remedies; (4) any unreasonable delay by the plaintiff in asserting his rights; (5) the public interest in making the misconduct unprofitable; and (6) whether it is a case of palming off.

*Id.* (internal quotation marks omitted) (quoting *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 349 (5th Cir. 2002)).

3. **The Second Stage.** Once an accounting is deemed appropriate under the principles of equity, the court must estimate the profits. The parties dispute the burden of proof in this second stage. Consistent with statutory language and recent Third Circuit law, once plaintiff proves liability and that an accounting is appropriate, defendant bears the burden of proving how much, if any, of its profits were not derived from its wrongful conduct. Section 35(a) of the Lanham Act provides: "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). The holding in

---

*Sterling Drug, Inc.*, 649 F. Supp. 784, 789 (D.N.J. 1986). Given the equitable nature of the remedy, the issue of accounting is more appropriate as a bench, rather than jury, issue. A jury may, however, make determinations that may be helpful in evaluating the equitable factors, such as willfulness, direct competition, and likelihood of confusion.

[3]*Banjo Buddies* also clarified that "the infringer's intent [i]s an important – but not indispensable – factor" in evaluating the equity of awarding an accounting. *See Banjo Buddies*, 399 F.3d at 175 (holding that prior Third Circuit precedent requiring a plaintiff to prove willful infringement before an infringer's profits are recoverable had been superseded by the 1999 Lanham Amendments Act).

2

*Banjo Buddies* discusses this statutory language and clearly follows it. *See Banjo Buddies*, 399 F.3d at 176 (finding that plaintiff's burden of estimating profits was satisfied by a financial report and that defendant's burden of costs and deductions was not satisfied by an unreliable expense study).

4. Sturm contends that "under *Gucci Am., Inc. v. Daffy's, Inc.*, 354 F.3d 228, 242 & n.15 (3d Cir. 2003), in the second stage, it is plaintiff's initial burden of proof to show defendant's sales "'attributable to the unlawful [conduct].'" (D.I. 424 at 1) (quoting *Gucci*, 354 F.3d at 242 & n.15).[4] The court recognizes some tension in the precedential case law regarding the burden of proof in estimating profits. On one hand, *Gucci* noted that a plaintiff "has the burden of proving that lost profits are attributable to the unlawful use of [a] mark" and denied an accounting because, in part, "the record would not support awarding . . . lost profits." *Id.* at 242 & n.15. On the other hand, § 35(a) of the Lanham Act provides, in no uncertain terms, that, "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a).

5. The court declines to place a burden of proof on plaintiff in the second stage to show defendant's sales attributable to the unlawful conduct. First, the discussion in *Gucci* was focused on determining whether an accounting should be awarded in the first instance; it did not reach an estimation of profits. Moreover, *Gucci* placed the burden of attribution on plaintiff in a footnote, did not discuss the burden of proof provided in § 35(a) of the Lanham Act, and further found that the principles of equity did not support

---

[4]Contrary to the court's instructions at the pretrial conference, defendant also relies on two non-binding cases from the District of New Jersey for its contention.

3

an award of lost profits.[5] *Gucci*, 354 F.3d at 342-43 & n.15. In placing the burden on the infringer to prove any proportion of its total profits which may not be attributed to wrongful conduct, § 35(a) errs on the side of giving a windfall to the aggrieved party, rather than to the wrongdoer.[6] Finally, to the extent *Gucci* conflicts with *Banjo Buddies*, the court declines to follow *Gucci*, as *Banjo Buddies* is the more recent authority and directly addresses the burden of proof in the second stage.

6. **Conclusion.** For the foregoing reasons, the court finds that it is plaintiff's burden to prove, in the first instance, that equity supports a disgorgement of defendant's profits. If the equitable factors support an award of profits, then the burden shifts pursuant to § 35(a) of the Lanham Act: after plaintiff proves defendant's sales, defendant bears the burden of proving how much, if any, of its profits were not derived from its unlawful conduct.

United States District Judge

---

[5]Whether a portion of defendant's sales may be attributed to wrongful use of the mark (or whether the infringer was enriched because of the owner's mark) may be viewed as an equitable factor in the first stage because allowing disgorgement of defendant's profits when plaintiff has not shown any attribution "would be far from equitable – it would be a windfall." *Quick Techs.*, 313 F.3d at 350 (internal quotation marks omitted).

[6]*See Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942) ("The burden is the infringer's to prove that his infringement had no cash value in sales made by him. If he does not do so, the profits made on sales of goods bearing the infringing mark properly belong to the owner of the mark. There may well be a windfall to the trademark owner where it is impossible to isolate the profits which are attributable to the use of the infringing mark. But to hold otherwise would give the windfall to the wrongdoer." (citation omitted)). Although *Mishawaka* was decided in 1942 under the Trademark Act of 1905, its reasoning nevertheless supports the burden of proof provided in § 35(a) of the Lanham Act.